COMPLAINT EXHIBIT 5

## PLEDGE AND SECURITY AGREEMENT

This Pledge and Security Agreement (this "**Agreement**") is dated as of April 2, 2021, by MARICOPA ORCHARDS, LLC, a California limited liability company; ACDF, LLC, a California limited liability company; KAMM SOUTH, LLC, a California limited liability company; FARID ASSEMI, as Trustee of the AMENDED AND RESTATED FARID ASSEMI REVOCABLE TRUST dated March 2, 2010; FARSHID ASSEMI and SONIA ROSEMARY ASSEMI, as Trustees of the AMENDED AND RESTATED FARSHID ASSEMI AND SONIA ROSEMARY ASSEMI REVOCABLE TRUST dated March 2, 2010; and DARIUS ASSEMI, as Trustee of the AMENDED AND RESTATED DARIUS ASSEMI REVOCABLE TRUST dated March 2, 2010 (collectively, "**Pledgor**"), in favor of METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation ("**Lender**").

## RECITALS

A.  C & A FARMS, LLC, a California limited liability company, and MARICOPA ORCHARDS, LLC, a California limited liability company (together, "**Borrower**") and Lender are parties to that certain Loan Agreement dated as of even date herewith (the "**Loan Agreement**").

B.  Pursuant to the Loan Agreement, Lender has agreed to make certain a loan to Borrower (the "**Loan**") evidenced by that certain Promissory Note dated as of even date herewith by Borrower to the order of Lender (the "**Note**").  The Note and the Loan Agreement are secured, among other assets, by certain agricultural real property situated in Fresno County, California (the "**Real Property**") and more particularly described in that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing executed by Borrower for the benefit of Lender dated as of even date herewith (the "**Deed of Trust**").  Borrower, as landlord, has leased the Real Property to (1) Dumar, LLC, a California limited liability company, as tenant, pursuant to that certain Agricultural Lease dated April 2, 2021, and (2) Pistache, LLC, a California limited liability company, as tenant, pursuant to that certain Agricultural Lease dated April 2, 2021 (together, the "**Farm Lease Agreements**").

C.  Each Pledgor is a Borrower or a general partner, member, shareholder or affiliate of each of the entities composing Borrower.

D.  The Real Property may be irrigated in part with water supplies made available to Pledgor by virtue of their membership interests in Poso Creek Water Company, LLC, a California limited liability company (the "**Company**").

E.  One of the conditions precedent to the disbursement of the Loan is the grant by Pledgor to Lender of an assignment and security interest in its membership interest in the Company and all other rights and privileges arising under the Company Agreement, as defined below, and its allocated rights under that certain Agreement between the Company and Semitropic Water Storage District and its Improvement Districts for Participation in the Stored Water Recovery Unit of the Semitropic Water Banking and Exchange Program dated as of April 23, 2007, as such agreement may be modified or amended from time to time as permitted

1

hereunder (the "**Water Banking Agreement**") and to provide for the consent and agreement of the Company to such security interests as granted herein.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor agrees as follows:

1.    Pledge and Grant of Security Interest.

(a)    Collateral Pledged.    Pledgor hereby pledges, assigns and grants to Lender a security interest in and to the following property, whether general intangibles (including contract rights), instruments, investment property consisting of limited liability company interests, or other property (hereafter, the "**Pledged Collateral**"):

(i)    Pledgor's membership and percentage interest in the Company and rights under the Operating Agreement of the Company dated as of January 1, 2006, as amended by the First Amendment thereto dated as of August 8, 2007, and as further amended by the Second Amendment thereto dated as of December 31, 2009, as further amended by the Third Amendment dated as of May 3, 2010, as further amended by the Fourth Amendment dated January 23, 2012, and as further amended by the Fifth Amendment dated December 7, 2020 (collectively, the "**Company Agreement**"), and any interest held by or allocated to Pledgor in the "Water Bank Shares" or the "Company Water Account" (as defined in the Company Agreement), and Pledgor's "Member Water Account" established pursuant to the Company Agreement (all of the foregoing described in this clause (i) collectively referred to herein as the "**Pledged Equity**");

(ii)    Pledgor's rights under the Water Banking Agreement and any other water rights available with respect to the Pledged Equity and water available thereunder;

(iii)    Any certificates representing the Pledged Equity and any interest of Pledgor in the entries on the books of any financial intermediary pertaining to the Pledged Equity, and all dividends, cash, warrants, rights, instruments and other property or proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Equity;

(iv)    All additional equity interests, and all securities convertible into warrants, options and other rights to purchase or otherwise acquire any equity interests, in any issuer of the Pledged Equity from time to time acquired by Pledgor in any manner (which interests shall be deemed to be part of the Pledged Equity), any certificates or other instruments representing such additional equity interests, securities, warrants, options, or other rights and any interest of Pledgor in the entries on the books of the Company;

(v)    All claims, demands, rights, reimbursement, indemnities and other interests and obligations from time to time owed to Pledgor and arising under the Pledged Equity or the Water Banking Agreement and the instruments evidencing such interests and obligations, and all interest, cash, instruments, collateral and other property or proceeds from time to time

2

received, receivable or otherwise distributed in respect of or in exchange for any or all such interest and indebtedness; and

(vi)    To the extent not covered by clauses (i) through (v) above, all proceeds of any or all of the foregoing Pledged Collateral.  For purposes of this Agreement, the term "proceeds" includes whatever is receivable or received when Pledged Collateral or proceeds are sold, exchanged, collected, or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes, without limitation, in kind distributions with respect to any of the Pledged Collateral.

