ZEV SHECHTMAN (BAR NO. 266280)
Zev.Shechtman@saul.com
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone:  (310) 255-6100
Facsimile:  (310) 255-6200

Attorneys for Phillip Christensen, as Receiver

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation,

Plaintiff,

vs.

C & A FARMS, LLC, a California limited liability company, et al.,

Defendants.

☐ Affects All Cases
☐ Affects Metropolitan Life Ins. Co. v. C & A Farms, LLC, et al., 1:24-cv-01230
☐ Affects Brighthouse Life Ins. Co. v. Manning Avenue Pistachios, LLC, et al., 1:24-cv-01233
☒ Affects MetLife Real Estate Lending, LLC v. Panoche Pistachios, LLC, et al., 1:24-cv-01241

Lead Case No. 1:24-cv-01230-KES-SAB

Consolidated with Case Nos:
1:24-cv-01233; and 1:24-cv-01241

**RECEIVER'S NOTICE OF SALE HEARING AND AUCTION**

Auction Date:
Date:    July 17, 2026
Time:    10:00 a.m.
Place:   2787 W Bullard Ave.
         Fresno, CA 93711

Hearing Date:
Date:    August 3, 2026
Time:    1:30 p.m.
Place:   Robert E. Coyle U.S. Courthouse
         2500 Tulare Street
         Courtroom 6, 7th Floor
         Fresno, CA 93721

**NOTICE IS GIVEN that, on August 3, 2026, at 1:30 p.m., in Courtroom 6 of the Robert E. Coyle U.S. Courthouse, 2500 Tulare Street, 7th Floor, Fresno, California, 93721,** the Court will hold a hearing, upon this notice submitted by Phillip Christensen, Receiver of the above referenced estates (the "Receiver" or "Seller") (the "Sale Hearing") to:

1.    Confirm the sale by the Receiver of certain real property (the "Subject Property") described herein to the Buyer defined immediately below, for $3,098,680.00, or such higher price

58104757.1 392865-00005

obtained at auction (the "Purchase Price"), pursuant to the Court's *Amended Order Granting Receiver's Motion for Approval of Sale Procedures* (Doc. 147) (the "Sale Procedures Order"), the terms of which are incorporated herein by this reference, and consistent with 28 U.S.C. § 2001.

2. The Buyer is **Wonderful Nut Orchards LLC**, a Delaware limited liability company or its assignee (the "Buyer").

3. The Subject Property consists of certain tracts or parcels of agricultural land (the "Land") located in Fresno County, California, as more particularly described in Exhibit A hereto and all improvements, permanent plantings and fixtures situated on the Land, and any growing crops thereon (the "Improvements").

4. The terms and conditions of the sale are that the Land and Improvements are as stated in the PSA attached hereto as Exhibit B, subject to the terms hereof. The sale is "as is," "where is," "with all faults," with no warranty or recourse whatsoever, except to the extent expressly and unambiguously stated in the PSA.

5. The amount owed to the plaintiff lender with respect to the Subject Property is estimated at $9,500,000, which may not include all expenses of the Receiver which will later be added.

6. The proposed sale is subject to overbids on the following terms and pursuant to the Sale Procedures Order:

a. Listing. The Receiver has listed the Subject Property with his real estate broker, Pearson Realty (the "Broker") and continues to list it for overbidding.

b. Qualification to Bid. To submit a qualified bid, a prospective purchaser must submit its bid in writing to the Broker by *July 15, 2026*, at 5:00 p.m. Pacific Time, and such bid must clearly include the following consideration, terms, or information (a "Qualified Bid" and a "Qualified Bidder"):

i. Minimum Overbid and Bidding Increments. The minimum overbid is $3,250,000 and bidding increments at auction shall be not less than $10,000.

ii. Deposit. A deposit of 5% of the purchase price which must be delivered to the Receiver with the Qualified Bid (the "Deposit"). The Receiver will hold the

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Deposit in trust or escrow pending approval of the Court. The Deposit shall be nonrefundable unless:

(1)    Another bidder is the successful bidder at auction and the Qualified Bidder does not wish to be deemed a backup bidder; or

(2)    the Court does not approve the sale through no fault of the Qualified Bidder.

iii.    Contingencies. As of the date of the Auction there will be no outstanding contingencies other than the approval of the Court.

iv.    Subject to Overbid at Auction and Court Approval. The sale is subject to overbidding at auction and Court approval.

v.    No Liability of Receiver. The Receiver shall have no liability under any circumstances, and the Qualified Bidder's only possible remedy in the event of alleged breach by Receiver is return of its Deposit.

vi.    Good Faith. The Qualified Bidder must submit a declaration signed under penalty of perjury disclosing any connections such bidder has to the Receiver, the Broker, any owner, borrower, or insider thereof, any creditor, or other interested party, and that it has not, and will not, collude with any other potential purchasers or anyone else with respect to the sale.

vii.    Ability to Close. A Qualified Bid must be accompanied by evidence of the bidder's financial ability to close unconditionally in form and substance satisfactory to the Receiver.

viii.    Purchase and Sale Agreement. The Qualified Bid shall include a signed Purchase and Sale Agreement in form and content satisfactory to the Receiver. Unless otherwise agreed by the Receiver, all terms except purchase price will be the same as the PSA with Buyer.

NOTICE IS FURTHER GIVEN that any objections to the sale must be filed at least 7 days before the Sale Hearing.

NOTICE IS FURTHER GIVEN that, only if more than one bidder is qualified to bid for the Subject Property, an auction will be held on *July 17, 2026*, at 10:00 a.m. at the Receiver's

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

58104757.1 392865-00005

3

RECEIVER'S NOTICE OF SALE HEARING AND AUCTION

office, 2787 W. Bullard Ave., Fresno, CA 93711.

DATED:  June 17, 2026                    SAUL EWING LLP

By: _____
ZEV SHECHTMAN
Attorneys for Phillip Christensen, as Receiver

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

58104757.1 392865-00005                          4

RECEIVER'S NOTICE OF SALE HEARING AND AUCTION

# EXHIBIT A

# "EXHIBIT A"

**Order No.:**    45006081
**Title No.:**    FWKN-TO25000396

**For APN/Parcel ID(s):   103-100-21-01, 103-100-20-01, 103-100-19-01 and 103-040-37-00**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN THE COUNTY OF KERN, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

**PARCEL 1:  APN 103-100-21-01**

THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 18, TOWNSHIP 29 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA, COUNTY OF KERN, STATE OF CALIFORNIA,  ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ALL PETROLEUM, GAS, ASPHALTUM AND OTHER HYDROCARBONS AND OTHER MINERALS WITHIN OR UNDERLYING OR THAT MAY BE PRODUCED FROM SAID LAND, AS RESERVED IN THE DEED FROM ELMER HARRIS, ET AL, RECORDED SEPTEMBER 19, 1953 IN BOOK 2125, PAGE 317 OF OFFICIAL RECORDS.

**PARCEL 2:  APN 103-100-20-01**

THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 18, TOWNSHIP 29 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA, COUNTY OF KERN, STATE OF CALIFORNIA,  ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ALL MINERALS OF WHATSOEVER NATURE (INCLUDING, BUT NOT LIMITED TO, OIL, GAS AND OTHER HYDROCARBONS AND ASSOCIATED SUBSTANCES) IN OR UNDER OR THAT MAY BE PRODUCED FROM SAID LANDS, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND/OR DRILL FOR SAID MINERALS IN AND UPON SAID LANDS AND TO PRODUCE, TAKE AND REMOVE SAID MINERALS THEREFROM AND THE RIGHT FOR SAID PURPOSES TO ENTER UPON SAID LANDS AND ERECT, CONSTRUCT, MAINTAIN AND OPERATE THEREON BUILDINGS, STRUCTURES, MACHINERY, INSTALLATIONS, EQUIPMENT, LINES (INCLUDING PIPELINES, TELEPHONE, TELEGRAPH AND POWER LINES), ROADS AND OTHER FACILITIES AND TO USE THE SURFACE AND SUBSURFACE OF SAID LANDS IN ANY MANNER TO AID IN ALL OR ANY OF THE AFORESAID OPERATIONS AND IN THE STORING, PROCESSING, REMOVING AND TRANSPORTING OF ANY OF SAID MINERALS, TOGETHER WITH THE RIGHT TO DRILL ON SAID LANDS FOR WATER FOR USE IN ANY OF THE AFORESAID OPERATIONS AND THE FREE USE OF WATER SO OBTAINED, AS RESERVED BY SHELL OIL, COMPANY, A CORPORATION, IN DEED RECORDED JUNE 11, 1958 IN BOOK 2963, PAGE 109, OFFICIAL RECORDS.

**PARCEL 3:  APN 103-100-19-01**

THE NORTH HALF OF THE NORTHEAST QUARTER OF SECTION 18, TOWNSHIP 29 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA, COUNTY OF KERN, STATE OF CALIFORNIA,  ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ALL PETROLEUM, GAS, ASPHALTUM AND OTHER HYDROCARBONS

## "EXHIBIT A"
(continued)

AND OTHER MINERALS WHETHER SIMILAR TO THOSE HEREIN SPECIFIED OR NOT, AS RESERVED IN THE DEED FROM FULLERTON OIL COMPANY, A CORPORATION OF ARIZONA, RECORDED MARCH 3, 1953 IN BOOK 2047, PAGE 330 OF OFFICIAL RECORDS.'

