UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation,

Plaintiff,

v.

C & A FARMS, LLC, a California limited liability company; MARICOPA ORCHARDS,LLC, a California limited liability company; DUMAR, LLC, a California limited liability company; PISTACHE LLC, a California limited liability company; KAMM SOUTH, LLC, a California limited liability company; ACDF,LLC, a California limited liability company; FARID ASSEMI, individually and as Trustee of the AMENDED AND RESTATED FARIDASSEMI REVOCABLE TRUST DATED March2, 2010; FARSHID ASSEMI, an individual; FARSHID ASSEMI and SONIA ROSEMARYASSEMI, as Trustees of the AMENDED ANDRESTATED FARSHID ASSEMI AND SONIAROSEMARY ASSEMI REVOCABLE TRUST dated March 2, 2010; DARIUS ASSEMI, individually and as Trustee of the AMENDEDAND RESTATED DARIUS ASSEMIREVOCABLE TRUST, dated March 2, 2010; and DOES 1-100,

Defendants.

No. 1:24-cv-01230-KES-SAB

ORDER GRANTING METROPOLITAN LIFE INSURANCE COMPANY'S MOTION TO DISMISS DUMAR, LLC AND PISTACHE, LLC'S COUNTERCLAIMS

(Doc. 54)

Plaintiff and counter-defendant Metropolitan Life Insurance Company ("Metropolitan") moves to dismiss the counterclaims asserted against it by defendants and counterclaimants Dumar, LLC ("Dumar") and Pistache, LLC ("Pistache") for breach of lease and declaratory relief. Doc. 54 ("MTD"). For the reasons explained below, the Court grants the motion to dismiss.

## I. **Background**[1]

In April 2021, Maricopa Orchards, LLC ("Maricopa") leased a 458.18-acre parcel of land to Dumar and a 636.36-acre parcel of land to Pistache. Answer ¶¶ 103, 105. The leases required Dumar and Pistache to grow pistachios on the land and sell the pistachios to Touchstone Pistachio Company, LLC ("Touchstone") for processing. *See* Answer, Ex. 1 ("Dumar Lease") §§ 1.2(a), 4; Answer, Ex. 2 ("Pistache Lease") §§ 1.2(a), 4. The leases further required Dumar and Pistache to execute agreements with Touchstone which would authorize Touchstone to pay the rent due under the leases to Maricopa with the proceeds from the sale of pistachios, then pay Dumar and Pistache the remainder. *Id.* The leases provided that if Touchstone defaulted on such payment obligations, Dumar and Pistache would be relieved of their obligation to pay rent to Maricopa. *Id.* § 1.3(c).

Touchstone defaulted on its payment for the 2023 crop, and the amount of its default exceeds $2,000,000. Answer ¶ 107. Following the default, Maricopa refused to furnish water to the Dumar and Pistache parcels, *id.* ¶ 108, as Maricopa was required to do under the terms of the lease, according to Dumar and Pistache, *id.* ¶¶ 108, 113–14, 119–20. As a result, Dumar and Pistache did not have sufficient water to grow pistachios during the 2024 harvest, and they alleged they also would not have sufficient water during the 2025 harvest. *Id.*

On October 10, 2024, plaintiff and counter-defendant Metropolitan Life Insurance Company ("Metropolitan") filed suit against Maricopa, Dumar, Pistache, and other defendants, alleging among other things that Maricopa had defaulted on a $23,500,000 loan. Doc. 1 ("Compl.") ¶ 23. The land that Dumar and Pistache leased, and which Maricopa owned,

---

[1] This recitation of facts is taken from Dumar and Pistache's answer. These allegations are assumed to be true for the purposes of the pending motion. *Atkinson v. Atkinson*, 167 F.2d 793, 795 (7th Cir. 1948).

allegedly served as collateral for the loans. *See id.* ¶ 26; Answer ¶¶ 103, 105. The Court appointed Phillip Christensen (the "Receiver") as receiver, and he was awarded possession and control of the property. *Id.* ¶¶ 125, 130; *see* Doc. 39 ("Receivership Order") ¶¶ B–C, 1. Dumar and Pistache contend that, as of that date, the Receiver "began to act as the landlord . . . ." Answer ¶ 125. Like Maricopa, the Receiver and Metropolitan continued to refuse to transfer water to the Dumar and Pistache parcels. *Id.* ¶¶ 113–15, 120–22.