2.    <u>Obligations Secured</u>.  The pledge and security interest granted herein in the Pledged Collateral secures payment and performance when due (a) whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise of (i) all obligations and liabilities of every nature of Borrower now or hereafter existing under or arising out of or in connection with the Note, the Loan Agreement, the Deed of Trust or any of the other Loan Documents defined therein and (ii) all obligations and liabilities of Pledgor under this Agreement, and all extensions or renewals of the documents and instruments described in (i) or (ii) above, whether for principal or interest; (b) of all fees, expenses, costs, attorneys' fees, costs of collection or enforcement of Pledgor's obligations hereunder; and (c) reimbursement of all advances made by Lender to protect and preserve the Pledged Collateral, or any part thereof, or to protect Lender's security interest therein (including, but not limited to, amounts, if any, paid to satisfy Pledgor's obligations to any Person or entity having a security interest in the Pledged Collateral that is superior to Lender's security interest therein), or to enforce Pledgor's obligations under this Agreement. All such obligations and liabilities and all obligations of every nature of Pledgor now or hereafter existing under this Agreement are collectively referred to herein as the **"Secured Obligations."**

3.    <u>Representations and Warranties of Pledgor</u>.  Each Pledgor represents and warrants to Lender that (a) the execution, delivery, and performance of this Agreement by Pledgor have been duly authorized; (b) this Agreement has been executed and delivered to Lender by a representative of Pledgor who has been duly authorized to perform such acts; (c) this Agreement is a legally valid and binding obligation of Pledgor and is enforceable against Pledgor in accordance with its terms; (d) Pledgor is and will be the only legal and equitable owner of each and every item of the Pledged Collateral free and clear of the security interests, unpaid assessments, liens, encumbrances, and claims of all Persons or entities except for the security interest created by this Agreement; (e) Pledgor's principal place of business is in California; (f) Pledgor has obtained all necessary consents and approvals to the grant herein of the security interests in favor of Lender in the Pledged Collateral; (g) all certificates, if any, representing the Pledged Equity have been delivered to Lender duly endorsed and accompanied by duly executed instruments of transfer or assignment in blank; (h) the Water Banking Agreement remains unmodified and is in full force and effect; and (i) no default exists by Pledgor under the Water Banking Agreement or to the best of Pledgor's knowledge, any other party to the Water Banking Agreement.

Pledgor further represents and warrants to Lender that no authorization, approval or other action by, and no notice to or filing with, any governmental authority, water or storage district or

regulatory body is required for either (i) the grant by Pledgor of the security interest granted hereby, (ii) the execution, delivery or performance of this Agreement by Pledgor, or (iii) the perfection of or the exercise by Lender of its rights and remedies hereunder. This Agreement, together with the filing of UCC-1 Financing Statements with the Secretary of State of the State of California, create a valid, perfected and first priority security interest in the Pledged Collateral, securing the payment of the Secured Obligations, and all filings and other actions necessary or desirable to perfect and protect such security interest have been duly made or taken. Pledgor confirms that all information heretofore, herein or hereafter supplied to Lender by or on behalf of Pledgor with respect to the Pledged Collateral is accurate and complete in all material respects.

        4.    <u>Perfection</u>. Pledgor hereby authorizes Lender to file such financing statements, financing statement amendments and any other documents that Lender reasonably believes are necessary or desirable to perfect, amend, or continue the perfection of Lender's security interests in the Pledged Collateral. Furthermore, Pledgor shall promptly take all other actions reasonably deemed necessary or desirable by Lender to enable Lender to perfect (or continue the perfection of) their security interests in Pledged Collateral including, without limitation, delivery of certificates, if any, or instruments representing Pledged Equity. Pledgor shall pay upon demand all fees and costs reasonably incurred by Lender in perfecting (and maintaining the perfection of) the security interests of Lender in the Pledged Collateral and in obtaining lien searches confirming the priority of such security interests in the Pledged Collateral. If the Pledged Equity is not currently certificated, Pledgor shall not cause such interest to be certificated.