**PARCEL 4: APN 103-040-37-00**

PARCEL A OF LOT LINE ADJUSTMENT NO. 32-07, IN THE UNINCORPORATED AREA, COUNTY OF KERN, STATE OF CALIFORNIA, AS PER THAT CERTAIN CERTIFICATE OF COMPLIANCE RECORDED JANUARY 23, 2008, FILE NO. 0208009976, OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

ALL THOSE PORTIONS OF THE NORTH HALF OF THE NORTH HALF OF SECTION 8, TOWNSHIP 29 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, KERN COUNTY, CALIFORNIA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE WEST HALF OF SAID NORTH HALF OF THE NORTH HALF OF SAID SECTION 8.

EXCEPTING FROM A PORTION OF THE ABOVE DESCRIBED LAND ALL OIL, GAS, HYDROCARBON SUBSTANCES THEREIN AND THEREUNDER, TOGETHER WITH THE RIGHT OF INGRESS AND EGRESS UPON SAID LAND AT ALL TIMES FOR THE DEVELOPMENT AND EXERCISE OF THE INTEREST RESERVED; AS RESERVED BY GENERAL PETROLUM CORPORATION, A CALIFORNIA CORPORATION, IN QUITCLAIM DEED RECORDED NOVEMBER 10, 1925 IN BOOK 97 OF OFFICIAL RECORDS, PAGE 187, KERN COUNTY RECORDS.

ALSO EXCEPTING FROM A PORTION OF THE ABOVE DESCRIBED LAND ALL MINERALS OF EVERY KIND AND NATURE WHATSOEVER INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING PETROLEUM, OIL, ASPHALTUM, GAS, AND ALL OTHER HYDROCARBON SUBSTANCES, CARBON DIOXIDE, NITROGEN, SULPHUR DIOXIDE, HELIUM, AND ALL OTHE NATURAL GASES, TOGETHER WITH THE EXCLUSIVE RIGHT TO PROSPECT, BORE, DRILL FOR AND PRODUCE ANY AND ALL OF SUCH MINERALS, EITHER BY MEANS OF FACILITIES LOCATED ON SAID LAND OR LOCATED ON ADJOINING OR NEARBY LANDS; AND FURTHER RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS, THE EXCLUSIVE EASEMENTS AND RIGHT TO BORE OR DRILL IN AND THROUGH SAID ABOVE DESCRIBED PROPERTY TO EXPLORE FOR AND EXTRACT PETROLEUM, OIL, ASPHALTUM, GAS AND OTHER HYDROCARBON SUBSTANCES, NITROGEN, CARBON DIOXIDE, SULPHUR DIOXIDE, HELIUM AND ALL OTHER NATURAL GASES AND MINERALS OF EVERY KIND AND NATURE WHATSOEVER FROM ADJOINING OR NEARBY LANDS; ALSO RESERVING THE RIGHT TO DRILL FOR, DEVELOP AND USE SUCH WATER ON SAID ABOVE DESCRIBED PROPERTY, AS GRANTOR MAY REQUIRE FOR ITS DRILLING AND/OR PRODUCING OPERATIONS ONLY; AS RESERVED BY SOCONY MOBIL OIL COMPANY, INC., A CORPORATION, IN CORPORATION GRANT DEED DATED JULY 31, 1963, AND RECORDED SEPTEMBER 23, 1963 IN BOOK 3646 OF OFFICIAL RECORDS, PAGE 842, KERN COUNTY RECORDS.

**PARCEL 5:**

ALL EASEMENTS RESERVED BY LARRY DOUGLAS WELLS AND KATHLEEN ANN WELLS, HUSBAND AND WIFE, IN THE GRANT DEED TO GOLDEN EMPIRE SHELLING, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, RECORDED FEBRUARY 22, 2008 AS DOCUMENT

Exhibit A

7

**"EXHIBIT A"**
(continued)

NO. 0208027428, KERN COUNTY OFFICIAL RECORDS.

EXCEPTING ANY PORTIONS THEREOF LYING WITHIN PARCEL 1 DESCRIBED ABOVE.

**PARCEL 6:**

A ONE-HALF (1/2) INTEREST IN THE EXISTING WATER WELL AND ALL RELATED PUMPS, MOTORS, TANKS AND OTHER EQUIPMENT, AS RESERVED BY  LARRY DOUGLAS WELLS AND KATHLEEN ANN WELLS, HUSBAND AND WIFE, IN THE GRANT DEED TO GOLDEN EMPIRE SHELLING, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, RECORDED FEBRUARY 22, 2008 AS DOCUMENT NO. 0208027428, KERN COUNTY OFFICIAL RECORDS, LOCATED WITHING THE FOLLOWING DESCRIBED AREA:

BEING ALL THOSE PORTIONS OF PARCEL B OF LOT LINE ADJUSTMENT NO. 32-07 AS PER CERTIFICATE OF COMPLIANCE RECORDED JANUARY 23, 2008 AS DOCUMENT NO. 0208009976 OF OFFICIAL RECORDS IN THE KERN COUNTY RECORDER'S OFFICE, BEING A PORTION OF THE NORTH HALF OF THE NORTH HALF OF SECTION 8, TOWNSHIP 29 SOUTH, RANGE 24 EAST, MOUNT DIABLO BASE AND MERIDIAN, KERN COUNTY, CALIFORNIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEING THE SOUTH 60.00 FEET OF THE EAST 160.00 FEET OF SAID PARCEL B, EXCEPTING THAT PORTION LYING EASTERLY OF THE WESTERLY RIGHT-OF-WAY LINE OF TRACY AVENUE (COUNTY ROAD NO. 453).

ALSO EXCEPTING ALL MINERALS OF EVERY KIND AND NATURE WHATSOEVER INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING PETROLEUM, OIL, ASPHALTUM, GAS, AND ALL OTHER HYDROCARBON SUBSTANCES, CARBON DIOXIDE, NITROGEN, SULPHUR DIOXIDE, HELIUM, AND ALL OTHE NATURAL GASES, TOGETHER WITH THE EXCLUSIVE RIGHT TO PROSPECT, BORE, DRILL FOR AND PRODUCE ANY AND ALL OF SUCH MINERALS, EITHER BY MEANS OF FACILITIES LOCATED ON SAID LAND OR LOCATED ON ADJOINING OR NEARBY LANDS; AND FURTHER RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS, THE EXCLUSIVE EASEMENTS AND RIGHT TO BORE OR DRILL IN AND THROUGH SAID ABOVE DESCRIBED PROPERTY TO EXPLORE FOR AND EXTRACT PETROLEUM, OIL, ASPHALTUM, GAS AND OTHER HYDROCARBON SUBSTANCES, NITROGEN, CARBON DIOXIDE, SULPHUR DIOXIDE, HELIUM AND ALL OTHER NATURAL GASES AND MINERALS OF EVERY KIND AND NATURE WHATSOEVER FROM ADJOINING OR NEARBY LANDS; ALSO RESERVING THE RIGHT TO DRILL FOR, DEVELOP AND USE SUCH WATER ON SAID ABOVE DESCRIBED PROPERTY, AS GRANTOR MAY REQUIRE FOR ITS DRILLING AND/OR PRODUCING OPERATIONS ONLY; AS RESERVED BY SOCONY MOBIL OIL COMPANY, INC., A CORPORATION, IN CORPORATION GRANT DEED DATED JULY 31, 1963, AND RECORDED SEPTEMBER 23, 1963 IN BOOK 3646 OF OFFICIAL RECORDS, PAGE 842, KERN COUNTY RECORDS.

# EXHIBIT B

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

## PURCHASE AND SALE AGREEMENT

This PURCHASE AND SALE AGREEMENT (this "Agreement") is made as of May 5, 2026 (the "Effective Date"), by and between (i) **PHILLIP CHRISTENSEN**, as Receiver ("Seller"), as seller, and (ii) **WONDERFUL NUT ORCHARDS LLC,** a Delaware limited liability company or assignee ("Purchaser"), as purchaser, and its assigns.

## WITNESSETH:

**WHEREAS,** Seller is the Receiver of the Property (as defined below); and

**WHEREAS,** Purchaser desires to purchase the Property from Seller, and Seller desires to sell the Property to Purchaser, in each case subject to and upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE,** in consideration of the mutual covenants herein contained and other good and valuable consideration, the mutual receipt and legal sufficiency of which are hereby acknowledged, Purchaser and Seller, intending to be legally bound, hereby agree as follows:

## ARTICLE I

## DEFINITIONS

**Section 1.1.** Defined Terms. As used in this Agreement, the following defined terms have the meanings indicated below:

"Agreement" means this Purchase and Sale Agreement and the exhibits and schedules attached hereto, as amended from time to time.

"Closing" has the meaning set forth in Section 5.1 of this Agreement.

"Closing Date" has the meaning set forth in Section 5.1 of this Agreement.

"Cultural Cost Reimbursement" has the meaning set forth in Section 5.4(a) of this Agreement.