Dumar and Pistache filed an answer to the complaint on December 30, 2024. *Id.* In their answer, Dumar and Pistache assert counterclaims against Metropolitan and Touchstone and crossclaims[2] against Maricopa for breach of the lease agreements, based on those parties' alleged failure to furnish water to the property. *Id.* ¶¶ 110, 123. Dumar and Pistache also seek a declaratory judgment clarifying the parties' rights and obligations under the lease agreements. *Id.* ¶¶ 126, 131.

Metropolitan filed a motion to dismiss the counterclaims, arguing that they fail to state claims against it because Metropolitan is not a party to the leases. Doc. 54 ("MTD"). Dumar and Pistache filed an opposition, Doc. 55 ("Opp'n"), and a request for judicial notice, Doc. 56, and Metropolitan filed a reply, Doc. 57 ("Reply"). The Court took the motion under submission. Doc. 58.

## II. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the pleadings. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A counterclaimant is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[2] Dumar and Pistache mistakenly identify their claims against Maricopa as counterclaims and mistakenly identify Maricopa as a counter-defendant. *See* Answer ¶¶ 93–97. Maricopa is a cross-defendant, and the claims against it are crossclaims. *See* Fed. R. Civ. P. 13(g). The mislabeling of a crossclaim as a counterclaim, however, "is not fatal." *Schwab v. Erie Lackawanna R. Co.*, 438 F.2d 62, 64 (3d Cir. 1971).

(2007). "A claim has facial plausibility when the [counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the [counter-defendant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must contain facts that "nudge [the counterclaimant's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. In evaluating a Rule 12(b)(6) motion to dismiss, the Court treats documents attached to the complaint and incorporated by reference as part of the pleadings. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1554–55 & n.19 (9th Cir. 1989).

To determine whether a pleading states a claim on which relief may be granted, the Court accepts as true the allegations in the pleading and construes the allegations in the light most favorable to the counterclaimant. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). But the Court need not assume the truth of legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 680. While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-[counter-]defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the counterclaimant "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III. <u>Discussion and Analysis</u>

### a. Counterclaims for Breach of Lease

Metropolitan argues that the counterclaims against it for breach of lease must be dismissed because the answer fails to allege that Metropolitan was a party to the leases or that Metropolitan assumed the obligations of the leases in a manner consistent with California law. MTD at 11–15.[3] An examination of California law applicable to leases of real property reveals that

---

[3] It is clear from the leases, which are attached to the answer, that Metropolitan was not a party to either of the original leases. *See* Dumar Lease; Pistache Lease. Metropolitan could have become

Metropolitan is correct.

Under California law, a "lease of real property is both a conveyance of an estate in land (a leasehold) and a contract." *Vallely Invs. v. Bancamerica Commercial Corp.*, 88 Cal. App. 4th 816, 822 (Cal. Ct. App. 2001). "It gives rise to two sets of rights and obligations—those arising by virtue of the transfer of an estate in land to the tenant (privity of estate), and those existing by virtue of the parties' express agreements in the lease (privity of contract)." *Id.*

When a party to a lease of real property assigns its interest in the lease, some lease covenants may apply to the assignee while others may not; which lease covenants apply to the assignee "turns on the nature of the assignment." *BRE DDR BR Whittwood CA LLC v. Farmers & Merchants Bank of Long Beach* ("*Farmers & Merchants*"), 14 Cal. App. 5th 992, 1000 (Cal. Ct. App. 2017). "If the assignee takes possession of the premises but no more, privity of estate exists and he is bound by all lease covenants which run with the land." *Id.* "If, however, the assignee expressly agrees with the assignor to assume the obligations of the lease, far different consequences attend." *Id.* "The assumption agreement creates a new privity of contract between [the original lease party] and assignee . . . [and] the assuming assignee is required to perform all covenants of the lease for the remainder of its term, absent a release by the [other lease party]." *Id.*

Dumar and Pistache assert that Metropolitan breached the obligation imposed by the leases to furnish water to the Dumar and Pistache parcels. *See* Answer ¶¶ 110, 123. This obligation is imposed by contract, not by privity of estate. Lease covenants imposed by privity of estate are those which run with the land. *Kelly v. Tri-Cities Broad., Inc.*, 147 Cal. App. 3d 666, 678 (Cal. Ct. App. 1983). The California Supreme Court has long held that "a covenant to furnish and pay for water to be used on land is not a grant of an estate . . . and does not run with the land . . . ." *Coulter v. Sausalito Bay Water Co.*, 122 Cal. App. 480, 494 (Cal. Ct. App. 1932) (citing *Fresno Canal & Irrigation Co. v. Rowell*, 80 Cal. 114 (1889)). And "[a]ll of the [] rights and obligations between the parties that arise from the terms of the lease, other than the rights and

---

a party to the leases only if it subsequently assumed the leases' obligations.

obligations that arise from privity of estate, arise from the contract." 10 Miller & Starr Cal. Real Estate § 34:16 (4th ed. 2024). The obligation to furnish water in the Dumar and Pistache leases is therefore a contractual obligation.