        5.    <u>Pledgor Remains Liable</u>. Notwithstanding any other provision of this Agreement to the contrary, (a) Pledgor shall remain liable under any contracts and agreements included in the Pledged Collateral, reflected in the Company Agreement and under the Water Banking Agreement to the extent set forth therein, and to perform all of its duties and obligations thereunder to the same extent as if this Agreement had not been executed, (b) the exercise by Lender of any of its rights hereunder shall not release Pledgor from any of its duties or obligations under the contracts and agreements included in or relating to the Pledged Collateral, and (c) Lender shall not have any obligation or liability under any contracts and agreements included in the Pledged Collateral, including the Water Banking Agreement or the Company Agreement, by reason of this Agreement, nor shall Lender be obligated to perform any of the obligations or duties of Pledgor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder except to the extent Lender consents to be bound by the terms and conditions of the Company Agreement in accordance with Section 5.2.1 of the Company Agreement. Pledgor shall indemnify and hold Lender harmless from and against all loss and damage arising from or related to Pledgor's failure to perform its obligations under the Company Agreement.

        6.    <u>Adjustments</u>. In the event that, during the term of this Agreement, any reclassification, readjustment or other change is declared or made in the capital structure of the issuer of the Pledged Collateral, all new, substituted and additional interests or securities issued in respect to the Pledged Collateral by reason of any such change shall be delivered to Lender

4

and held by it under the terms of this Agreement in the same manner as the Pledged Collateral originally pledged hereunder.

       7.     <u>Voting Rights</u>.

       (a)     So long as no Event of Default shall have occurred and be continuing:

          (i)     Pledgor shall be entitled to exercise any and all voting and other consensual rights pertaining to the Pledged Collateral or any part thereof for any purpose not inconsistent with the terms of this Agreement, the Loan Agreement and the other Loan Documents, or the transactions contemplated thereby.

          (ii)     Lender shall promptly execute and deliver (or cause to be executed and delivered) to Pledgor all such proxies and other instruments as Pledgor may from time to time reasonably request for the purpose of enabling Pledgor to exercise the voting and other consensual rights which it is entitled to exercise pursuant to paragraph (i) above.

       (b)     Upon the occurrence of an Event of Default and upon written notice from Lender to Pledgor, all rights of Pledgor to exercise the voting and other consensual rights which it would otherwise be entitled to exercise pursuant to Section 7(a) shall cease, and all such rights shall thereupon become vested in Lender who shall thereupon have the sole right to exercise such voting and other consensual rights.

       (c)     In order to permit Lender to exercise the voting and other consensual rights which it may be entitled to exercise pursuant to Section 7(b), upon the occurrence of an Event of Default (i) Pledgor shall promptly execute and deliver (or cause to be executed and delivered) to Lender all such proxies and other instruments as Lender may reasonably request; and (ii) without limiting the effect of the immediately preceding clause (i), Pledgor hereby grants to Lender an irrevocable proxy to vote the Pledged Collateral and to exercise all other rights, powers, privileges and remedies to which a holder of the Pledged Collateral would be entitled (including, without limitation, giving or withholding written consents of equity holders, calling special meetings of equity holders and voting at such meetings), which proxy shall be effective, automatically and without the necessity of any action (including any transfer of any Pledged Collateral on the record books of the issuer thereof) by any other Person (including the issuer of the Pledged Collateral or any officer or agent thereof), upon the occurrence of an Event of Default and which proxy shall only terminate upon the payment in full in cash of the Secured Obligations.

       8.     <u>Warrants and Rights</u>.  In the event that, during the term of this Agreement, subscription warrants or any other rights or options shall be issued in connection with the Pledged Collateral, such warrants, rights and options shall be immediately assigned by Pledgor to Lender to be held under the terms of this Agreement in the same manner as the Pledged Collateral originally pledged hereunder.

       9.     <u>Lender as Limited Attorney in Fact</u>.  To the fullest extent allowed by law, Pledgor appoints Lender as Pledgor's attorney in fact, coupled with an interest, for the purpose

5

of executing and filing financing statements and similar documents or endorsing chattel paper, documents, promissory notes, or instruments, all of which, in Lender's reasonable judgment, may be necessary or advisable for perfecting, continuing, and re-perfecting the security interests of Lender in the Pledged Collateral, or any item thereof or interest therein. Pledgor also hereby irrevocably appoints Lender as Pledgor's attorney-in-fact, with full authority in the place and stead of Pledgor and in the name of Pledgor, Lender or otherwise, upon the occurrence of an Event of Default and in Lender's discretion, to take any action and to execute any instrument that Lender may deem necessary or advisable to accomplish the purposes of this Agreement, including without limitation:

   (a)   To ask for, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys or other assets due and to become due under or in respect of any of the Pledged Collateral;

   (b)   To file any claims or take any action or institute any proceedings that Lender may deem necessary or desirable for the collection or enforcement of any of the Pledged Collateral or otherwise to enforce the rights of Lender with respect to any of the Pledged Collateral;