"Deed" has the meaning set forth in Section 5.2(a) of this Agreement.

"Deposit" has the meaning set forth in Section 2.6 of this Agreement.

"District Court" means the United States District Court for the Eastern District of California (Fresno), the Honorable Kirk E. Sherriff, presiding, before which the Seller has been appointed as Receiver in Case No. **1:24-CV-01241-KES-SAB** (and related cases).

"Effective Date" has the meaning set forth in the introductory paragraph of this Agreement.

53622733.7 / 392865-00008

1

3597576.6

**Exhibit B**
**10**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

"Escrow Agent" has the meaning set forth in Section 2.6 of this Agreement.

"Improvements" has the meaning set forth in Section 2.1(b) of this Agreement.

"Inspection Period" has the meaning set forth in Section 4.1(a) of this Agreement.

"Land" has the meaning set forth in Section 2.1(a) of this Agreement.

"Permitted Exceptions" has the meaning set forth in Section 3.1 of this Agreement.

"Property" has the meaning set forth in Section 2.3 of this Agreement.

"Purchase Price" has the meaning set forth in Section 2.4 of this Agreement.

"Purchaser" has the meaning set forth in the introductory paragraph of this Agreement.

"Real Property" has the meaning set forth in Section 2.3 of this Agreement.

"Seller" has the meaning set forth in the introductory paragraph of this Agreement.

"Survey" has the meaning set forth in Section 3.1 of this Agreement.

"Title Company" has the meaning set forth in Section 3.1 of this Agreement.

"Title Policy" has the meaning set forth in Section 3.2 of this Agreement.

"Title Report" has the meaning set forth in Section 3.1 of this Agreement.

Terms not defined in this Section 1.1 herein shall be entitled to their plain meaning in the context of this Agreement.

## ARTICLE II

## PURCHASE AND SALE

**Section 2.1.** Agreement of Purchase and Sale. Subject to the terms and conditions hereinafter set forth, Seller agrees to sell and convey to Purchaser, and Purchaser agrees to purchase, the following:

(a)    those certain tracts or parcels of agricultural land (the "Land") located in Kern County, California (Kern County Assessor's Parcel Numbers 103-040-37-00-0, 103-100-19-01-4, 103-100-20-01-6, and 103-100-21-01-9, as more particularly described in **Exhibit A** attached hereto and made a part hereof, together with Seller's right, title and interest in all rights and appurtenances pertaining to such property, including the benefit of any development rights or appurtenant easements, and together with all rights, privileges, and appurtenances

53622733.7 / 392865-00008

2

3597576.6

**Exhibit B**
**11**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

pertaining thereto, including but not limited to Seller's right, title and interest in water rights, claims, permits, strips and gores, and easements, and

(b)     all of Seller's right, title and interest in and to all improvements, permanent plantings and fixtures situated on the Land, and any growing crops thereon (the "Improvements").

**Section 2.2.**     Intentionally Omitted.

**Section 2.3.** Property Defined. The Land and Improvements are hereinafter sometimes referred to as the "Real Property" or the "Property."

**Section 2.4.** Purchase Price. The purchase price to be paid by Purchaser to Seller for the Real Property shall be the sum of Three Million Ninety-Eight Thousand Six Hundred Eighty and No/100 Dollars ($3,098,680.00) (the "Purchase Price").

**Section 2.5.** Payment of Purchase Price. The Purchase Price shall be payable in full at the Closing in cash by federal wire transfer of immediately available funds.

**Section 2.6.** Deposit; Transaction Fee. Within two (2) business days after the Effective Date, Purchaser shall deposit with Chicago Title Company, with an address of 7330 N Palm Ave, Suite 101, Fresno, CA 93711 (the "Escrow Agent"), Attention: Sue Meyer, the sum of One Hundred Thousand and No/100 Dollars ($100,000.00) (the "Deposit").

The Escrow Agent shall hold the Deposit in accordance with the terms and conditions of this Agreement. Purchaser shall be responsible for the payment of all costs and fees imposed on the Deposit account. The Deposit shall be distributed in accordance with the terms of this Agreement.

**Section 2.7.**     Escrow Agent.

Escrow Agent shall execute this Agreement solely for the purpose of being bound by the provisions of Sections 2.6 and 2.7 hereof.

Escrow Agent shall hold and dispose of the Deposit in accordance with the terms of this Agreement. Seller and Purchaser agree that the duties of the Escrow Agent hereunder are purely ministerial in nature and shall be expressly limited to the safekeeping and disposition of the Deposit in accordance with this Agreement. Escrow Agent shall incur no liability in connection with the safekeeping or disposition of the Deposit for any reason other than Escrow Agent's fraud, willful misconduct or gross negligence. In the event that Escrow Agent shall be in doubt as to its duties or obligations with regard to the Deposit, or in the event that Escrow Agent receives conflicting instructions from Purchaser and Seller with respect to the Deposit (but in each case subject to the last sentence of this Section 2.7 pertaining to the circumstances in which the unilateral instructions of Purchaser shall govern), Escrow Agent shall not disburse the Deposit and shall, at its option, continue to hold the Deposit until both Purchaser and Seller agree as to its

53622733.7 / 392865-00008

3

3597576.6

**Exhibit B**
**12**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

disposition or until a final judgment is entered by a court of competent jurisdiction directing its disposition, or Escrow Agent shall interplead the Deposit in accordance with the laws of the state in which the Property is located.

Escrow Agent shall not be responsible for any interest on the Deposit except as is actually earned, or for the loss of any interest resulting from the withdrawal of the Deposit prior to the date interest is posted thereon or for any loss caused by the failure, suspension, bankruptcy or dissolution of the institution in which the Deposit is deposited. Notwithstanding anything to the contrary in this Agreement, Escrow Agent agrees to comply with the unilateral instructions of Purchaser with respect to the return of the Deposit to Purchaser prior to expiration of the Inspection Period.

## ARTICLE III

## TITLE AND SURVEY

**Section 3.1.** Title Inspection Period. Seller will order and provide Purchaser with a preliminary title report for the Property (the "Title Report") issued by Chicago Title Insurance Company ("Title Company"). During the period beginning upon the date of Purchaser's receipt of the Title Report and ending at 5:00 p.m. (local time at the Property) on the later of (a) the last day of the Inspection Period (as defined below) and (b) ten (10) business days after receipt of the Title Report, Purchaser shall have the right to review the Title Report. Title to the Property shall be conveyed subject to all exceptions to title identified in the Title Report other than the deed of trust in favor of MetLife Real Estate Lending LLC identified in the Title Report and any delinquent real estate taxes and assessments (the "Permitted Exceptions"). If Purchaser desires, Purchaser may order a new survey or an update of any existing survey of the Real Property during the Inspection Period (collectively, the "Survey"), at Purchaser's sole cost.

**Section 3.2.** Conveyance of Title. At the Closing, Seller shall convey and transfer to Purchaser fee simple title to the Land and the Improvements, free and clear of any and all liens and encumbrances other than the Permitted Exceptions, by execution and delivery of the Deed (as defined in Section 5.2(a) hereof). Evidence of delivery of such title shall be the issuance by the Title Company of an ALTA Standard Owner's Policy of Title Insurance (the "Title Policy") covering the Real Property, in the full amount of the Purchase Price, subject only to the Permitted Exceptions.

## ARTICLE IV

## REVIEW OF PROPERTY

**Section 4.1.**   Right of Inspection.

(a)     Inspection Period. During the period that begins on the Effective Date and ends at 5:00 p.m. (local time at the Property) on the 21st day thereafter (hereinafter referred to as the "Inspection Period"), Purchaser shall have the right to make a physical inspection of the Real

53622733.7 / 392865-00008

4

3597576.6

**Exhibit B**
**13**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

Property, including a Phase I inspection of the environmental condition thereof, testing of existing wells and pumps and related irrigation equipment, pursuant to the terms and conditions of this Agreement. Purchaser shall also have the right to have a Survey made of the Property (at Purchaser's sole cost), all subject to the procedures set forth in Section 4.1(b) below.

(b)     On-Site Property Inspections. Purchaser understands and agrees that any on-site inspections of the Property shall occur at reasonable times upon reasonable prior written notice to Seller. Seller reserves the right to have a representative present during any such inspections. Purchaser shall have the right to test any existing wells on the Real Property at Purchaser's own cost and expense. Purchaser shall have no right to conduct any invasive testing at the Property, absent Seller's prior written consent. In no event shall Purchaser provide any governmental entity or agency with information concerning the environmental condition of the Property without obtaining Seller's prior written consent thereto, which consent may be withheld in Seller's sole and absolute discretion; provided that no such consent shall be required in the event that Purchaser is required by applicable law to provide such information to a governmental entity or agency or in the event that such disclosure is necessary to enforce Purchaser's rights under this Agreement or in connection with any legal proceeding arising in connection with this Agreement.

As a condition to Purchaser's (or its agents') access on the Property, Purchaser (and its agents, as applicable) shall provide Seller with evidence of liability insurance in an amount per occurrence not less than $1,000,000. Purchaser shall keep the Property free from any liens arising out of any work performed, materials furnished, or obligations incurred by or on behalf of Purchaser or Purchaser's agents with respect to any inspection or testing of the Property. If any such lien is filed, Purchaser shall cause the same to be discharged of record within thirty (30) days after knowledge by Purchaser thereof by satisfying the same. Failure by Purchaser to discharge such lien within said thirty (30) day period shall entitle Seller, at its option, to declare this Agreement to be terminated.