For an assignee of a real property lease to be held liable for lease obligations which arise from privity of contract, the assignee must have expressly assumed those contractual obligations. *Farmers & Merchants*, 14 Cal. App. 5th at 1000 (citing *Enter. Leasing Corp. v. Shugart Corp.*, 231 Cal. App. 3d 737, 746 (Cal. Ct. App. 1991)). The assignee must provide "specific affirmation . . . to bind itself to the lease obligations," and "acceptance of the benefits of the lease [which arise from privity of estate] will not render the assignee liable on the contract as an assuming party." *Id.* at 1000 n.4, 1001.

Dumar and Pistache fail to allege that Metropolitan expressly agreed to assume the obligations under the leases. Dumar and Pistache assert in their answer: (1) that "by reason of the appointment of a receiver at the request of Metropolitan, both the Receiver and Metropolitan are obligated to perform the obligations of Maricopa under the [leases] as a condition precedent to [Dumar and Pistache's] obligation to pay rent," Answer ¶¶ 126(A), 131(A); and (2) that by naming Dumar and Pistache as defendants "in this action, Metropolitan made a binding election to waive any claim that the Dumar and Pistache Leases were subordinate to the deeds of trust, and Metropolitan is therefore, obligated to honor and abide by the terms and condition of the Dumar and Pistache Leases," *id.* ¶ 109. These are legal conclusions, and the Court need not accept their truth. *Iqbal*, 556 U.S. at 680. These statements also fail to allege that Metropolitan assumed the obligations of the lease through an express written agreement with Maricopa, and they fail to allege privity of contract between Metropolitan and Dumar and Pistache.

Dumar and Pistache's argument that Metropolitan somehow became the landlord when the Court appointed the Receiver is without merit. Dumar and Pistache fail to explain how Metropolitan's seeking the appointment of a receiver constituted a "specific affirmation to bind itself to the lease obligations." *Farmers & Merchants*, 14 Cal. App. 5th at 1000 n.4. The Receivership Order does not assume or reflect any express agreement on behalf of Metropolitan to take over Maricopa's contractual obligations under the leases. *See generally* Receivership

Order.

Dumar and Pistache assert that the Receiver "began to act as a landlord." Answer ¶ 125. But this contention, even if true, does not support their breach of lease claims against Metropolitan. The Receiver is not an agent of Metropolitan. *Id.* The Receiver is an officer of the court who was appointed to manage the property under the court's authority. *See In re San Vincente Med. Partners* LLC, 962 F.2d 1402, 1409 (9th Cir. 1992) ("As a receiver of the property, [the receiver] was not an agent of [the plaintiff]; he was an officer of the court who managed the property under the authority of the court and incurred expenses chargeable upon the property." (*citing Atlantic Trust Co. v. Chapman*, 208 U.S. 360, 375 (1908)).

In their opposition, Dumar and Pistache assert that the deed of trust which secured Metropolitan's loans to Maricopa establishes privity of contract with Dumar and Pistache because it contains a section stating that Maricopa "assigns, grants and transfers to [Metropolitan] all of its right, title and interest in, to and under the [leases], including without limitation the rights of occupancy and possession and the claims and rights to receive all payments and compensation payable thereunder." Opp'n at 4 (quoting Doc. 1-3, Ex. 3 ("Deed of Trust") § 4.1). But the deed of trust is not mentioned in Dumar and Pistache's answer, nor was it attached to the answer and incorporated by reference. *See generally* Answer. When evaluating whether a counterclaimant has stated a claim, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Although the deed of trust was mentioned in the complaint, Dumar and Pistache's answer denies each of the allegations in the complaint which mention the deed of trust. *See* Answer ¶¶ 22–23, 27–34, 55–71.