   (c)   To pay or discharge charges, claims, liabilities, taxes or liens levied or placed upon or threatened against the Pledged Collateral or arising under the Company Agreement or capital calls or assessments made thereunder, the legality or validity thereof and the amounts necessary to discharge the same to be determined by Lender in its sole discretion, any such payments made by Lender to become obligations of Pledgor to Lender, due and payable immediately without demand; and

   (d)   Generally to sell, transfer, lease, pledge, make demand under, request the transfer or delivery of water under the Member Water Account, make any agreement with respect to or otherwise deal with any of the Pledged Collateral as fully and completely as though Lender were the absolute owner thereof for all purposes, and to do, at Lender's option and Pledgor's expense, at any time or from time to time, all acts and things that Lender deems necessary to protect, preserve or realize upon the Pledged Collateral and Lender's security interest therein in order to effect the intent of this Agreement, all as fully and effectively as Pledgor might do. If Pledgor fails to perform any agreement contained herein, Lender may itself perform, or cause performance of, such agreement, and the expenses of Lender incurred in connection therewith shall be payable by Pledgor under Section 19.

   10.   <u>Reporting</u>.   Upon request, Pledgor shall promptly provide Lender with such reports and summaries and other information pertaining to the Pledged Collateral as reasonably are requested by Lender. Delivery of any such report, summary, or other information shall be deemed to be a representation and warranty by Pledgor that the same is true, correct, and complete in all material respects to the best of Pledgor's knowledge. Pledgor also shall report to Lender any default by Pledgor under any contract with any third person in which that person holds a claim or security interest in all or any portion of the Pledged Collateral that is or may by operation of law become prior in right to the security interests of Lender therein.

Pledge and Security Agreement (Poso Creek)
Dumar and Pistache Ranches
Loan No. 201755
110209007.2 0053564-00511

11.     <u>Inspection and Verification Rights</u>.  Pledgor shall keep accurate books and records relating to the Pledged Collateral.  Lender shall have the right, at Pledgor's expense, to inspect the Pledged Collateral, including books and records with respect thereto whether held by Pledgor or the Company, and make copies of such books and records following reasonable notice and during normal business hours.  Pledgor shall provide such access and office space as reasonably may be necessary for the exercise of these rights.  The phrase "books and records" is used in its broadest sense and includes (but is not limited to) data compilations held on disks, tapes, and other media.  If such information is so stored, and Lender is not able to retrieve that information easily without Pledgor's assistance, Pledgor shall provide (and, if necessary, operate) the hardware and operating systems necessary for retrieval, review, and reprinting of the information.

12. ·    <u>Prohibition on Other Encumbrances</u>.  Pledgor shall not grant or permit any liens or encumbrances with respect to Pledged Collateral, other than the security interest created by this Agreement.

13.     <u>Certain Covenants of Pledgor</u>.  Pledgor shall not sell, assign (by operation of law or otherwise), transfer, lease, license or otherwise dispose of, or grant any option with respect to, any of the Pledged Collateral or the water available thereunder without Lender's prior written consent which may be withheld or conditioned at Lender's discretion.  Pledgor shall promptly notify Lender of any event of which Pledgor becomes aware causing material loss or depreciation in the value of the Pledged Collateral, and shall promptly deliver to Lender all written notices received by it with respect to the Pledged Collateral.  In addition, Pledgor shall: (a) not use or permit any Pledged Collateral to be used unlawfully or in violation of any provision of this Agreement, the Water Banking Agreement or any applicable statute, regulation or ordinance or any policy of insurance covering the Pledged Collateral; (b) notify Lender of any change in Pledgor's name, identity, state of organization or corporate structure within fifteen (15) days of such change; (c) give Lender thirty (30) days' prior written notice of any change in Pledgor's chief place of business, chief executive office or residence or the office where Pledgor keeps its records regarding the contract rights included in the Pledged Collateral and all originals of all chattel paper that evidence contract rights; and (d) pay promptly when due all payments, capital contributions, reimbursement requests, water charges, property and other taxes, assessments and governmental charges or levies imposed upon, and all claims (including claims for labor, materials and supplies) against or arising under, the Pledged Collateral.

14.     <u>Special Provisions with Respect to the Contract Rights</u>.  (a) Pledgor shall at its expense: (i) perform and observe all terms and provisions of the Company Agreement and Water Banking Agreement accordance with their terms, and take all such action to such end as may be from time to time reasonably requested by Lender; and (ii) furnish to Lender, promptly upon receipt thereof, copies of all notices, requests and other documents received by Pledgor under or pursuant to the Company Agreement or Water Banking Agreement, and from time to time furnish to Lender such information and reports regarding the Company Agreement or the Water Banking Agreement as Lender may reasonably request; (b) Pledgor shall not, except in the ordinary course of business and with Lender's prior written consent:  (i) cancel or terminate the Company Agreement or consent to approve or accept any amendment, assignment, cancellation or termination of the Water Banking Agreement; (ii)  waive any default under or breach of the