Purchaser agrees to protect, indemnify, defend and hold Seller harmless from and against any claim for liabilities, losses, costs, expenses (including reasonable attorneys' fees), damages or injuries ("Claims") arising out of or resulting from the inspection of the Property by Purchaser or its agents or consultants; provided, however, that in no event shall Purchaser be liable to or indemnify Seller for any Claims arising out of or resulting from the mere discovery of a pre-existing condition on the Property, but shall be liable for any exacerbation of such condition caused by Purchaser's activities on the Property. Notwithstanding anything to the contrary in this Agreement, Purchaser's obligation to indemnify and hold harmless Seller pursuant to this paragraph shall survive the Closing or any termination of this Agreement.  The provisions of this Section 4.1 shall survive any termination of this Agreement.

In addition, in the event of termination of this Agreement, and provided that such termination is not due to Seller's default, Seller shall have the option of requiring Purchaser to deliver to Seller copies of any studies, reports, analysis and investigations of any kind with respect to the Property which have been prepared by or at the request of Purchaser including, without

53622733.7 / 392865-00008

5

3597576.6

**Exhibit B**
**14**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

limitation, well testing, test wells, soil engineering reports, maps, surveys, site plans and plans and specifications of any kind relating to the Property which have been prepared by or at the request of Purchaser, and permits, approvals, and authorizations pertaining to the Property, but excluding any internally generated marketing reports or studies, architectural plans and attorney-client privileged or proprietary materials ("Work Product"), "AS-IS," without recourse to Purchaser and without representation or warranty as to accuracy or completeness, and subject to the rights of the applicable third-parties who prepared the Work Product, including any limitations or prohibitions on use or reliance; provided, Seller reimburses Purchaser for one hundred percent (100%) of the third-party costs incurred by Purchaser in connection with the preparation of any Work Product so requested by Seller.

**Section 4.2.** Right of Termination. If for any reason or no reason, Purchaser determines that the Property or any aspect thereof is unsuitable for Purchaser's acquisition during the Inspection Period, Purchaser shall have the right to terminate this Agreement by giving written notice thereof to Seller at any time prior to the expiration of the Inspection Period, and if Purchaser gives such notice of termination prior to the expiration of the Inspection Period, this Agreement shall terminate. If this Agreement is terminated pursuant to the foregoing provisions of this paragraph, then neither party shall have any further rights or obligations hereunder (except for any indemnity obligations of either party that expressly survive the termination of this Agreement pursuant to the other provisions of this Agreement), all Deposits shall be returned to Purchaser, and each party shall bear its own costs incurred hereunder. If Purchaser fails to give Seller a notice of termination prior to the expiration of the Inspection Period, Purchaser shall be deemed to have elected to proceed with the purchase of the Property pursuant to the terms hereof and the Deposit shall become non-refundable.

**ARTICLE V**

**CLOSING**

**Section 5.1.** Time and Place. The purchase and sale of the Property shall be consummated pursuant to a mutually satisfactory and customary escrow arrangement established with the Escrow Agent (the "Closing") on a date mutually agreed to by Seller and Purchaser (the "Closing Date"); provided, under no circumstances shall the Closing occur later than twenty-one (21) days after the entry of the order approving the sale by the District Court, unless the District Court or the Court of Appeals has entered an order staying the effect of such order approving the sale. At the Closing, Seller and Purchaser shall perform the obligations set forth in, respectively, Section 5.2 and Section 5.3 hereof, the performance of which obligations shall be concurrent conditions.

**Section 5.2.** Seller's Obligations at the Closing. At the Closing, subject to District Court approval, Seller shall

(a)    deliver to Purchaser a duly executed deed or deeds (the "Deed") conveying the Land and Improvements, subject only to the Permitted Exceptions;

53622733.7 / 392865-00008

6

3597576.6

**Exhibit B**

**15**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

(b)    deliver to Purchaser such evidence as may be reasonably required by the Title Company as to the authority of the person or persons executing documents on behalf of Seller, subject to District Court approval;

(c)    deliver to Purchaser possession and occupancy of the Property, subject to the Permitted Exceptions and District Court approval;

(d)    execute a closing statement providing for adjustments and prorations required or contemplated by this Agreement and otherwise reasonably acceptable to Purchaser (the "Closing Statement"); and

(e)    deliver such additional documents as shall be reasonably required by Purchaser or the Escrow Agent to consummate the transactions contemplated by this Agreement.

**Section 5.3.**    Purchaser's Obligations at the Closing.  At the Closing, Purchaser shall:

(a)    pay to Seller the full amount of the Purchase Price (less the Deposit), as increased or decreased by prorations and adjustments as herein provided, in immediately available wire transferred funds pursuant to Section 2.5 hereof;

(b)    join Seller in execution of the Closing Statement; and

(c)    deliver such additional documents as shall be reasonably required by Seller or Escrow Agent to consummate the transactions contemplated by this Agreement.

**Section 5.4.**    Credits and Prorations.

(a)    Cultural Cost Reimbursements. At the Closing, through the Escrow, Purchaser shall reimburse Seller for all cultural costs, including, without limitation, water costs and water district assessments, actually incurred by Seller in connection with the 2026 crops from November 1, 2025, through the Closing (the "Cultural Cost Reimbursements"). Prior to the Closing Date, Seller shall provide Purchaser and Escrow Agent with a written statement showing the amount of the Cultural Costs Reimbursement. Purchaser shall deposit the Cultural Costs Reimbursement with Escrow Agent, in cash, prior to the Closing Date.

(b)    Property Taxes. The Title Company shall prorate real and personal property taxes and assessments ("Property Taxes") as of the Closing Date, and such prorations shall be set forth on the Closing Statement.  Seller shall be liable for the proportionate amount of such taxes and expenses attributable to the period through and including the Closing Date, and Purchaser shall be liable for the proportionate amount of such taxes and expenses attributable to the period

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

after the Closing Date. If the amount of any proration cannot be determined at the Closing, adjustments will be made between the parties as soon after the Closing as possible.

(c)    Utilities. Fuel, electricity, and other utility costs other than Cultural Cost Reimbursements shall be apportioned as of 12:01 a.m. on the Closing Date.

(d)    Tax Refunds. If any refunds of real property taxes or assessments, water rates and charges or sewer taxes and rents shall be made after the Closing, the same shall be held in trust by Seller or Purchaser, as the case may be, and shall first be applied to the unreimbursed costs incurred in obtaining the same, then the balance, if any, shall be paid to Seller (to the extent such refunds relate to periods prior to the Closing Date) and to Purchaser (to the extent such refunds relate to periods commencing after the Closing Date).

(e)    Insurance Premiums. No insurance policies of Seller are to be assigned or otherwise transferred to Purchaser, and no apportionment of the premiums therefore shall be made.

(f)    Estimates. If any of the foregoing items of income or expense cannot be apportioned at the Closing because of the unavailability of the amounts which are to be apportioned, such items shall be apportioned on the basis of a good faith estimate by the parties and adjusted and reconciled as soon as practicable after the Closing Date; provided, however, all such adjustments and reconciliations shall occur no later than three (3) months after the Closing Date.

(g)    Errors. If either party discovers any errors on the Closing Statement within thirty (30) days after the Closing Date, the parties shall make such adjustments and reconciliations as are necessary to correct such errors.

(h)    Adjustment to Purchase Price. If a net amount is owed by Seller to Purchaser pursuant to Section 5.4, such amount shall be credited against the Purchase Price. If a net amount is owed by Purchaser to Seller pursuant to Section 5.4, such amount shall be paid together with the Purchase Price.

(i)    The provisions of this Section 5.4 shall survive the Closing.

Section 5.5.    Transaction Taxes and Closing Costs.

(a)    Seller shall pay the fees of any counsel representing Seller in connection with this transaction.  Seller shall also pay the following costs and expenses:

53622733.7 / 392865-00008

8

3597576.6

**Exhibit B**
**17**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

(a)    one-half of the escrow fee, if any, which may be charged by the Escrow Agent;

(b)    any fee for title search and examination charged by the Title Company in connection with the issuance of the Title Report;

(c)    the base policy premium for a CLTA Standard Owner's Title Policy on the Real Property;

(d)    one-half of the costs for the recording of the Deed;

(e)    any state or local real estate transfer tax or documentary transfer tax payable due to the sale or transfer of the Property, if any;

(f)    the fee for the real estate commission payable to Pearson Realty ("PR");

(b)    Purchaser shall pay the fees of any counsel or other advisors or real estate brokers representing Purchaser in connection with this transaction. Purchaser shall also pay the following costs and expenses:

(a)    one-half of the escrow fee, if any, which may be charged by the Escrow Agent;

(b)    one-half of the costs for the recording of the Deed;

(c)    all of the base policy premium for the Owner's Title Policy to be issued to Purchaser by the Title Company at the Closing above the cost of a CLTA Standard Owner's Title Policy, all of the costs of all endorsements thereto, all of the costs of the premium for any lender's title insurance policy to be issued by the Title Company, and the cost of any endorsements thereto; and

(d)    all of the cost of any updates to the Survey, or any new surveys obtained by Purchaser and any environmental testing performed or commissioned by Purchaser.