Even if Dumar and Pistache had relied on this provision of the deed of trust in their answer, that would not have been sufficient to establish that Metropolitan had assumed the contractual obligations of the leases. A lease of real property gives rise to "two sets of rights and obligations—those arising by virtue of the transfer of an estate in land to the tenant (privity of estate), and those existing by virtue of the parties' express agreements in the lease (privity of contract)." *Vallely Invs. v. Bancamerica Commercial Corp.*, 88 Cal. App. 4th at 822; *see*

*Farmers & Merchants*, 14 Cal. App. 5th at 1000 n.4, 1001. Those sets of rights and obligations may be conveyed separately. *See id.*

Section 4.1 of the deed of trust assigns Maricopa's rights to occupy and possess the property and to collect rent due under the leases to Metropolitan. *See* Deed of Trust § 4.1. These rights, which were assigned to Metropolitan, if exercised, could only create *privity of estate* between Metropolitan and Dumar and Pistache. *Kelly*, 147 Cal. App. 3d at 678. "An assignee [of a real property lease], in the absence of an express assumption [of the contractual obligations], is liable only for covenants which run with the land and only during the period of his occupancy. . . . Most often this will involve the covenant to pay rent." *Id.*

The deed of trust language that Dumar and Pistache point to in their opposition establishes that Metropolitan, as assignee, had the right to accept "the benefits of the lease" arising from privity of estate; it does "not render [Metropolitan] liable on the contract as an assuming party." *Farmers & Merchants*, 14 Cal. App. 5th at 1000 n.4, 1001. The deed of trust does not establish any agreement by Metropolitan to assume contractual obligations arising from the lease. *See id.* at 1000–01; *cf. Bank of Am. Nat'l Trust & Savs. Ass'n v. Moore*, 18 Cal. App. 2d 522, 524–25 (Cal. Ct. App. 1937) (finding an express assumption of the lease obligations where the assignee signed an agreement which stated that it was to "accept, assume and agree to *perform all of the terms, conditions and limitations* contained in [the] lease").

Dumar and Pistache have failed to state a claim for breach of lease against Metropolitan, and their first and second counterclaims against Metropolitan for breach of the leases must be dismissed.

**b. Counterclaims for Declaratory Relief**

Dumar and Pistache's causes of action for declaratory relief against Metropolitan fail to state a claim for the same reasons as discussed above with respect to their breach of lease claims. Additionally, the declaratory relief claims appear to be moot, at least in part, due to a stipulation between it and the Receiver in a related case. *See* Docs. 99, 100, 124, 223, *Metro. Life Ins. Co. v. ACDF, LLC*, 1:24-cv-1261-KES-SAB. In these causes of action, Dumar and Pistache assert:

> Metropolitan does not have the right to enforce the [leases] with

> respect to the collection of rent because the [leases] provide[] that if Touchstone is in default under its processing agreement . . ., no rent is due . . . . In addition, Dumar [and Pistache] contend[] that by reason of the appointment of a receiver at the request of Metropolitan, both the Receiver and Metropolitan are obligated to perform the obligations of Maricopa under the [leases] as a condition precedent to Dumar[] [and Pistache's] obligation to pay rent. Said obligations include, in particular, the obligation to assign to Dumar [and Pistache] the annual surface water and ground water allocations issued by the Westlands Water District for the year 2025, and to pay the property based assessment by the Westlands Water District as required by the [leases].

Answer ¶¶ 126(A), 131. To the extent these causes of action seek a declaration that Dumar and Pistache do not owe rent for the property for 2025, they are moot because the Receiver and Dumar and Pistache stipulated, in connection with a separate motion by the Receiver, that Dumar and Pistache would pay rent for 2025 and the Receiver would ensure that sufficient water was delivered to the property. *See* Docs. 99, 100, 124, 223, *Metro. Life Ins. Co. v. ACDF, LLC*, 1:24-cv-1261-KES-SAB.

For the reasons stated above, these causes of action are likewise dismissed.

## IV. <u>Conclusion and Order</u>

Based upon the foregoing, Metropolitan's motion to dismiss, Doc. 54, is **GRANTED**. While it is not clear that there are any other factual circumstances that Dumar and Pistache could plausibly allege to support an assertion that Metropolitan agreed to the contractual obligations under the leases, the Court will permit them an opportunity to amend their claims if they can do so consistent with this Order. Dumar and Pistache's counterclaims as to Metropolitan are dismissed with leave to amend. Dumar and Pistache may file an amended answer consistent with this Order within thirty (30) days of the entry of this Order.

IT IS SO ORDERED.

Dated: August 27, 2026

UNITED STATES DISTRICT JUDGE