7

Company Agreement; (iii) take or permit any other action in connection with the Company Agreement or Water Banking Agreement that would impair the value of the interest or rights of Pledgor thereunder or that would impair the interest or rights of Lender; or (iv) use or permit the use of any water available under the Member Water Account at any given time for the benefit of any property other than the property encumbered by the Deed of Trust or property encumbered by that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing made by Borrower and certain affiliates of Borrower, as trustor, for the benefit of MetLife Real Estate Lending, LLC, a Delaware limited liability company, an affiliate of Lender, as beneficiary, dated November 5, 2020 and recorded in the Official Records of, among other counties, Fresno County, California on November 5, 2020 as Document No. 2020-0158800, as amended, modified, extended or restated from time to time, except such water available under the Member Water Account in excess of 31,000 stored acre-feet (the "**Water Reserve Requirement**"), provided that, upon (A) the expiration or earlier termination of either of the Farm Lease Agreements (unless replaced by another lease of the Real Property with a tenant and in a form each approved in writing by Lender), (B) possession of the Real Property by Borrower or any affiliate of Borrower, or (C) the occurrence of an Event of Default hereunder or under the Note, the Loan Agreement, the Deed of Trust or any other Loan Document as defined therein, the Water Reserve Requirement shall increase to 32,500 stored acre-feet.  For the avoidance of doubt, Pledgor shall be permitted to use or transfer, in its discretion but in accordance with the terms of the Company Agreement and the Water Banking Agreement, any water available under its Member Water Account in excess of the Water Reserve Requirement, free of any security interest of Lender.

15.     <u>Payments by Lender</u>.  If Pledgor fails to pay any payments, capital contributions, water charges, assessments, reimbursements or taxes relating to the Pledged Collateral, or to maintain the Pledged Collateral free of liens and encumbrances and in good standing, Lender may (but is not obligated to) take such action as is necessary (as determined by Lender in its reasonable discretion) to satisfy Pledgor's obligations.  Any payment so made or expenditure so incurred by Lender shall be an obligation of Pledgor secured by this Agreement and the Deed of Trust and shall not constitute a waiver of the default caused by Pledgor's failure to perform as agreed in this Agreement.  If Pledgor fails to reimburse Lender within ten (10) days of the date of written demand by Lender for reimbursement of such payment or expenditure, then interest will accrue (and be paid by Pledgor) on such amount at the Default Interest Rate set forth in the Note from the date of demand until the amount has been paid.

16.     <u>Optional Performance by Lender</u>.  If Pledgor fails to perform any agreement contained herein, Lender may (but is not obligated to) perform, or cause performance of, such agreement, and the expenses of Lender incurred in connection therewith shall be paid by Pledgor within ten (10) days of the date of written demand by Lender for reimbursement of such payment expenditures (and if Pledgor fails to do so, interest shall accrue (and be paid by Pledgor) on such amount at the Default Interest Rate set forth in the Note from the date of demand until the amount has been paid).

17.     <u>Lender's Limited Duties</u>.  The powers conferred on Lender hereunder are solely to protect the security interests of Lender in Pledged Collateral and shall not impose any duty upon Lender to exercise any such powers.  Except for the safe custody of any Pledged

8

Collateral in Lender's possession and the accounting for moneys actually received by Lender hereunder, Lender shall have no duty as to any Pledged Collateral, or as to the taking of any steps to preserve rights against other Persons that have or claim to have a lien against Pledged Collateral, or any other rights pertaining to any Pledged Collateral. Anything contained herein to the contrary notwithstanding, (a) Pledgor shall remain liable under any contracts and agreements included in the Pledged Collateral, to the extent set forth therein, to perform all of its duties and obligations thereunder to the same extent as if this Agreement had not been executed; (b) the exercise by Lender of any of its rights hereunder shall not release Pledgor from any of its duties or obligations under the contracts and agreements included in the Pledged Collateral; and (c) Lender shall not have any obligation or liability under any contracts and agreements included in the Pledged Collateral by reason of this Agreement.

18.     Indemnity.  Pledgor hereby covenants and agrees to indemnify and defend Lender and its agents and assigns and hold them harmless for, from, and against all claims, loss, liability, cost, and expense, including reasonable attorney fees and court costs that in any way, directly or indirectly, arise from or relate to the failure of Pledgor to comply with Pledgor's obligations under this Agreement.  This indemnity is intended to survive disposition of the Pledged Collateral or any other collateral for the Loan pursuant to foreclosure of Lender's liens and security interests and the voluntary surrender of all or any portion of the Pledged Collateral or other collateral to lieu of foreclosure. Pledgor shall pay to Lender upon demand the amount of any and all costs and expenses, including the reasonable fees and expenses of its counsel (including at trial, on appeal, in any bankruptcy case or proceeding or in connection with any enforcement efforts) and of any experts and agents, that Lender may incur in connection with (i) the administration of this Agreement, (ii) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, any of the Pledged Collateral, (iii) the exercise or enforcement of any of the rights of Lender hereunder, or (iv) the failure by Pledgor to perform or observe any of the provisions hereof.