(c)    All costs and expenses incident to this transaction and the Closing thereof,

53622733.7 / 392865-00008

9

3597576.6

**Exhibit B**
**18**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

and not specifically described above, shall be paid by the party incurring same.

(d)    The provisions of this Section 5.5 shall survive the Closing.

**Section 5.6.** Conditions Precedent to Obligations of Purchaser. The obligation of Purchaser to consummate the transactions hereunder shall be subject to the fulfillment on or before the Closing Date of all of the following conditions, any or all of which may be waived by Purchaser in its sole discretion:

(a)    Seller shall have delivered to Purchaser all of the items required to be delivered to Purchaser pursuant to the terms of this Agreement, including, but not limited to, those provided for in Section 5.2 hereof;

(b)    All of the representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects as of the date of the Closing;

(c)    Seller shall have performed and observed all covenants and agreements of this Agreement to be performed and observed by Seller; and

(d)    The Title Company shall be irrevocably committed to issue the Title Policy as set forth in Section 3.2 hereof.

**Section 5.7.** Conditions Precedent to Obligations of Seller. The obligation of Seller to consummate the transactions hereunder shall be subject to the fulfillment on or before the Closing Date of all of the following conditions, any or all of which may be waived by Seller in its sole discretion:

(a)    Seller shall have received the Purchase Price pursuant to and payable in the manner provided for in this Agreement;

(b)    Purchaser shall have delivered to Seller all of the items required to be delivered to Seller pursuant to Section 5.3 hereof;

(c)    All of the representations and warranties of Purchaser contained in this Agreement shall be true and correct in all material respects as of the date of the Closing; and

53622733.7 / 392865-00008

10

3597576.6

**Exhibit B**
**19**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

(d)    Purchaser shall have performed and observed, in all material respects, all covenants and agreements of this Agreement to be performed and observed by Purchaser.

## ARTICLE VI

## REPRESENTATIONS, WARRANTIES AND COVENANTS

**Section 6.1.** Representations and Warranties of Seller. As of the Effective Date, based upon its actual knowledge, Seller, solely in Seller's capacity as Receiver, and not in any personal, individual, corporate, or other capacity, hereby makes the following representations and warranties to Purchaser without any duty of independent investigation and inquiry, which representations and warranties shall be deemed to have been made again as of the Closing:

(a) **Authority; No Conflict**. Seller, as Receiver, has, or will as of the Closing Date have, full authority, including the approval of the District Court which appointed the Receiver, to enter into and perform this Agreement and the person or persons signing this Agreement and any documents executed pursuant hereto on Seller's behalf have full power and authority to bind Seller.

**Section 6.2.** Representations and Warranties of Purchaser. Purchaser hereby makes the following representations and warranties to Seller as of the Effective Date, which representations and warranties shall be deemed to have been made again as of the Closing:

(a)    Authority. Purchaser has the full right and limited liability company authority to enter into this Agreement and to consummate or cause to be consummated the transactions contemplated by this Agreement.

(b)    Pending Actions. There is no action, suit, arbitration, unsatisfied order or judgment, government investigation or proceeding pending against Purchaser which, if adversely determined, could individually or in the aggregate materially interfere with the consummation of the transactions contemplated by this Agreement.

(c)    No Conflict. Neither the execution and delivery of this Agreement nor the fulfillment of or compliance with its terms and provisions will violate, conflict with or result in a breach of the terms, conditions or provisions of, or constitute a default under, (a) Purchaser's organizational documents or (b) any contract to which Purchaser is a party or by which it is bound.

## ARTICLE VII

## DEFAULT, COURT, AND AS-IS CONDITION, LIQUIDATED DAMAGES

**Section 7.1.** DEFAULT BY PURCHASER. **IN THE EVENT THE SALE OF THE PROPERTY AS CONTEMPLATED HEREUNDER IS NOT CONSUMMATED DUE TO PURCHASER'S DEFAULT HEREUNDER, AND PURCHASER HAS NOT OTHERWISE**

53622733.7 / 392865-00008

11

3597576.6

**Exhibit B**

**20**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

**ELECTED TO TERMINATE THIS AGREEMENT PRIOR TO THE EXPIRATION OF THE INSPECTION PERIOD, SELLER SHALL BE ENTITLED, AS ITS SOLE AND EXCLUSIVE REMEDY, TO TERMINATE THIS AGREEMENT AND RECEIVE THE DEPOSIT AS LIQUIDATED DAMAGES FOR PURCHASER'S BREACH OF THIS AGREEMENT, IT BEING AGREED BETWEEN THE PARTIES HERETO THAT THE ACTUAL DAMAGES TO SELLER IN THE EVENT OF SUCH BREACH ARE IMPRACTICAL TO ASCERTAIN AND THE AMOUNT OF THE DEPOSIT IS A REASONABLE ESTIMATE THEREOF.**



PURCHASER'S INITIALS   SELLER'S INITIALS

**Section 7.2.** <u>DEFAULT BY SELLER</u>. **IF SELLER SHALL FAIL TO PERFORM ANY OF THE MATERIAL COVENANTS AND AGREEMENTS CONTAINED HEREIN TO BE PERFORMED BY SELLER AT OR PRIOR TO THE CLOSING, PURCHASER MAY, AS ITS SOLE AND EXCLUSIVE REMEDY, AS LIQUIDATED DAMAGES, OBTAIN A RETURN OF THE DEPOSIT, WHICH THE SELLER MAY ONLY CONTEST BEFORE THE DISTRICT COURT.**

PURCHASER'S INITIALS   SELLER'S INITIALS

**Section 7.3.** <u>No Default</u>. In the event the sale of the Property as contemplated hereunder is not consummated and such failure is not the result of a Purchaser default under <u>Section 7.1</u> or a Seller default under <u>Section 7.2</u>, Purchaser shall be entitled to receive a return of the Deposit.

**Section 7.4.** <u>DISTRICT COURT</u>. **NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, OR ANY OTHER DOCUMENT RELATING TO THIS AGREEMENT, THE DISTRICT COURT HAS EXCLUSIVE JURISDICTION OVER ANY DISPUTE WITH THE SELLER REGARDING THIS AGREEMENT.**



PURCHASER'S INITIALS   SELLER'S INITIALS

**Section 7.5** <u>AS-IS; RELEASE</u>. AS AN ESSENTIAL INDUCEMENT TO SELLER TO ENTER INTO THIS AGREEMENT, AND AS PART OF THE DETERMINATION OF THE PURCHASE PRICE, PURCHASER ACKNOWLEDGES, UNDERSTANDS AND AGREES AS OF THE EFFECTIVE DATE AND AS OF THE CLOSING TO THE PROVISIONS SET FORTH BELOW.

      A.      <u>AS-IS; WHERE-IS</u>.      EXCEPT AS OTHERWISE EXPRESSLY

53622733.7 / 392865-00008

12

3597576.6

**Exhibit B**
**21**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

PROVIDED IN SECTION 6.1 ABOVE, PURCHASER ACKNOWLEDGES AND AGREES THAT (I) THE SALE OF THE PROPERTY HEREUNDER IS AND WILL BE MADE ON AN "AS IS, WHERE IS, WITH ALL FAULTS" BASIS, WITH PURCHASER ASSUMING THE PROPERTY IN SUCH CONDITION AND AGREEING THAT SELLER SHALL NOT HAVE ANY RESPONSIBILITY FOR THE CONDITION OF THE PROPERTY (OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, THE REPAIR OF ANY PORTION OF THE PROPERTY, THE CONSTRUCTION OF ANY IMPROVEMENTS AND/OR THE ENVIRONMENTAL CONDITION OF THE PROPERTY), (II) SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE OF, AS TO, CONCERNING OR WITH RESPECT TO THE PROPERTY OR ANY OTHER MATTER WHATSOEVER (INCLUDING, WITHOUT LIMITATION ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ENVIRONMENTAL CONDITION OR ANY HAZARDOUS SUBSTANCES IN, ON, UNDER OR ABOUT THE PROPERTY OR THE CONSTRUCTION OF ANY IMPROVEMENTS), (III) PRIOR TO THE EXPIRATION OF THE INSPECTION PERIOD, PURCHASER SHALL HAVE CONFIRMED INDEPENDENTLY ALL INFORMATION THAT IT CONSIDERS MATERIAL TO ITS PURCHASE OF THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, THE CONDITION OF THE PROJECT AND TITLE TO THE PROPERTY), (IV) PURCHASER IS A SOPHISTICATED PURCHASER AND ACKNOWLEDGES THAT TO THE FULLEST EXTENT AT LAW, SELLER SHALL NOT BE RESPONSIBLE FOR ANY MATTERS AFFECTING THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE ENVIRONMENTAL CONDITION THEREOF OR CONSTRUCTION OF ANY IMPROVEMENTS OR OTHERWISE WITH RESPECT TO THE PROPERTY, AND (V) ANY INFORMATION PROVIDED WITH RESPECT TO THE PROPERTY (INCLUDING, WITHOUT LIMITATION, ANY DILIGENCE MATERIALS) IS SOLELY FOR PURCHASER'S CONVENIENCE AND SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND EXPRESSLY DISCLAIMS ALL REPRESENTATIONS AS TO THE ACCURACY OR COMPLETENESS OF THE SAME.