19.     Default.  Pledgor shall be in default under this Agreement, and an **"Event of Default"** shall have occurred: (a) if an Event of Default occurs by Pledgor under the Note or any of the Loan Documents, (b) if any representation of Pledgor herein or in any other Loan Document shall prove to be untrue in any material respect when made, (c) if Pledgor fails to perform or observe any obligation, covenant, or terms of this Agreement, any of the Loan Documents and such failure shall remain unremedied for more than ten (10) days after Lender gives notice thereof to Pledgor, or (d) in the event of a default by the Company under the Water Banking Agreement or by Pledgor under the Company Agreement.  An Event of Default under this Agreement shall constitute an Event of Default under the Deed of Trust.

20.     Remedies.  Following the occurrence of an Event of Default, Lender may exercise any or all of its rights and remedies under the Deed of Trust and Loan Agreement and all applicable laws including under the Uniform Commercial Code as in effect in any relevant jurisdiction (the "UCC") whether or not the UCC applies to the affected Pledged Collateral. Among other things, Lender shall be entitled to (a) take immediate possession of all or any portion of the Pledged Collateral (including, but not limited to, exercising such rights and remedies with respect to the Member Water Account portion of the Pledged Collateral), (b) require Pledgor to assemble the Pledged Collateral and make it available to Lender at a place

9

to be designated by Lender that is reasonably convenient to Lender and Pledgor, and (c) sell, lease, assign or otherwise dispose of any or all of the Pledged Collateral in its then condition or following any commercially reasonable preparation or processing.  Pledgor agrees that a letter hand-delivered to Pledgor (or delivered to Pledgor by certified mail) at least ten (10) days before a public or private sale or other disposition of all or any part of the Pledged Collateral is reasonable notification of such sale or disposition.  Lender may be the purchaser of any or all of the Pledged Collateral at any such sale and shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Pledged Collateral sold at any such public sale, to use and apply any of the Secured Obligations as a credit on account of the purchase price for any Pledged Collateral payable by Lender at such sale.  Each purchaser at any such sale shall hold the property sold absolutely free from any claim or right on the part of Pledgor, and Pledgor hereby waives (to the extent permitted by applicable law) all rights of redemption, stay and/or appraisal which it now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted.  Pledgor hereby waives any claims against Lender arising by reason of the fact that the price at which any Pledged Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale (including, without limitation, a public offering made pursuant to a registration statement under the Securities Act), even if Lender accepts the first offer received and does not offer such Pledged Collateral to more than one offeree, and Lender is under no obligation to delay the sale of any Pledged Collateral for the period of time necessary to permit the issuer thereof to register it for a form of public sale requiring registration under the Securities Act or under applicable state securities laws, even if such issuer would, or should agree to register it.  If the proceeds of any sale or other disposition of the Pledged Collateral are insufficient to pay all the Secured Obligations, Pledgor shall be liable for the deficiency and the fees of any attorneys employed by Lender to collect such deficiency (including at trial, on appeal, and in any bankruptcy case or proceeding).  All rights and remedies of Lender are cumulative and not exclusive, and the commencement or partial exercise of any such right or remedy will not preclude Lender from exercising any other right or remedy until the Secured Obligations have been fully paid and performed.  Lender's rights specifically include the right of setoff and recoupment of any obligations owed by Lender to Pledgor against Pledgor's obligations to Lender.

21.    Assignment.  This Agreement shall create a continuing security interest in the Pledged Collateral and shall remain in full force and effect until the payment in full of the Secured Obligations.  This Agreement shall bind and inure to the benefit of the respective successors and assigns of Pledgor and Lender.  However, Pledgor shall not transfer or assign any of its rights of obligations under this Agreement without Lender's prior written consent (which consent may be withheld by Lender in its sole and absolute discretion).

22.    Choice of Law.  This Agreement shall be governed under California law, without regard to its conflicts of laws provisions, to govern the construction and enforcement hereof.

23.    Attorney Fees.  Pledgor shall pay all fees and costs, including reasonable attorney fees (including without limitation at trial, on appeal, and in any bankruptcy case or proceeding), incurred by Lender in enforcing Pledgor's obligations under this Agreement,

protecting Pledged Collateral or Lender's interest in Pledged Collateral, or asserting Lender's rights and remedies in Pledged Collateral, even if no case or proceeding is commenced. If any legal action or other proceeding is brought to enforce the terms of this Agreement, the losing party shall pay all fees and costs, including reasonable attorney fees, incurred by the prevailing party in any arbitration or litigation involving this Agreement, Pledged Collateral, or the security interests granted to Lender, including, but not limited to, any bankruptcy case or any proceeding or contested matter in any bankruptcy case.