B. <u>RELEASE</u>. AS A MATERIAL PART OF THE CONSIDERATION TO SELLER FOR THE SALE OF THE PROPERTY, PURCHASER WAIVES, RELEASES, ACQUITS AND DISCHARGES SELLER AND SELLER PARTIES FROM ANY AND ALL LOSSES, COSTS, CLAIMS, LIABILITIES, EXPENSES, CAUSES OF ACTION, DEMANDS, FEES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES) AND OBLIGATIONS, WHETHER OR NOT LATENT, KNOWN AND UNKNOWN, FORESEEN AND UNFORESEEN AND WHETHER OR NOT NOW ACCRUED, INCLUDING, WITHOUT LIMITATION, ANY RIGHTS TO, OR CLAIM FOR, CONTRIBUTIONS OR INDEMNITY THAT ARE BASED DIRECTLY OR INDIRECTLY ON, ARISE FROM OR IN CONNECTION WITH, OR ARE RELATED TO (IN ANY WAY) (I) ANY PAST, PRESENT OR FUTURE CONDITION OF THE PROPERTY (INCLUDING, WITHOUT LIMITATION,

53622733.7 / 392865-00008

13

3597576.6

**Exhibit B**

**22**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

THE PRESENCE OF ANY HAZARDOUS SUBSTANCES IN, ON, UNDER OR ABOUT THE PROPERTY OR THE CONSTRUCTION OF ANY IMPROVEMENTS), (II) ANY AND ALL STATEMENTS, REPRESENTATIONS, WARRANTIES, DETERMINATIONS, CONCLUSIONS, ASSESSMENTS, ASSERTIONS OR ANY OTHER INFORMATION CONTAINED IN ANY OF THE DILIGENCE MATERIALS, (III) ANY DEFECT, INACCURACY OR INADEQUACY IN TITLE OF THE PROPERTY OR THE CONSTRUCTION OF ANY IMPROVEMENTS, AND (IV) THE PROPERTY OR THE USE, TENANCY, OCCUPANCY OR OPERATION THEREOF. PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT (A) PURCHASER MAY HEREAFTER DISCOVER FACTS DIFFERENT FROM, OR IN ADDITION TO, THOSE NOW OR AS OF THE CLOSING KNOWN OR BELIEVED TO BE TRUE REGARDING THE PROPERTY AND/OR DILIGENCE MATERIALS, AND SELLER SHALL HAVE NO LIABILITY IN CONNECTION THEREWITH (PURCHASER HEREBY BEING SOLELY RESPONSIBLE FOR THE SAME), AND (B) PURCHASER'S AGREEMENT TO WAIVE, RELEASE, ACQUIT AND DISCHARGE SELLER AND SELLER PARTIES AS SET FORTH HEREIN SHALL REMAIN IN FULL FORCE AND EFFECT, NOTWITHSTANDING THE EXISTENCE OR DISCOVERY OF ANY SUCH DIFFERENT OR ADDITIONAL FACTS.

WITH RESPECT TO THE RELEASES AND WAIVERS SET FORTH IN THIS SECTION, PURCHASER EXPRESSLY WAIVES THE BENEFITS OF SECTION 1542 OF THE CALIFORNIA CIVIL CODE, WHICH PROVIDES AS FOLLOWS:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

PURCHASER HAS BEEN ADVISED BY ITS LEGAL COUNSEL AND UNDERSTANDS THE SIGNIFICANCE OF THIS WAIVER OF SECTION 1542 RELATING TO UNKNOWN, UNSUSPECTED AND CONCEALED CLAIMS. BY ITS INITIALS BELOW, PURCHASER ACKNOWLEDGES THAT IT FULLY UNDERSTANDS, APPRECIATES AND ACCEPTS ALL OF THE TERMS OF THIS SECTION 7.5.

_____
PURCHASER'S INITIALS

      C.    <u>Survival</u>.  This Section 7.5 shall survive the termination of this Agreement and the Closing.

**ARTICLE VIII**

53622733.7 / 392865-00008

14

3597576.6

**Exhibit B**
**23**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

## RISK OF LOSS

Section 8.1. <u>Casualty</u>. If, prior to the Closing, all or any part of the Property shall be destroyed or materially damaged by fire or other casualty, Seller shall promptly notify Purchaser of such fact. If such notice is given subsequent to the expiration of the Inspection Period, Purchaser shall have the right to terminate this Agreement by giving notice thereof to Seller not later than ten (10) business days after the date on which Purchaser received Seller's notice of such casualty (and, if necessary, the Closing Date shall be extended until the day that is two (2) business days after the expiration of such period in order to permit Purchaser the full period to consider whether or not to exercise its termination right), and all Deposits shall be returned to Purchaser. For purposes of this Section 8.1, a "material" part of the Property means a casualty loss (i) which would exceed five percent (5%) of the Purchase Price to repair, or (ii) which is not insured for the full replacement cost (except for deductible amounts).

Failure of Purchaser to deliver any such notice of termination to Seller within such ten (10) business day period shall be a deemed election by Purchaser to proceed with the purchase of the Property. If Purchaser shall elect (or be deemed to have elected) to terminate this Agreement as aforesaid, the Deposit shall be paid to Purchaser, whereupon this Agreement shall terminate and be of no further force and effect and neither party shall have any liabilities or obligations to the other hereunder, except for those obligations and liabilities which expressly survive the Closing or the earlier termination of this Agreement. If Purchaser shall not elect (or is not deemed to have elected) to terminate this Agreement as aforesaid, then at Closing, Seller shall pay to Purchaser or provide a credit against the Purchase Price in an amount equal to all insurance proceeds (including loss of rent or business interruption proceeds applicable to any period on and after the Closing Date) and all condemnation awards and other payments in connection with such damage, destruction or taking theretofore actually paid to Seller as of the Closing Date, net of any costs of repairs made by Seller prior to Closing and net of reasonable collection costs. In addition, if such insurance proceeds and/or condemnation awards have not yet been paid to Seller as of the Closing Date, Seller shall assign, transfer, and set over to Purchaser all of Seller's right, title, and interest in and to such insurance proceeds and/or condemnation awards, together with any insurance claims or any awards, payments, or insurance proceeds that may thereafter be made for any such taking or sale in lieu thereof, or for any such damage or destruction, net of any such costs of repairs or collection costs referred to above if not previously recovered by Seller, and except that any loss of rent or business interruption awards shall be prorated as of the date of Closing.

Section 8.2. <u>Condemnation</u>. If, prior to the Closing, all or any part of the Property is taken by eminent domain (or becomes the subject of a pending taking which has not yet been consummated), Seller shall notify Purchaser of such fact. If such notice is given subsequent to the expiration of the Inspection Period, Purchaser shall have the right to terminate this Agreement by giving notice thereof to Seller not later than ten (10) business days after the date on which Purchaser received Seller's notice of such condemnation (and, if necessary, the Closing Date shall be extended until two (2) business days after the expiration of such period in order to permit Purchaser the full period to consider whether or not to exercise its termination right), and all Deposits shall be returned to Purchaser.

53622733.7 / 392865-00008

15

3597576.6

**Exhibit B**

**24**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

Failure of Purchaser to deliver any such notice of termination to Seller within such ten (10) business day period shall be a deemed election by Purchaser to terminate this Agreement. If Purchaser shall elect (or be deemed to have elected) to terminate this Agreement as aforesaid, the Deposit shall be paid to Purchaser, whereupon this Agreement shall terminate and be of no further force and effect and neither party shall have any liabilities or obligations to the other hereunder, except for those obligations and liabilities which expressly survive the Closing or the earlier termination of this Agreement. If Purchaser shall not elect to terminate this Agreement as aforesaid, then the sale of the Property shall be consummated as herein provided without any adjustment to the Purchase Price (except that Purchaser shall be entitled to a credit for any condemnation award received by Seller prior to the Closing) and Seller shall assign to Purchaser at the Closing all of Seller's right, title and interest in and to all awards, if any, for the taking, and Purchaser shall be entitled to receive and keep all awards for the taking of the Property or any portion thereof.

## ARTICLE IX

## COMMISSIONS

Brokerage Commissions. Purchaser acknowledges being represented by Pearson Realty ("Broker"). Seller shall be responsible for the payment of a commission or fee to Broker in accordance with its separate agreement therewith. Seller acknowledges that all commissions payable to Broker in connection with this transaction are subject to District Court approval and will only be paid from the Purchase Price and only if the sale closes to Purchaser pursuant to the procedures required in Exhibit C.