24.   No Waiver.   No delay or omission by Lender in exercising any right or remedy provided in this Agreement shall impair any such right or remedy, or shall be construed to be a waiver of such right or remedy or any acquiescence therein.

25.   Invalidity.   If any term of this Agreement is determined to be illegal or unenforceable, that term shall be deemed deleted from this Agreement without invalidating the remaining terms of this Agreement.

26.   Entire Agreement; Merger.   This Agreement, the Loan Agreement and the related Loan Documents constitute and set forth the entire understanding among Lender and Pledgor with respect to Pledgor's grant of security interests in Pledged Collateral in favor of Lender , and Pledgor hereby agrees that no course of prior dealing between or among the parties, no usage of trade, and no parol or extrinsic evidence of any nature shall be used to supplement or modify any terms of this Agreement and that there are no conditions to the full effectiveness of this Agreement, except the execution and delivery of the Loan Documents by all parties thereto.

27.   Further Assurances.   Pledgor agrees that from time to time, at the expense of Pledgor, Pledgor will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Lender may request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable Lender to exercise and enforce its rights and remedies hereunder with respect to any Pledged Collateral. Without limiting the generality of the foregoing, Pledgor will, at Lender's request, appear in and defend any action or proceeding that may affect Pledgor's title to or Lender's security interest in all or any part of the Pledged Collateral.

28.   Amendments; etc.   No amendment, modification, termination or waiver of any provision of this Agreement, and no consent to any departure by Pledgor therefrom, shall in any event be effective unless the same shall be in writing and signed by Lender and, in the case of any such amendment or modification, by Pledgor. Any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

29.   Notices.   Any notice under this Agreement shall be in writing and shall be effective when either delivered in person or, if mailed, shall be deemed effective on the second day after deposited as registered or certified mail, postage prepaid, addressed to the parties at the following addresses:

11

| If to Lender: | Metropolitan Life Insurance Company |
|---|---|
| | Western Regional Office |
| | 205 E. River Park Circle, Suite 430 |
| | Fresno, CA 93720 |
| | Attn.: Director |

| If to Pledgor: | Farid Assemi, Trustee |
|---|---|
| Overnight Delivery: | Farshid Assemi, Trustee |
| | Darius Assemi, Trustee |
| | Maricopa Orchards, LLC |
| | ACDF, LLC |
| | Kamm South, LLC |
| | 1306 W. Herndon, Suite 101 |
| | Fresno, CA 93711 |

Any party may change its address for notices by written notice to the other. Notices may be given by facsimile transmission if a hard copy is also delivered thereafter, with such notice to be effective when received during business hours or the next business day following facsimile receipt if received outside of business hours.

*[Signatures Appear on Following Page.]*

12

IN WITNESS WHEREOF, each Pledgor hereby executes and delivers this Agreement to and for the benefit of Lender as of the date first written above.

PLEDGOR:

_____

Farid Assemi, as trustee of the Amended and
Restated Farid Assemi Revocable Trust dated
March 2, 2010

_____

Farshid Assemi, as trustee of the Amended and
Restated Farshid Assemi and Sonia Rosemary
Assemi Revocable Trust dated March 2, 2010

_____

Sonia Rosemary Assemi, as trustee of the Amended
and Restated Farshid Assemi and Sonia Rosemary
Assemi Revocable Trust dated March 2, 2010

_____

Darius Assemi, as trustee of the Amended and
Restated Darius Assemi Revocable Trust dated
March 2, 2010

MARICOPA ORCHARDS, LLC,
a California limited liability company

By: _____
      Farid Assemi, Its Manager

By: _____
      Farshid Assemi, Its Manager

By: _____
      Darius Assemi, Its Manager

13

ACDF, LLC,
a California limited liability company

By: _____
Farid Assemi, Its Manager

By: _____
Farshid Assemi, Its Manager

By: _____
Darius Assemi, Its Manager

KAMM SOUTH, LLC,
a California limited liability company

By: _____
Farid Assemi, Its Manager

By: _____
Farshid Assemi, Its Manager

By: _____
Darius Assemi, Its Manager

14

Pledge and Security Agreement (Poso Creek)
Dumar and Pistache Ranches
Loan No. 201755
110209007.2 0053564-00511

## CONSENT AND AGREEMENT OF THE COMPANY

This Consent and Agreement is executed by Poso Creek Water Company, LLC, a California limited liability company (the "**Company**") as of the date set forth below in connection with the foregoing Pledge and Security Agreement (the "**Pledge Agreement**") executed by Maricopa Orchards, LLC, a California limited liability company; ACDF, LLC, a California limited liability company; Kamm South, LLC, a California limited liability company; Farid Assemi, as Trustee of the Amended and Restated Farid Assemi Revocable Trust dated March 2, 2010; Farshid Assemi and Sonia Rosemary Assemi, as Trustees of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust dated March 2, 2010; and Darius Assemi, as Trustee of the Amended and Restated Darius Assemi Revocable Trust dated March 2, 2010 (collectively, "**Pledgor**"), in favor of METLIFE REAL ESTATE LENDING LLC, a Delaware limited liability company ("**Lender**"). The Company hereby certifies and agrees as follows:

(a)     The Operating Agreement of the Company, dated as of January 1, 2006, as amended by the First Amendment thereto dated as of August 8, 2007, and as further amended by the Second Amendment thereto dated as of December 31, 2009, as further amended by the Third Amendment dated May 3, 2010, as further amended by the Fourth Amendment dated January 23, 2012, and as further amended by the Fifth Amendment dated December 7, 2020 (as amended, the "**Company Agreement**") (i) is in full force and effect, and (ii) has not been amended, modified or assigned except as noted above, and there is no other oral or written agreement or understanding between the Company and any Pledgor with respect to any Pledgor's membership interest in the Company or rights arising under the Company Agreement or the Water Banking Agreement defined in the Pledge Agreement. There are, as of the date hereof, no defaults or breaches on the part of any Pledgor (including no state of facts that with notice, the passage of time, or both, could ripen into a default) under the Company Agreement, and Pledgor has paid in full all assessments and capital calls made under the Company Agreement.

The current members of the Company are as follows:

| NAME | % INTEREST |
|---|---|
| Maricopa Orchards, LLC | 23.125% |
| ACDF, LLC | 23.125% |
| Kamm South, LLC | 3.250% |
| Farid Assemi, as Trustee of the Amended and Restated Farid Assemi Revocable Trust | 8.357% |

15

| NAME | % INTEREST |
|---|---|
| Farshid Assemi and Sonia Rosemary Assemi, as Trustees of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust | 8.357% |
| Darius Assemi, as Trustee of the Amended and restated Darius Assemi Revocable Trust | 8.357% |
| Gary G. Robinson and Karen E. Robinson, as Trustees of the Gary G. Robinson and Karen E. Robinson 2004 Trust | 8.948% |
| Manning Avenue Pistachios, GP | 2.50% |
| Dennis Woods, as Trustee of The Dennis and Cheryl Woods Family Revocable Trust of May 2005 | 2.50% |
| The Water Agency, Inc. | 1.250% |
| Henry Family Farms, LP | 5.231% |
| Candice Henry, as Trustee of the Todd Henry Revocable Trust | 5.00% |

(b)     The Company shall provide Lender, at the address set forth in the Pledge Agreement, written notice of Pledgor's default under the Company Agreement or failure to make any required capital call or contribution or to pay any assessment, and shall provide Lender the opportunity (but not the obligation) to cure such default for a period of twenty (20) business days following such notice before any remedy or termination or other disposition of Pledgor's Percentage Interest (as defined in the Company Agreement) may proceed.

(c)     There has not been filed by or against nor has there been threatened against or contemplated by the Company, a petition in bankruptcy, voluntary or otherwise, any assignment for the benefit of creditors, any partition seeking reorganization or arrangement under the bankruptcy laws of the United States or of any state thereof, or any other action brought under said bankruptcy laws.

(d)     The Water Banking Agreement remains in full force and effect and no default has occurred or exists thereunder or under the note executed pursuant thereto. All fees, assessments and other payments due under the Water Banking Agreement by

16

the Company have been paid as and when due. The Water Banking Agreement has not been amended or modified or any interest therein assigned, nor shall it be modified, amended or assigned by the Company during the term of the Loan, absent Lender's prior written consent. The Company has not assigned, conveyed, transferred, sold, encumbered or mortgaged its interest in the Water Banking Agreement or the Water Bank Shares (as defined in the Company Agreement).

(e)     There are no leases affecting Pledgor's membership or percentage interest in the Company or the Member Water Account established under the Company Agreement.

(f)     Pledgor has the right to encumber its membership and percentage interest under the Company Agreement including Pledgor's Member Water Account under the terms of the Pledge Agreement. The Company acknowledges and consents to the pledge and assignment set forth in the Pledge Agreement and agrees that Lender is an "institutional lender" as defined in the Company Agreement.

(g)     The Company has received no written notice of any prior assignment, hypothecation or pledge of Pledgor's membership or percentage interest under the Company Agreement. Pledgor has not made any loans to the Company.

(h)     The Company is managed by its sole managers: Farid Assemi and Gary Robinson.

The Company acknowledges that Lender has requested this Consent in connection with Lender's loan to Pledgor and its affiliates and that execution and delivery of this Consent is a condition to Lender making the Loan. Lender will rely upon the accuracy of this certificate in connection with deciding to make the Loan to Pledgor. From time to time during the term of the Loan, the Company agrees to provide an update to the statements provided herein at Lender's written request, and to provide Lender with copies of any reports or statements provided to its members.

DATED this _____ day of _____, 2020.

POSO CREEK WATER COMPANY, LLC,
a California limited liability company

By_____
Farid Assemi, Its Manager

By_____
Keith A. Thomsen, Its Manager

17