## ARTICLE X

## MISCELLANEOUS

**Section 10.1.** Intentionally Omitted.

**Section 10.2.** Notices.  Any notice pursuant to this Agreement shall be given in writing by (a) personal delivery, (b) reputable overnight delivery service with proof of delivery, (c) United States Mail, postage prepaid, registered or certified mail, return receipt requested or (d) email transmission, sent to the intended addressee at the address set forth below, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given upon receipt or refusal to accept delivery, or, in the case of email transmission, as of the date of the email transmission provided that an original of such email is also sent to the intended addressee by means described

53622733.7 / 392865-00008

16

3597576.6

**Exhibit B**

**25**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

in clauses (a), (b) or (c) above. Unless changed in accordance with the above, the addresses for notices given pursuant to this Agreement shall be as follows:

| | |
|---|---|
| To Seller: | Phillip Christensen, as Receiver<br>2787 W Bullard Ave<br>Fresno, Ca 93711<br>Email: p.christensen@agriglobe.com |
| With a required copy to: | Saul Ewing LLP<br>1888 Century Park East<br>Suite 1500<br>Los Angeles, Ca 90067<br>Email: zev.shechtman@saul.com |
| To Purchaser<br>and/or assignee: | Wonderful Nut Orchards<br>Attn: Property Department<br>6801 E. Lerdo Highway<br>Shafter, CA 93216<br>Email: mike.widhalm@wonderful.com |
| With a required copy to: | Wonderful Nut Orchards<br>Attn: General Counsel<br>11444 W. Olympic Blvd, 10th Floor<br>Los Angeles, CA 90064<br>Email: legalnotices@wonderful.com |
| With a required copy to: | Pearson Realty<br>Attn: Sullivan Gross<br>7480 N. Palm Ave, Suite 101<br>Fresno, CA 93711 |
| To Escrow Holder: | Chicago Title – Fresno Madera<br>7330 N Palm Ave, Suite 101<br>Fresno, CA 93711<br>Attn: Sue Meyer<br>E-mail: sue.meyer@ctt.com |

53622733.7 / 392865-00008

17

3597576.6

**Exhibit B**
**26**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

**Section 10.3.** <u>Modifications</u>.  This Agreement cannot be changed orally, and no executory agreement shall be effective to waive, change, modify or discharge it in whole or in part unless such executory agreement is in writing and is signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

**Section 10.4.** <u>Entire Agreement</u>. This Agreement, including the exhibits and schedules hereto, contains the entire agreement between the parties hereto pertaining to the subject matter hereof and fully supersedes all prior written or oral agreements and understandings between the parties pertaining to such subject matter.

**Section 10.5.** <u>Receivership and Stalking Horse Addendum</u>. As set forth in **Exhibit C**, this Agreement is modified by terms that are specific to the receivership, including the treatment of Purchaser as a Stalking Horse bidder.  The terms of such Addendum shall control in the event of an inconsistency with this Agreement.

**Section 10.6.** <u>Counterparts</u>. This Agreement may be executed in counterparts, all such executed counterparts shall constitute the same agreement, and the signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

**Section 10.7.** <u>Electronic Signatures</u>. In order to expedite the transactions contemplated herein, pdf or other electronic signatures may be used in place of original signatures on this Agreement and any amendments or modifications hereto. Seller and Purchaser intend to be bound by the pdf or other electronic signatures on the document, are aware that the other party will rely on the pdf or other electronic signatures and hereby waive any defenses to the enforcement of the terms of this Agreement based on the form of signature.

**Section 10.8.** <u>Severability</u>. If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall nonetheless remain in full force and effect; <u>provided</u> that the invalidity or unenforceability of such provision does not materially adversely affect the benefits accruing to any party hereunder.

**Section 10.9.** <u>Applicable Law and Attorney Fees</u>. This Agreement shall be governed by and construed in accordance with the laws of the state in which the Property is located.  In the event of any legal or equitable action arising under this Agreement, the venue of such action shall lie exclusively within the United States District Court for the Eastern District located in Fresno, and the parties hereto do hereby specifically waive any other jurisdiction and venue.  Purchaser and Seller agree that the provisions of this <u>Section 10.9</u> shall survive the Closing or any termination of this Agreement.

**Section 10.10.** <u>No Third-Party Beneficiary</u>. The provisions of this Agreement and of the documents to be executed and delivered at the Closing are and will be for the benefit of Seller and Purchaser only and are not for the benefit of any third party, and accordingly, no third party shall have the right to enforce the provisions of this Agreement or of the documents to be executed and delivered at the Closing.

53622733.7 / 392865-00008

18

3597576.6

**Exhibit B**

27

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

Section 10.11.Captions. The section headings appearing in this Agreement are for convenience of reference only and are not intended, to any extent and for any purpose, to limit or define the text of any section or any subsection hereof.

Section 10.12.Construction. The parties acknowledge that the parties and their counsel have reviewed and revised this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any exhibits or amendments hereto.

Section 10.13.Recordation. This Agreement may not be recorded by any party hereto without the prior written consent of the other party hereto. The provisions of this Section 10.13 shall survive the Closing or any termination of this Agreement.

Section 10.14.Waiver of Jury Trial. EACH OF THE PARTIES HEREBY EXPRESSLY AND IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF, RELATED TO OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 10.15.Allocation of Liability. Purchaser shall be liable to third parties for any and all obligations, claims, losses, damages, liabilities and expenses arising out of events, contractual obligations, acts, or omissions of Purchaser that occur in connection with the ownership or operation of the Property after the Closing.

Section 10.16.Waivers, Etc. Any waiver of any term or condition of this Agreement, or of the breach of any covenant, representation or warranty contained herein, in any one instance, shall not operate as or be deemed to be or construed as a further or continuing waiver of any other breach of such term, condition, covenant, representation or warranty or any other term, condition, covenant, representation or warranty, nor shall any failure at any time or times to enforce or require performance of any provision hereof operate as a waiver of or affect in any manner such party's right at a later time to enforce or require performance of such provision or any other provision hereof. This Agreement may not be amended, nor shall any waiver, change, modification, consent or discharge be effected, except by a written instrument executed by or on behalf of the party against whom enforcement of any amendment, waiver, change, modification, consent or discharge is sought.

Section 10.17.Performance on Business Days. As used herein, "business day" shall mean any day other than a Saturday, Sunday or any other day on which banking institutions in the State of California, the State of Delaware, or the State of New York are authorized by law or executive action to close. If the date on which payment or performance of any obligation of a party hereunder is other than a business day, or the last day for the giving of any notice required or permitted hereunder is other than a business day, the time for such payment, performance or delivery shall automatically be extended to the first business day following such date.

Section 10.18.Attorney's Fees.  Notwithstanding anything contained herein to the contrary, if any lawsuit or arbitration or other legal proceeding arises in connection with the

53622733.7 / 392865-00008

19

3597576.6

**Exhibit B**
**28**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

interpretation or enforcement of this Agreement, the prevailing party therein shall be entitled to receive from the other party the prevailing party's costs and expenses, including reasonable attorneys' fees incurred in connection therewith, in preparation therefor and on appeal therefrom, which amounts shall be included in any judgment therein.

**Section 10.19.**Time of Essence. Time shall be of the essence with respect to the performance of each and every covenant and obligation, and the giving of all notices, under this Agreement.

**Section 10.20.**Receiver's Capacity. Seller, Phillip Christensen, as Receiver, enters into this Agreement solely in his capacity as Receiver, and not in any personal, individual, corporate, or other capacity.

*[Signatures on following Page.]*

53622733.7 / 392865-00008

20

3597576.6

**Exhibit B**
**29**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the Effective Date.

SELLER:

By: _____

Phillip Christensen, as Receiver

PURCHASER:

WONDERFUL NUT ORCHARDS,
a Delaware limited liability company

By: _____

Rob C. Yraceburu, President

*(Escrow Agent Joinder on following page)*

53622733.7 / 392865-00008

21

3597576.6

**Exhibit B**
**30**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

Escrow Agent executes this Agreement below solely for the purpose of acknowledging that it agrees to be bound by the provisions of Sections 2.6 and 2.7 hereof.

**ESCROW AGENT**

CHICAGO TITLE INSURANCE COMPANY


By:  _____

Name:      Sue Meyer

Title:      Commercial Escrow Officer

53622733.7 / 392865-00008

22

3597576.6

**Exhibit B**
**31**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

Title No.: FWKN-TO25000396-MW

## EXHIBIT A

## THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF KERN, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

| APN | ACREAGE |
|---|---|
| 103-040-37-00-0 | 80.18 |
| 103-100-19-01-4 | 78.18 |
| 103-100-20-01-6 | 40.00 |
| 103-100-21-01-9 | 40.00 |

53622733.7 / 392865-00008

23

3597576.6

**Exhibit B**

**32**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

Title No.: FWKN-TO25000396-MW

## EXHIBIT B

## FORM OF FIRPTA CERTIFICATE

CERTIFICATE REGARDING FOREIGN INVESTMENT
IN REAL PROPERTY TAX ACT

(ENTITY TRANSFEROR)

Section 1445 of the Internal Revenue Code provides that a transferee (purchaser) of a U.S. real property interest must withhold tax if the transferor (seller) is a foreign person. For U.S. tax purposes (including section 1445), the person treated as the owner of the assets of a disregarded entity, for such purposes, will be the transferor (seller) of the property and not the disregarded entity. To inform the transferee (purchaser) that withholding of tax is not required upon the disposition of a U.S. real property interest by _____, a _____ ("Transferor"), Transferor hereby certifies:

        1.      Transferor is not a foreign corporation, foreign partnership, foreign trust, foreign estate or a disregarded entity (as those terms are defined in the Internal Revenue Code and Income Tax Regulations).

        2.      Transferor is not a disregarded entity for federal income tax purposes.

        3.      Transferor's Federal Employer Identification Number is _____.

        4.      Transferor's office address is:

                _____

                _____; and

        5.      The address or description of the property which is the subject matter of the disposition is _____.

Transferor understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Transferor declares that it has examined this certification and to the best of its knowledge and belief, it is true, correct and complete, and further declares that the individual executing this certification on behalf of Transferor has full authority to do so.

**Exhibit B**

**33**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

**TRANSFEROR:**

Docusign Envelope ID: C815CA3F-24F5-8FEF-82E7-EA7EF1900A60

**EXHIBIT C**
**RECEIVERSHIP AND STALKING HORSE ADDENDUM**

Notwithstanding any other provisions of the Agreement, Purchaser expressly acknowledges and agrees as follows:

1. Seller, Phillip Christensen, as Receiver, enters into this Agreement solely in his capacity as Receiver, and not in any personal, individual, corporate, or other capacity.
2. The sale is subject to approval of the District Court after notice and a hearing, including the opportunity for higher and better bids as required by applicable law. Seller is required to list and market the properties for sale in order to call for higher and better bids at a public sale before the District Court pursuant to 28 U.S.C. § 2001.
3. The sale is "AS-IS" and "WHERE-IS" "WITH ALL FAULTS" and "WITHOUT REPRESENTATIONS OR WARRANTIES" except to the extent expressly and unambiguously stated in the Agreement.
4. No court or tribunal shall have jurisdiction over any dispute with Seller except the District Court which shall have exclusive jurisdiction.
5. Purchaser's only remedy if the sale to Purchaser is not consummated through no fault of Purchaser is a return of the Deposit. If the sale is not consummated due to an act or omission by Purchaser, then Purchaser shall forfeit the Deposit.
6. After execution of the Agreement, payment of the Deposit, compliance with all requirements of the Agreement, and waiver of all contingencies other than District Court approval, Purchaser shall be deemed the "Stalking Horse Bidder" which shall give it the following rights:
    a. Within __7__ days of execution hereof and payment of the Deposit, Seller shall request a hearing on notice to interested parties to approve procedures for the sale subject to higher or better bids and these terms.
    b. Seller will seek to have the sale approved by the District Court, including any auction, within 21 days of execution hereof.
    c. Seller will inform Purchaser of dates and deadlines relating to the sale.
    d. Seller will deem Purchaser qualified to participate in the auction conditioned on Purchaser's waiver of contingencies and Purchaser's compliance with all other terms hereof.
    e. Subject to the Court's approval of sale procedures, upon closing of the sale, Seller will pay Purchaser a break-up fee of $96,000, in addition to a return of the Deposit, if Purchaser participates in an auction and there is a successful overbidder other than the Purchaser.
    f. The Closing Date will be within 21 days after entry of the District Court's order approving the sale.
7. The Seller has sole discretion regarding the qualification of overbidders to participate in the auction, the timing of any auction, hearings and continuances thereof, determination of higher and better bids, and any other procedural aspects relating to the sale approval process, subject only to District Court approval. Seller's mere inability to obtain Court approvals on the schedule described above will not be a basis for Purchaser to terminate the sale.
8. In the event of any inconsistency between this Addendum and the above Agreement, this Addendum shall control.

ACKNOWLEDGED AND AGREED BY
PURCHASER:

_____

**Exhibit B**
**35**

Docusign Envelope ID: F182ECFC-5D99-8FE9-807B-BD543E724495

## FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT
Dated: May __, 2026

This first amendment ("Amendment") to PURCHASE AND SALE AGREEMENT (the "Agreement"), is made between PHILLIP CHRISTENSEN, as Receiver ("Seller"), as seller, and (ii) WONDERFUL NUT ORCHARDS LLC, a Delaware limited liability company or assignee ("Purchaser"). The Agreement is for the purchase and sale of land in Kern County, CA, described as follows:

| APN |
| --- |
| 103-040-37-00-0 |
| 103-100-19-01-4 |
| 103-100-20-01-6 |
| 103-100-21-01-9 |

[Escrow Number: 45006081]

This Amendment corrects and memorializes, and its purpose is to verify that the Seller and Purchaser agree, that the **Effective Date** of the Agreement, as defined and for all purposes in the Agreement, is **May 14, 2026**, the date on which the Agreement was fully executed (not May 5, 2026, the date inadvertently stated in the original Agreement).

**AGREED:**

SELLER:

By: _____

Phillip Christensen, as Receiver

**AGREED:**

PURCHASER:

WONDERFUL NUT ORCHARDS,
a Delaware limited liability company

By: _____

Rob C. Yraceburu, President

57938379.1
392865-00005

**Exhibit B**
36

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this case. My business address is: **Saul Ewing 1888 Century Park East, Suite 1500, Los Angeles, CA 90067.**

A true and correct copy of the document entitled: **Receiver's Notice of Sale Hearing and Auction** will be served or was served on the judge in chambers in the manner stated below:

**1.     TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: The foregoing document will be served by the court via NEF and hyperlink to the document. On **June 17, 2026,** I checked the CM/ECF docket for this case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.     SERVED BY UNITED STATES MAIL:**

On **June 17, 2026,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed

☒ Service information continued on attached page

**3.     SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 on **June 17, 2026,** I served the following persons and/or entities by personal delivery, overnight  mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 17, 2026 | Hannah Richmond | /s/ *Hannah Richmond* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) (continued)**</u>:

- **Robert Cullen Barton**
  rbarton@mcdermottlaw.com,mnadel@mcdermottlaw.com,losangelesdocketing@mcdermottlaw.com,los-angeles-docketing-2-3974@ecf.pacerpro.com,adavalos@mcdermottlaw.com,acorona@mcdermottlaw.com
- **David Berger**
  dberger@sheppardmullin.com,ehwalters@sheppardmullin.com
- **Michael Barrett Brown**
  michael.brown@stoel.com,docketclerk@stoel.com,rebecca.lerma@stoel.com,jill.keehnen@stoel.com,ha.nguyen@stoel.com
- **Benjamin J. Codog , III**
  ben.codog@stoel.com,docketclerk@stoel.com
- **Jane Kim**
  jkim@kbkllp.com
- **Michael Lauter**
  mlauter@sheppardmullin.com,lsegura@sheppardmullin.com
- **Aaron J Malo**
  amalo@sheppardmullin.com,mlinker@sheppardmullin.com,abilly@sheppardmullin.com
- **Ali M Mojdehi**
  ali.mojdehi@mgr-legal.com,allison.rego@mgr-legal.com
- **Saul Reiss**
  reisslaw@reisslaw.net
- **Michelle Rosales**
  michelle.rosales@stoel.com
- **Zev M. Shechtman**
  Zev.Shechtman@saul.com,Zev.Shechtman@ecf.courtdrive.com,Shelly.Guise@saul.com,hannah.richmond@saul.com,LitigationDocketing@saul.com,Isaiah.Bribiesca@saul.com
- **Richard P. Steelman , Jr**
  RPS@LNBYG.COM,damon@lnbyg.com
- **Brodie Austin Surfus**
  bsurfus@wtjlaw.com,borozco@wtjlaw.com
- **Marshall Craig Whitney**
  mwhitney@wtjlaw.com,hlopez@wtjlaw.com,sgomez@wtjlaw.com,abroome@wtjlaw.com
- **Thomas Andrew Woods**
  thomas.woods@stoel.com,docketclerk@stoel.com,dalila.tobin@stoel.com,7052139420@filings.docketbird.com,1261239420@filings.docketbird.com,rebecca.lerma@stoel.com
- **Beth Ann R. Young**
  bry@lnbyg.com

2. <u>**SERVED BY UNITED STATES MAIL (continued)**</u>:

| | |
|---|---|
| The Assemi Group<br>5260 N. Palm Ave., Suite 421<br>Fresno, CA 93704 | Fay Pugh<br>Law Offices of Saul Reiss, P.C.<br>11835 W. Olympic Blvd., Suite 415E<br>Los Angeles, Ca 90064 |
| Ashlan & Hayes Investments, LLC<br>c/o Agent for Service of Process<br>John A. Bezmalinovic, General Counsel<br>The Assemi Group<br>5260 N. Palm Ave., Suite 421 | Grantor Fresno Clovis Investments, LLC<br>c/o Agent for Service of Process<br>John A. Bezmalinovic, General Counsel<br>The Assemi Group<br>5260 N. Palm Ave., Suite 421 |

Fresno, CA 93704                                    Fresno, CA 93704

Dirk B. Paloutzian
Natalya M. Ferdinandi
Baker Manock & Jensen, PC
5260 North Palm Avenue, Suite 201
Fresno, California 93704

**3.      SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (continued) :**

**VIA EMAIL:**

- reisslaw@reisslaw.net
- fay.pugh@outlook.com
- dpaloutzian@bakermanock.com
- nferdinandi@bakermanock.com
- lmarcyes@bakermanock.com