ZEV SHECHTMAN (BAR NO. 266280)
Zev.Shechtman@saul.com
RACHAEL GONZALES (Bar NO. 347879)
Rachael.Gonzales@saul.com
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

Attorneys for Phillip Christensen, as Receiver



**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation,

Plaintiff,

vs.

C & A FARMS, LLC, a California limited liability company, et al.,

Defendants.

☐ Affects All Cases
☒ Affects Metropolitan Life Ins. Co. v. C & A Farms, LLC, et al., 1:24-cv-01230
☐ Affects Brighthouse Life Ins. Co. v. Manning Avenue Pistachios, LLC, et al., 1:24-cv-01233 Case No. 1:24-cv-01233
☐ Affects MetLife Real Estate Lending, LLC v. Panoche Pistachios, LLC, et al., 1:24-cv-01241

Lead Case No. 1:24-cv-01230-KES-SAB

[Previously Consolidated Under Lead Case No. 1:24-cv-01261-KES-SAB]

Consolidated with Case Nos: 1:24-cv-01233; and 1:24-cv-01241

**NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER APPROVING SALE OF CERTAIN MEMBERSHIP INTERESTS AND WATER FREE AND CLEAR OF LIENS AND RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF PHILLIP CHRISTENSEN, SKYE ROOT AND ZEV SHECHTMAN IN SUPPORT THEREOF**

Judge: Hon. Kirk E. Sherriff
Date: December 7, 2026
Time: 1:30 p.m.
Crtrm.: Courtroom 6, 7th floor
2500 Tulare Street
Fresno, CA 93721

**TO THE HONORABLE KIRK E. SHERRIFF, UNITED STATES DISTRICT COURT JUDGE, AND INTERESTED PARTIES, PLEASE TAKE NOTICE THAT:**

Phillip Christensen, as Receiver (the "Receiver") in the above-captioned administratively consolidated civil actions (the "Receivership Cases" or "Receivership"), hereby submits this Motion (the "Motion") for entry of an order approving the Water Rights Purchase and Sale Agreement and

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Joint Escrow Agreement (the "Agreement") in the form of Exhibit "1" hereto. Further, the Receiver seeks entry of an order in the form of Exhibit "C" attached to the Agreement (the "Proposed Order"). Pursuant to the Agreement, and subject to entry of the Proposed Order, the Receiver seeks the Court's authorization for the sale of this Receivership estate's right, title and interest in (i) Maricopa Orchards, LLC's ("MOC") membership interest in Poso Creek Water Company, LLC (the "Water Company" and such membership interest, the "Interest"), to WESTSIDE 52 WATER, LLC, a Delaware limited liability company ("Water Buyer"), and (ii) the rights and interest allocated to MOC in 1,500 acre-feet of stored water inventory held in MOC's Member Water Account under the Water Company's governing documents (the "Poso Creek Water"), to WESTSIDE 52 TRS, LLC, a Delaware limited liability company ("TRS Buyer" and, together with Water Buyer, "Buyer"). The property and rights being conveyed by the Receiver are collectively the "Assets." The Receiver seeks approval of the sale free and clear of liens, claims, interests, and encumbrances with those interests attaching to the proceeds to the same extent, validity, and priority as immediately before Closing, and authority to execute the necessary closing documents.

This Motion is based on the below Memorandum of Points and Authorities, the Declarations of Phillip Christensen, Skye Root, and Zev Shechtman attached hereto, and such other evidence as may be properly submitted to the Court at or before the hearing.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to L.R. 230, opposition, if any, to the granting of the Motion shall be in writing and shall be filed and served no later than fourteen (14) days after the filing hereof. A responding party who has no opposition to the granting of the Motion shall serve and file a statement to that effect, specifically designating the Motion. No party will be entitled to be heard in opposition to the Motion at oral argument if opposition to the motion has not been timely filed by that party. See L.R. 135. A failure to file a timely opposition may also be construed by the Court as a nonopposition to the Motion.

DATED: October 29, 2026

SAUL EWING LLP

By: [signature]
ZEV SHECHTMAN
Attorneys for Phillip Christensen, as Receiver

SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This Motion seeks approval of a transaction expressly contemplated in the larger Westlands sale. The Amended and Restated Purchase and Sale Agreement and Joint Escrow Instructions dated June 17, 2026, between Lance Miller, as receiver in Case No. 1:24-cv-01102-KES-SAB (the "Prudential Receiver" and the "Prudential Receivership Case"), and Brightfield Investments, LLC ("Brightfield") (the "Westlands PSA"), specifically identifies this transaction as the "Met Receivership PSA." Item 4 of Schedule 1.11(b) of the Westlands PSA identifies 1,500 acre-feet of stored water held for MOC, together with the release of liens in MOC's Water Company membership interests, at precisely the $1,077,188.00 price now presented for approval. See Prudential Receivership Case at ECF No. 522 at PDF p. 306. The Agreement herein implements that contemplated transaction, described as an "ancillary transaction" in the Westlands PSA, through the conveyance of the Receiver's rights in the Assets to Buyer. The Court entered an Order in the Prudential Case approving the Westlands PSA on September 10, 2026 (Case No. 24-01102, ECF No. 522), which order is the subject of a pending appeal filed by certain defendants in the Prudential Receivership Case.

The coordinated marketing process conducted by Capstone (defined below), as investment banker, encompassed this estate's Water Company interests and associated rights. The Receiver therefore relies on that comprehensive market exposure, the disclosure in the Westlands PSA, and the judgment of the Receiver and Mr. Root, the Capstone representative who led the marketing process, in the present transaction.

As discussed in section 2.C. ("Meet and Confer") below, Defendants have not consented, and the Receiver therefore brings this request for relief by motion on regular notice. This Motion identifies what the Receiver is conveying, explains the 1,500 acre-foot reservation, and seeks this Court's approval of the sale of personal property under 28 U.S.C. § 2004.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## II.

## STATEMENT OF FACTS

### A. Receivership Background

On or about November 7, 2024, Phillip Christensen, the Receiver herein, was appointed in eight Receivership Cases filed by the Plaintiff herein and other lenders. ECF No. 39.[1] Those cases were consolidated by order entered on December 12, 2024. ECF No. 47. After a sale and transfer of certain notes belonging to Plaintiff and other lenders to Prudential, on April 2, 2026, the Court entered an order amending the consolidation, so that three cases and estates remain in these consolidated cases. ECF No. 76. The Receiver has sold numerous parcels in these Receivership Cases and has otherwise liquidated the estates' assets, such that the administration of these Receivership Cases is nearing its conclusion.

The majority of the real estate assets of the broader Maricopa enterprise were collateral subject to loans held by Prudential. Those assets have been administered by Lance Miller, the Prudential Receiver, in the Prudential Receivership Case. The Prudential Receiver is in the process of closing a sale of such assets for a dollar amount in excess of $409 million. That sale was approved by order of this Court in the Prudential Receivership Case entered on September 10, 2026. A number of the Defendants herein and their affiliates have filed an appeal of that order.

### B. The Proposed Sale of the Estate's Interest in Poso Creek Water Company, LLC

Meanwhile, this estate's primary remaining asset is a minority interest in the Water Company, which relates to a water allocation of 1,500 acre-feet of water. Recital B of the Agreement explains that MOC's Interest, together with stored water exceeding the reserved 1,500 acre-feet, is being sold through the transaction under the Westlands PSA, subject to this Receiver's reservation concerning the Poso Creek Water. The Agreement conveys this Receiver's own right, title, and interest, if any, in the Interest and the reserved Poso Creek Water. Water

[1] Except where stated otherwise, ECF numbers refer to docket entries in the above-captioned lead case, bearing case number 1:24-cv-01230.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Buyer receives those rights in the Interest; TRS Buyer receives the Poso Creek Water. Ex. 1, recitals A–C; §§ 1.1, 1.6; Ex. A thereto. Water Buyer and TRS Buyer are affiliates of Brightfield, the buyer purchasing assets from the Prudential Receiver.

The purchase price for the Assets in this sale is $1,077,188.00. Dividing this aggregate price by the 1,500 acre-feet of stored water yields approximately $718.13 per acre-foot.[2] The purchase price is the same amount identified for the "Met Receivership PSA" in the Westlands PSA. The Receiver believes that this is a reasonable and fair price for the Assets, inter alia, because:

**(1) The Assets were extensively marketed.** The marketing process encompassed these Assets, not only unrelated property in another receivership. Specifically, the Prudential Receiver's investment banker, Capstone Partners, Inc. ("Capstone"), began marketing the portfolio in April of 2025, including certain Assets of the Receiver herein pursuant to the agreement among Capstone, this Receiver and the Prudential Receiver. See Exhibit "2," Root declaration in support of motion to approve Capstone Engagement Agreement, Prudential Receivership Case at ECF 157-2, at Exhibit A to Capstone Engagement Agreement attached thereto. The agreement among Capstone, this Receiver, and the Prudential Receiver expressly includes the Interests in the Capstone marketing and sale process. Id. Mr. Root describes outreach to more than 125 potential buyers, 40 executed nondisclosure agreements, access to diligence materials including Water Company information, two rounds of indications of interest, and subsequent negotiations and an opportunity for competing bids. See Root Declaration at para. 6. Capstone's extensive marketing culminated in the sale to Brightfield of the broader portfolio. Included in the sale were interests in the Water Company. Exhibit "3" is Schedule 1.1(h) to the Westlands PSA showing what was sold to Brightfield in terms of membership interests and acre-feet. The schedule separately identifies "[a]n additional 1500 AF is owned subject to lien in favor of MetLife." Id. This is the sale of that separately identified asset. This separate identification is consistent with marketing the Assets

[2] This is not a representation that the Agreement separately prices the stored water and the Receiver's rights in the Interest.

within a coordinated process while reserving this Receiver's authority to obtain approval of their disposition here. Using the aggregate purchase price as a comparison metric yields approximately $718.13 per acre-foot. Based on his professional experience and the marketing results, Mr. Root believes that a higher price for the Assets would be difficult, if not impossible, to achieve. See Root Declaration at para. 13.

**(2) The Assets are complex and subject to a limited market.** The collateral that is being sold is a pledged interest that is limited to 1,500 acre-feet of water that is otherwise going to be controlled by Brightfield. Attached as Exhibit "4" are collectively the recorded First Amendment to Deed of Trust, the Pledge and Security Agreement and the First Amendment to the Pledge and Security Agreement dated March 22, 2022. The First Amendment to the Deed of Trust and the First Amendment to the Pledge and Security Agreement expressly amend the lien interest in favor of MetLife in MOC's membership interest in the Water Company to 1,500 acre-feet. They provide that MetLife's security interest in and assignment of the membership interest, and its exercise thereof, "shall be limited with respect to the use of any water available under the Member Water Account to 1,500 acre stored acre-feet of water," defined as the "Priority Banked Water." This express limitation supplies the contractual basis for the reserved quantity of water at issue here. In the experience of the Receiver and Mr. Root, it would be most efficient for Brightfield as the owner of the majority of the interests to make use of those rights, and difficult for a minority interest holder. See Christensen Declaration at para. 5; Root Declaration at para. 14. The sale here to the Buyer resolves the practical difficulty of separately realizing value from the reserved water and associated rights when the Buyer is acquiring the related Water Company interests through the transaction under the Westlands PSA.

**(3) The asset and price were expressly identified in the Westlands PSA and there has been full disclosure**. Section 1.11(b) and item 4 of Schedule 1.11(b) of the Westlands PSA describe the "Met Receivership PSA" and its $1,077,188.00 purchase price. This contemporaneous identification rebuts any new challenge to the value or sale process and confirms the full and fair marketing and opportunities for overbidding that occurred. Defendants raised questions and requested documents concerning the proposed sale under the Agreement, and the

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Receiver made a good-faith effort to address those questions and provide responsive documents in his possession.

### C. Meet and Confer

On October 5, 2026, Movant's counsel sent an email to the Defendants' counsel and others to meet and confer with respect to the Motion. A videoconference was held on October 15, 2026. Defendants' counsel had questions regarding how the purchase price was achieved. Defendants' counsel sent follow-up questions via email requesting additional information. The Receiver provided such information that was in the possession of the Receiver and directed the Defendants to other parties who would be in possession or control of other information regarding the Water Company or regarding matters involving MetLife or Prudential. Still, the last position stated by Defendants on October 21, 2026 was: "we are not in a position to provide consent."

## III.

## LEGAL DISCUSSION

As set forth in the Receiver's appointment order, the Court holds inherent equitable power to order the appointment of a receiver and in the oversight of the actions taken by the Court's receiver. ECF No. 39; *See Winkler v. McCloskey*, 83 F.4th 720 (9th Cir. 2023) (noting that a receiver's power derives from the court's equitable authority). The Court should exercise that authority in approving this transaction, including the scope of the Assets, the marketing undertaken, the price and other terms, and the protection afforded parties asserting interests in the Assets.

Section 2001 of title 28 requires a public sale of realty, and section 2004 requires the same of personalty, in a receivership case. Such process has occurred in the sale process by the Prudential Receiver in the Prudential Receivership Case, with this Receiver's full support and express inclusion of certain assets, including the Assets herein. Pursuant to the Capstone agreement approved by the Court, the Interest was marketed for sale along with the Prudential Receivership estate's interest, in a commercially reasonable manner. As described above, that process included these Assets, outreach to more than 125 potential buyers, access to Water Company information, and opportunities for competing offers. That market exposure supports

SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
(310) 255-6100

approval here. Accordingly, the applicable statute was satisfied. Based on the Receiver's knowledge and experience with similar assets, and the extensive marketing that has occurred herein, the Receiver believes that all reasonable measures have been taken to market the Assets and ascertain their market value.

The limited market for these Assets, the marketing already undertaken, the Receiver's assessment that additional efforts would not produce a higher price, and the transparency and disclosure provided throughout both this and the Prudential Receivership Case support approval without the expense and delay of repeating that process. This Motion and the noticed hearing afford Defendants an opportunity to be heard. The Receiver submits that the sale is commercially reasonable and in the best interests of this estate, apart from its relationship to the larger transaction. This is the last significant asset in the above-captioned consolidated cases. Once the sale is complete, the Receiver intends to move in the direction of closing these Receivership Estates.

## IV.

## CONCLUSION

Based on the foregoing, the Receiver respectfully requests that the Court enter the proposed order authorizing the sale of Assets free and clear of liens, claims, interests, and encumbrances, in the form of Exhibit C to Exhibit 1, and enter such other relief as the Court deems just and proper in the circumstances.

DATED: October 29, 2026 SAUL EWING LLP

By: ______________________

ZEV SHECHTMAN
Attorneys for Phillip Christensen, as Receiver

SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

# DECLARATION OF PHILLIP CHRISTENSEN

I, Phillip Christensen, declare as follows:

1. I am the Receiver in the above-entitled action. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would competently testify to such facts under oath.

2. I make this declaration in support of my above Motion. The facts stated in the Motion are true and correct to the best of my knowledge, information, and belief. I have reviewed and approved the Motion.

3. Attached as Exhibit “1” is a copy of the proposed Agreement and Exhibit “C” thereto is the proposed order on this Motion. The Agreement provides for payment of $1,077,188.00 in cash for the Assets, subject to Court approval and the Agreement’s other conditions.

4. The collateral that is being sold is a pledged interest that is limited to 1,500 acre-feet of water that is otherwise going to be controlled by Brightfield. Attached as Exhibit “4” are collectively the recorded First Amendment to Deed of Trust, the Pledge and Security Agreement and the First Amendment to the Pledge and Security Agreement dated March 22, 2022. The First Amendment to the Deed of Trust and the First Amendment to the Pledge and Security Agreement expressly amend the lien interest in favor of MetLife in MOC’s membership interest in the Water Company to 1,500 acre-feet. They provide that MetLife’s security interest in and assignment of the membership interest, and its exercise thereof, “shall be limited with respect to the use of any water available under the Member Water Account to 1,500 acre stored acre-feet of water,” defined as the “Priority Banked Water.” The Agreement aligns the sale of the estate’s right in that reserved water and any rights I hold in MOC’s Water Company membership interest with the broader Westlands transaction already approved in the Prudential Receivership Case.

5. In my experience, it would be most efficient for Brightfield as the new owner of the majority of the interests to make use of those rights, and difficult for a minority interest holder. I believe that administering these Assets and realizing their value together with the related Water Company interests being acquired by Buyer is more practical than attempting a separate

disposition to a purchaser without those related interests.

6. Based on the marketing process and results described by Mr. Root, the limited scope of the rights I am selling, and my experience with these and similar Assets, I do not believe that repeating the marketing process would likely produce a higher net recovery for this estate.

7. I believe in my professional and business judgment, and based on decades of experience in agricultural business operations and farm asset management and administration in this region, that the relief requested in the Motion is commercially reasonable, appropriate, and in the best interest of the estate and should be approved.

8. This is the last significant asset in the above-captioned consolidated cases. Once the sale is complete, I intend to move in the direction of closing these Receivership Estates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28th day of October, 2026, at Fresno, California.

DocuSigned by:
60A70524EB78430...

Phillip Christensen

SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

# DECLARATION OF SKYE ROOT

I, Skye Root, declare as follows:

1. I am a Managing Director at Capstone Partners, Inc., which is associated with Capstone Capital Markets LLC ("Capstone"), and have held that position since December 2023.

2. Capstone is a full-service investment bank with broad reach to investors throughout domestic and international markets.

3. Throughout my career, I have specialized in agricultural transaction advisory and sales, agricultural management, and consulting throughout the United States and with a particular focus in the western United States. In this regard, I have an extensive network of local and regional brokers and farmland buyers across the western United States. I have completed sales of agricultural properties in seven states, including California, aggregating over $2.1 billion since 2011. Additionally, I have regularly provided in-depth agricultural management consulting. I also have extensive experience with a wide variety of agricultural operations, including those similar to the defendants' farming operations conducted at the Property.

4. Lance Miller, the Prudential Receiver, retained Capstone to be his investment banker pursuant to an Engagement Agreement submitted to the Court by motion on February 25, 2025. See Prudential Receivership Case, 1:24-cv-01102-KES-SAB, ECF 157. A complete copy of the then-proposed Capstone Engagement Agreement is attached as part of Exhibit "2" hereto, which is a copy of my complete declaration in support of such motion. Exhibit A to the Capstone Engagement Agreement is the agreement among Capstone, this Receiver (Phillip Christensen), and the Prudential Receiver, which expressly identifies "Membership interests in Poso Creek Water Company, LLC and all associated water and other rights" among the collateral proposed for inclusion in the coordinated sale process.

5. Accordingly, part of Capstone's mandate was the marketing of certain assets which belonged to the MetLife receivership estates. Among those assets were: "Membership interests in Poso Creek Water Company, LLC and all associated water and other rights." Thus, when I was marketing such assets, I was able to, and did, combine efforts for both Receivers, and obtain efficiencies and value maximization by combining assets that worked best together.

6. Capstone began marketing in April 2025. Capstone reached out to its extensive network of potential acquirors of the Property, including brokers, landowners, operators, and potential investors throughout the United States and internationally. In this process, Capstone contacted over 125 potential buyers and executed 40 non-disclosure agreements (each, an "NDA") with interested parties.

7. Following execution of an NDA, each interested party was provided a voluminous Confidential Information Memorandum and access to a comprehensive virtual data room (the "VDR"). The VDR contains, among other things, detailed ranch-by-ranch and parcel-by-parcel descriptions of the Property, key agreements related to the Property, a financial model, and ranch and soil maps. In addition, interested parties were hosted for guided or self-guided tours of the Property. There was also detailed information about the membership interests in Poso Creek Water Company, LLC.

8. Each interested party also received a copy of Capstone's process letter, which provided guidance for two rounds of non-binding Letters of Intent (each, an "LOI"). Following receipt of the first round LOIs, qualified parties were selected to participate in the second round. In the second round, the parties were directed to submit their highest and best offers to become the Stalking Horse Bidder for the Property.

9. With each of the parties chosen to participate in the second round, the parties negotiated proposed deal terms tied to transaction structure, water issues, crop conditions, and third-party financing. The negotiations with those parties spanned several months in order to secure the best possible terms. Once an LOI was selected to move forward, Brightfield Investments, LLC ("Brightfield") was selected as Stalking Horse Bidder with particular focus on satisfaction of Brightfield's financing conditions. Contemporaneously, Capstone sought to attract other parties to compete for the role of Stalking Horse Bidder, in the event Brightfield was unable to timely secure its financing or, if it did, to participate as potential over-bidders in an auction. Other parties expressed interest, but no party proposed a purchase agreement with terms higher or better than Brightfield's.

10. At the conclusion of the stalking horse process on July 10, 2026, Brightfield was

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

designated as the Stalking Horse Bidder.

11. The deadline to submit Qualified Bids passed on July 31, 2026. Prudential submitted a back-up credit bid in the amount of the required minimum overbid, but no additional bids were received. Accordingly, no Auction was held. Brightfield was the successful purchaser for over $409 million.

12. The sale contemplated Brightfield, or its designee, also purchasing those interests in Poso Creek Water Company, LLC comprising the Assets herein.

13. Based on my professional experience and the results of an extensive marketing process, I believe that the $1,077,188.00 purchase price submitted by the buyer herein, Brightfield's designee, yielding approximately $718.13 per acre-foot, is higher than any other purchase price available for the Assets, and that it would be difficult, if not impossible, to achieve a higher market price. Based on the marketing results, I do not believe an additional marketing process would produce a higher net recovery for these Assets.

14. In addition to having market tested these Assets, I believe these Assets are challenging because they consist of this estate's rights in the reserved 1,500 acre-feet of stored water and any rights this Receiver holds in MOC's Water Company membership interest, while the Buyer is acquiring the related membership interest and other stored water through the transaction under the Westlands PSA. In my experience, it would be most efficient for Brightfield as the owner of the majority of the interests, or its designee, to make use of those rights, and difficult for a minority interest holder.

15. To the best of my knowledge and belief, the marketing and proposed sale of the Property have been done in compliance with all applicable law and orders of this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 28, 2026
In Boise, Idaho

Signed by:
EFE16B238859430...
Skye Root

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**DECLARATION OF ZEV SHECHTMAN**

I, Zev Shechtman, declare as follows:

1. I am an attorney duly licensed to practice before all of the courts in the State of California and admitted in this Court. I am a partner with Saul Ewing LLP, counsel of record for Phillip Christensen, as Receiver in this action. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would competently testify to such facts under oath.

2. I have communicated with counsel to MetLife, Prudential and U.S. Bank, counsel for the Prudential Receiver, and counsel for Buyer, all of whom support, or do not object, to the relief sought in the above Motion. I have also communicated with counsel for Defendants, including a Zoom videoconference on October 15, 2026, and emails thereafter. The Defendants have requested various items of information about the Assets herein. While the Receiver has provided responsive information that is within his possession, he is not able to provide information requested that belongs to others. Despite the Receiver's good faith "meet and confer" efforts, the Defendants, through counsel, have stated that they "are not in a position to provide consent to the Receiver's proposed sale."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 29th day of October, 2026, at Los Angeles, California.

Zev Shechtman

# EXHIBIT 1

***EXECUTION VERSION***

# WATER RIGHTS PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

THIS WATER RIGHTS PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("**Agreement**"), dated effective as of October 20, 2026 (the "**Effective Date**"), and is made and entered into by and among **PHILLIP CHRISTENSEN**, solely in his capacity as court-appointed receiver with respect to certain property of **MARICOPA ORCHARDS, LLC**, a California limited liability company ("**Seller**") pursuant to the *Order Granting Motion for Order Appointing Receiver and for Preliminary Injunction* (as supplemented or amended, the "**Receivership Order**") entered in the case styled *Metropolitan Life Insurance Company v. Maricopa Orchards, LLC et. al.*, Case No. 1:24-cv-01230-KES-SAB (the "**Proceeding**") pending in the U.S. District Court for the Eastern District of California (the "**Court**"); and **WESTSIDE 52 TRS, LLC**, a Delaware limited liability company ("**TRS Buyer**"), with respect to the Poso Creek Water (defined below), and **WESTSIDE 52 WATER, LLC**, a Delaware limited liability company, with respect to the Interest (defined below) ("**52 Water Buyer**", together with TRS Buyer, collectively, "**Buyer**"). For convenience, Buyer and Seller are sometimes referred to herein collectively as the "**Parties**" and individually as a "**Party**."

## BACKGROUND:

A. Seller, solely in his capacity as Court-appointed receiver over certain assets of Maricopa Orchards, LLC, a California limited liability company ("**MOC**"), has, or may have, an interest in and to the membership interest of MOC (the "**Interest**") in POSO CREEK WATER COMPANY, LLC, a California limited liability company (the "**Company**"), and the exclusive possession and control of, and authority to sell (subject to entry of the Sale Order (defined below)) the interest allocated to MOC pursuant to the Interest and the Company's governing documents, in and to 1,500 acre-feet of stored water inventory held in MOC's Member Water Account (as defined in the Company's governing documents) (the "**Poso Creek Water**").

B. The Interest, together with all stored water in excess of the Poso Creek Water held in MOC's Member Water Account or otherwise allocated to MOC pursuant to the Company's governing documents and the Interest, is proposed to be sold to Buyer, together with other property, pursuant to that certain Amended and Restated Purchase and Sale Agreement and Joint Escrow Instructions dated June 17, 2026, between Buyer and LANCE MILLER, solely in his capacity as court-appointed receiver ("**Prudential Receiver**") pursuant to the *Order Expanding Receivership and for Preliminary Injunction* (as supplemented or amended, the "**Prudential Receivership Order**") entered in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB (the "**Prudential Proceeding**") pending in the Court, as "Seller" therein (the "**Concurrent Sale Agreement**", the property described therein, the "**Concurrent Sale Property**", and the escrow with respect thereto, the "**Concurrent Escrow**"), subject to the reservations in favor of Seller with respect to the Poso Creek Water.

C. Seller wishes to sell, and Buyer wishes to purchase, all of Seller's rights and interest in the Interest and the Poso Creek Water on the terms of this Agreement.

D. The transactions contemplated by this Agreement are subject to the approval of the Court and will be consummated only pursuant to an order of the Court entered in the Proceeding authorizing the transactions contemplated herein substantially in the form attached hereto as **Exhibit C** (“**Sale Order**”).

E. The transactions contemplated by this Agreement are to be made concurrently with, and conditioned upon the consummation of the Concurrent Sale.

**AGREEMENTS:**

The parties agree:

**1. PURCHASE AND SALE OF POSO CREEK WATER**

**1.1 Purchase and Sale.** Subject to entry of the Sale Order, and provided that all of the conditions precedent described in Section 2.1, 2.2, and 2.3 below have been satisfied to the reasonable satisfaction of Seller and Buyer, at the Closing provided for in Section 1.4 (“**Closing**”), Seller shall sell and deliver to Buyer, and Buyer shall purchase from Seller, the Seller’s interest and rights in the Interest and the Poso Creek Water free and clear of liens, claims and interests.

**1.2 Deposit.** Within three (3) business days following the Effective Date, Buyer shall deposit with the Escrow Holder an amount equal to $21,543.76 (the “**Deposit**”) in immediately available, good funds of the United States of America. The Deposit shall be credited and applied toward payment of the cash consideration due at Closing.

**1.3 Escrow.** Within three (3) business days following the Effective Date, Seller will deliver a fully executed counterpart of this Agreement to Chicago Title Company, 7330 N. Palm Avenue, Suite 101, Fresno, CA 93711 (Attention: Sue Meyer), who shall act as “**Escrow Holder**,” in connection with an escrow to be established to complete the transaction contemplated by this Agreement and to complete the Concurrent Sale (the “**Escrow**”). The Parties acknowledge that the Escrow Holder is acting solely as a stakeholder at their request and for their convenience, that the Escrow Holder shall not be deemed to be the agent of any of the Parties, and the Escrow Holder shall not be liable to any of the Parties for any act or omission on its part, other than for its breach of this Agreement or its gross negligence or willful misconduct. Seller and Buyer shall jointly and severally indemnify and hold the Escrow Holder harmless from and against all costs, claims and expenses, including attorneys’ fees and disbursements, incurred in connection with the performance of the Escrow Holder’s duties hereunder (except to the extent resulting from Escrow Holder’s breach of this Agreement or its gross negligence or willful misconduct). If at any time after the Effective Date this Agreement shall be amended by Buyer and Seller in writing, it shall not be necessary for Escrow Holder to join in or execute such amendment, provided that no such amendment may specifically modify Escrow Holder’s express obligations set forth in this Agreement. It is understood and agreed that an amendment to any time period or deadline set forth in this Agreement shall not be deemed an amendment to Escrow Holder’s express obligations of this Agreement requiring Escrow Holder’s acknowledgment. Copies of any amendment to this Agreement may be delivered by either Party to Escrow Holder. Upon receipt of any such amendment, Escrow Holder shall observe and comply with the terms of any such amendment made in accordance herewith.

**1.4 Close of Escrow.** Provided all of the conditions to close of escrow set forth herein shall have been acknowledged as waived or satisfied by the Party benefitted by the subject

condition, the close of escrow for the purchase and sale transaction provided for herein (the "**Closing**" or "**Close of Escrow**") shall occur on or before **5:00 p.m., Pacific Time, on a date which is no greater than thirty (30) days following the date the Sale Order becomes final and non-appealable** (the "**Closing Date**") or such other date as agreed to by the Parties; provided that the Closing Date shall in no event occur later than the Closing Date (as defined in the Concurrent Sale Agreement) of the Concurrent Sale Agreement, unless otherwise approved by the Buyer in writing.

**1.5 Purchase Price and Payment.** Buyer shall purchase the Seller's interest in the Interest and the Poso Creek Water from Seller for **One Million Seventy Seven Thousand One Hundred Eighty-Eight and 00/100ths Dollars ($1,077,188.00)** (the "**Purchase Price**"), which shall be paid as follows:

(a) Notwithstanding any term or provision of this Agreement, within three (3) business days of the Effective Date, Buyer shall deliver to Escrow Holder for delivery to Seller an amount equal to **One Hundred 00/100ths Dollars ($100.00)** from the Deposit (the "**Independent Consideration**") as independent consideration to Seller for having entered into this Agreement at any time subsequent to execution hereof. The Independent Consideration shall be nonrefundable if Close of Escrow does not occur for any reason related to a Buyer default or termination under this Agreement, or due to a failure of a Buyer condition, and to the extent that this Agreement requires any funds to be refunded to Buyer, any amount so refunded shall not include the Independent Consideration; provided, however, that the Independent Consideration shall be refunded to Buyer from Seller, as part of Buyer's damages, in the event of a default by Seller under this Agreement.

(b) The balance of the Purchase Price (the **"Balance"**) shall be deposited by Buyer into Escrow no later than one (1) business day prior to the Closing.

(c) The Purchase Price shall be paid to Seller in cash, by cashier's check or wire transfer of immediately available good funds, at the Close of Escrow.

**1.6 Closing Deliveries.** At the Closing:

(a) Buyer shall pay the Purchase Price to Seller as set forth in Section 1.5(c).

(b) Buyer and Seller shall execute and deliver to Escrow Holder an Assignment of Membership Interest and Water Rights, in the form set forth on Exhibit A, attached hereto.

(c) All actions taken at the Closing shall be deemed to have been taken simultaneously at the time the last of any such actions is taken or completed.

**1.7 Closing Costs.** All closing costs incurred in connection with closing the Escrow (the "**Closing Costs**") shall be paid by the parties to the Concurrent Sale Agreement as provided for therein.

## 2. CONDITIONS PRECEDENT; TERMINATION

**2.1 Conditions to Obligations of all Parties.** The obligation of Buyer and Seller to consummate the transactions contemplated by this Agreement at Closing is subject to the fulfillment on or prior to the Closing of the following conditions:

(a) the Court shall have entered the Sale Order with respect to the proposed sale of the Seller's interest in the Interest and the Poso Creek Water, free and clear of any and all liens, claims, pledges and encumbrances, of any type whatsoever, such order shall be in full force and effect and shall not have been stayed or vacated, and any applicable appeal period thereafter having lawfully expired, with no appeal having been filed with respect thereto.

(b) the Court shall have entered a sale order with respect to the Concurrent Sale (the "**Prudential Sale Order**"), and such order shall be in full force and effect and shall not have been stayed or vacated, and any applicable appeal period thereafter having lawfully expired, with no appeal having been filed with respect thereto. Each Party acknowledges and confirms that the other Party has made no representations or warranties, express or implied, that the Prudential Sale Order will be obtained. If: (i) the Court denies approval of the Concurrent Sale Agreement, or (ii) the Prudential Sale Order is overturned in an appeal, or (iii) the Concurrent Sale fails to close for any reason, this Agreement shall be terminated and neither Party shall have any further rights or obligations hereunder except with respect to the provisions hereof that specifically survive termination; and

**2.2 Seller's Conditions Precedent.** Seller's obligation to perform as set forth in this Agreement is hereby expressly conditioned on satisfaction of each and every one of the following conditions precedent:

(a) Buyer shall have performed each of the acts to be performed by it pursuant to this Agreement and the Concurrent Sale Agreement.

(b) Each of Buyer's representations and warranties set forth in this Agreement shall be true and correct at the Close of Escrow as if affirmatively made at that time.

(c) The Concurrent Escrow shall be in a position to close concurrently with the Closing.

The foregoing conditions are solely for the benefit of Seller, any or all of which may be waived by Seller in his sole discretion.

**2.3 Buyer's Conditions Precedent.** Buyer's obligation to perform as set forth in this Agreement is hereby expressly conditioned on satisfaction of each and every one of the following conditions precedent:

(a) The Concurrent Escrow shall be in a position to close and shall close concurrently with the Closing.

(b) Seller shall have performed every act to be performed by them pursuant to this Agreement.

(c) Each of the representations and warranties of Seller contained in this Agreement shall be true and correct at the Close of Escrow as if affirmatively made at that time.

(d) All consents of the other members in the Company to effectuate the valid transfer and assignment of the Seller's interest in the Interest and the Poso Creek Water, to Buyer shall have been obtained in form and substance reasonably satisfactory to Buyer, and no such consent, approval, waiver, or authorization shall have been revoked or modified in any material respect.

The foregoing conditions are solely for the benefit of Buyer, any or all of which may be waived by Buyer in Buyer's sole discretion.

**2.4 Termination**. This Agreement may be terminated in accordance with this Section 2.4 at any time prior to the Closing:

(a) By written notice of either Buyer or Seller if the Closing shall not have occurred by the Outside Date (as defined in the Concurrent Sale Agreement) and the Party seeking to terminate this Agreement has not breached this Agreement in a manner that has been the principal cause of the Closing not occurring on or prior to the Outside Date; provided, however, that the Outside Date may be extended by Seller and Buyer upon mutual agreement;

(b) By written notice of either Buyer or Seller if an order by a governmental authority of competent jurisdiction shall have been issued permanently restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby and such order shall have become final and nonappealable; provided that the right to terminate this Agreement pursuant to this Section 2.4(b) shall not be available to a Party if such order resulted from, or could have been avoided but for, the breach by such Party of any covenant or other agreement of such Party set forth in this Agreement;

(c) By written notice of either Buyer or Seller if Prudential Receiver closes or consummates an alternative transaction regarding the Concurrent Sale Property or the Court enters an order approving such alternative transaction;

(d) By Buyer by giving written notice to Seller at any time prior to Closing (i) in the event there has been a material breach of or material inaccuracy in any representation or warranty made by Seller in this Agreement or if Seller has breached any covenant contained in this Agreement in any respect, which breach, inaccuracy or failure to perform (1) gives rise to a failure of the conditions set forth in Section 2.3 to be satisfied, and (2) (A) is not capable of being cured by the Outside Date or (B) if capable of being cured by the Outside Date, is not cured by the earlier of the Outside Date and thirty (30) days after delivery by Buyer of written notice to Seller of such breach, or (ii) in the event that any condition set forth in Section 2.1 or 2.3 shall become incapable of being satisfied by the Outside Date; provided that, Buyer's right to terminate this Agreement pursuant to this Section 2.4(d) will not be available to Buyer at any time that Buyer is in material breach of any covenant, representation or warranty hereunder; or

(e) By Seller by giving written notice to Buyer at any time prior to Closing (i) in the event there has been a breach of or inaccuracy in any representation or warranty made by Buyer in this Agreement or if Buyer has breached any covenant contained in this Agreement in any respect, which breach, inaccuracy or failure to perform (1) gives rise to a failure of the conditions set forth in Section 2.2 to be satisfied and (2) (A) is not capable of being cured by the Outside Date or (B) if capable of being cured by the Outside Date, is not cured by the earlier of the Outside Date and thirty (30) days after delivery by Seller of written notice to Buyer of such breach, or (ii) in the event that any condition set forth in Section 2.2 shall become incapable of being satisfied by the Outside Date; provided that, Seller's right to terminate this Agreement pursuant to this Section 2.4(e) will not

be available to Seller at any time that Seller is in material breach of any covenant, representation or warranty hereunder; and

(f) By the mutual written consent of Seller and Buyer.

**2.5 Effect of Termination.**

(a) In the event of the termination of this Agreement as provided in Section 2.4, this Agreement shall forthwith become void and there shall be no liability on the part of either Party (except with respect to return or disbursement of the Deposit and any rights or obligations that expressly survive the termination of this Agreement, each of which shall survive any termination); provided, however, that in the event this Agreement is terminated (x) pursuant to Section 2.4(e) and Seller is not then in material breach of that Seller's obligations hereunder, then Seller shall be entitled to retain the Deposit and (y) for any reason other than pursuant to Section 2.4(e), Buyer shall be entitled to return of the Deposit as set forth in this Agreement.

(b) In the event of any breach by Seller of this Agreement, whether or not a willful breach, or any failure of the transaction contemplated by this Agreement to be consummated for whatever reason whatsoever, the sole and exclusive remedy of Buyer shall be to terminate this Agreement in accordance with Section 2.4 and, if applicable, to receive return of the Deposit in accordance with Section 2.5, if payable thereunder.

(c) In the event of any breach by Buyer of this Agreement, whether or not a willful breach, or any failure of the transaction contemplated by this Agreement to be consummated for whatever reason whatsoever, the sole and exclusive remedy of Seller shall be to terminate this Agreement in accordance with Section 2.4 and, if applicable, to receive the Deposit if and to the extent provided in Section 2.5, if payable to Seller thereunder.

## 3. REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer, as of the date of this Agreement and as of the Closing Date:

**3.1 Authority.** Seller is the Court-appointed receiver over the Receivership Property (as defined in the Receivership Order), duly appointed and acting within the scope of authority granted by the Court, and has not received any written notice of challenge or appeal to such appointment that remains unresolved. Subject to entry of the Sale Order, this Agreement has been duly authorized, executed and delivered by Seller and no other action by Seller is necessary to authorize this Agreement or to consummate and perform the transactions contemplated by this Agreement.

**3.2 Disclaimer of Warranties.**

(a) **BUYER ACKNOWLEDGES AND AGREES THAT EXCEPT FOR THE REPRESENTATIONS, WARRANTIES AND OBLIGATIONS IN THIS AGREEMENT BUYER IS PURCHASING THE POSO CREEK WATER "AS-IS", "WHERE-IS", AND "WITH ALL FAULTS AND DEFECTS" AS OF THE EFFECTIVE DATE AND CLOSING DATE, AND BUYER FURTHER ACKNOWLEDGES AND AGREES THAT SELLER HEREBY EXPRESSLY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY OF THE CLOSING DOCUMENTS. BUYER ACKNOWLEDGES THAT NO**

**WARRANTY HAS ARISEN THROUGH TRADE, CUSTOM OR COURSE OF DEALING WITH SELLER, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY OF THE CLOSING DOCUMENTS. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT BUYER WILL RELY SOLELY ON ITS INVESTIGATION OF THE POSO CREEK WATER IN ITS ACQUISITION THEREOF. BUYER REPRESENTS TO SELLER THAT BUYER WILL CONDUCT PRIOR TO CLOSING SUCH INVESTIGATIONS OF THE POSO CREEK WATER AND THE COMPANY AS BUYER DEEMS NECESSARY OR DESIRABLE, PROVIDED HOWEVER, THAT NOTHING IN THIS SECTION SHALL RELIEVE SELLER FROM OBLIGATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY CLOSING DOCUMENTS DELIVERED PURSUANT TO THIS AGREEMENT.** Seller and Seller's legal counsel will cooperate with Buyer in its due diligence process including, but not limited to, determining what will be required to transfer the Poso Creek Water to Buyer at Closing as provided in this Agreement.

(b) Buyer acknowledges and agrees that Buyer will not rely upon any (i) representations or warranties (oral or written) made by or purportedly on behalf of Seller, unless expressly set forth in this Agreement or (ii) documents or other information (oral or written) supplied by, or purportedly on behalf of, Seller. **BUYER FURTHER ACKNOWLEDGES AND AGREES THAT, OTHER THAN THE FIRST AMENDED AND RESTATED OPERATING AGREEMENT FOR THE COMPANY DATED MAY 2, 2024, AS AMENDED, PURSUANT TO WHICH THE WATER IS HELD, ANY DOCUMENTS OR INFORMATION PROVIDED TO BUYER BY SELLER OR ON SELLER'S BEHALF HAVE BEEN OBTAINED FROM A VARIETY OF SOURCES, HAVE NOT BEEN INDEPENDENTLY INVESTIGATED OR VERIFIED BY SELLER, AND ARE NOT TO BE RELIED UPON BY BUYER IN ENTERING INTO THIS AGREEMENT OR PURCHASING THE POSO CREEK WATER. EXCEPT TO THE EXTENT EXPRESSLY PROVIDED IN THIS AGREEMENT OR IN DOCUMENTS DELIVERED AT CLOSING, SELLER MAKES NO EXPRESS REPRESENTATIONS OR WARRANTIES AND DISCLAIMS ANY AND ALL IMPLIED WARRANTIES CONCERNING THE TRUTH, ACCURACY, AND COMPLETENESS OF ANY DOCUMENTS OR INFORMATION SUPPLIED TO BUYER BY SELLER OR ANYONE ACTING OR PURPORTING TO ACT ON SELLER'S BEHALF.**

(c) **EXCEPT AS PROVIDED BELOW, BUYER, FOR ITSELF AND ITS HEIRS, SUCCESSORS AND ASSIGNS, AND ANYONE CLAIMING BY, THROUGH, OR UNDER BUYER, HEREBY EXPRESSLY (i) WAIVES ANY CLAIM AND CAUSE OF ACTION WHICH RELATE, REFER, PERTAIN TO, OR ARISE OUT OF ANY OF THE MATTERS DESCRIBED IN THIS SECTION 3.2, (COLLECTIVELY, "SUCH CLAIMS") (REGARDLESS OF WHETHER SUCH CLAIMS ARE KNOWN OR DISCOVERABLE AS OF THE EFFECTIVE DATE OR THE CLOSING DATE) AND (ii) RELEASES SELLER FROM ANY AND ALL LIABILITY FROM ANY SUCH CLAIMS. PROVIDED, IN EACH CASE THE FOREGOING WAIVER AND RELEASE DOES NOT EXTEND TO (AND SHALL EXPRESSLY EXCLUDE) (A) CLAIMS ARISING FROM SELLER'S FRAUD OR WILLFUL BREACH OF THIS AGREEMENT, AND (B) CLAIMS ARISING FROM SELLER'S BREACH OF ITS REPRESENTATIONS, WARRANTIES, COVENANTS OR INDEMNITIES THAT SURVIVE CLOSING OR SELLER'S FAILURE TO PERFORM OBLIGATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT OR IN THE**

**CLOSING DOCUMENTS TO BE DELIVERED PURSUANT TO SECTION 10.2 OF THE AGREEMENT.**

With respect to the waivers and releases set forth herein and elsewhere in this Agreement, in each case relating to claims unknown to or unsuspected by Buyer, Buyer hereby acknowledges that such waivers and releases are being made after obtaining the advice of counsel and with full knowledge and understanding of the consequences and effects of such waivers and releases, and that such waivers and releases are made with the full knowledge, understanding and agreement that California Civil Code Section 1542 provides as follows, and that the protections afforded by said code section are hereby waived:

> ***"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."***

CM
**Buyer's Initials**

**4. REPRESENTATIONS AND WARRANTIES OF BUYER**

**4.1** Buyer represents and warrants to Seller:

4.1.1 **Authority.** Buyer has the power and authority to execute, deliver and perform this Agreement and the other documents required to be executed by it in connection with this Agreement.

**5. MISCELLANEOUS**

**5.1 Governing Law.** This Agreement shall be governed by and construed in accordance with California law without regard to conflict of laws principles. The Court shall have exclusive jurisdiction over any legal action brought by any Party to interpret or enforce this Agreement. To the extent the Court declines jurisdiction, any legal action brought by any Party to interpret or enforce this Agreement shall be venued in the appropriate state or federal court sitting in the City and County of Fresno, California.

**5.2 Entire Agreement.** This Agreement and the other documents executed or delivered under the Agreement contain the complete agreement among the parties regarding the transactions contemplated and supersede all prior agreements and understandings among the parties regarding the transactions contemplated by this Agreement.

**5.3 Counterparts.** This Agreement may be executed in any number of counterparts, each of which may be executed by only one Party, which shall be enforceable against the parties actually executing such counterparts, and all of which together shall constitute one instrument. Any such counterpart may be delivered by facsimile, e-mail (in .pdf format), or any electronic signature complying with the U.S federal ESIGN Act of 2000 (e.g., www.docusign.com) and any such counterpart so delivered shall be deemed an original for all purposes.

**5.4 Attorney's Fees; Pre-litigation Dispute Resolution**. Each Party shall pay the fees and expenses of its own attorneys in connection with the preparation, negotiation, and execution of this Agreement. In the event of any action between the Parties hereto for breach of or to enforce any provision or right hereunder, the unsuccessful Party in such action shall pay to the prevailing Party all costs and expenses expressly including, but not limited to, reasonable attorneys' fees and costs, including but not limited to expert fees, incurred by the prevailing Party in connection with such action. The Parties agree that before either institutes litigation against the other arising from this Agreement, it will make a good faith attempt to meet with the other Party first and attempt to resolve the dispute.

**5.5 Time**. Time is of the essence in this Agreement.

**5.6 Amendment**. Neither this Agreement nor any of its provisions may be changed or amended orally but only by an instrument in writing signed by the Parties to be bound.

**5.7 Assignment**. Buyer may assign to an entity owned or controlled by Buyer or its designee, any or all of its rights and obligations under this Agreement, by giving Seller notice of such assignment at least three (3) days prior to the Close of Escrow, containing the name of the assignee ("**Authorized Assignee**"), provided that Buyer shall not be released from any liability under this Agreement and provided that the Buyer's representations and warranties hereunder are true as to the Authorized Assignee. Any other proposed assignment shall require the written consent of Seller, which may be withheld at his sole discretion. Any Authorized Assignee, along with Buyer, shall be obligated jointly and severally to fulfill all of Buyer's duties and obligations under this Agreement and the warranties and representations of Buyer shall be the warranties and representations of the Authorized Assignee.

**5.8 Waiver**. The waiver by one Party of the performance of any covenant, condition or promise, or of the time for performing any act, under this Agreement shall not invalidate this Agreement nor shall it be considered a waiver by such Party of any other covenant, condition or promise, or of the time for performing any other act required, under this Agreement. The exercise of any remedy provided in this Agreement shall not be a waiver of any remedy provided by law, and the provisions of this Agreement for any remedy shall not exclude any other remedies unless they are expressly excluded.

**5.9 Joint Drafting.** This Agreement shall be deemed to have been drafted by all Parties and in the event of a dispute, shall not be construed against any Party on the basis of that Party's role in drafting this Agreement.

**5.10 Validity**. Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be valid under applicable law, but, if any provision of this Agreement shall be invalid or prohibited thereunder, such provision shall be effective to the extent of such prohibition without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**5.11 Notices**. All notices and demands which either Party is required or desires to give to the other shall be given in writing (i) by certified mail, return receipt requested with appropriate postage paid, (ii) by personal delivery or by private overnight courier service to the address set forth on Exhibit B, or (iii) by e-mail with an electronic confirmation of delivery; provided that if any Party gives notice of a change of name or address, notices to that Party shall thereafter be given as demanded in that notice. All notices and demands so given shall be effective upon receipt by the Party to whom

notice or demand is being given, except that any notice given by certified mail shall be deemed delivered three (3) business days after deposit in the United States Mails, and any notice given by overnight courier shall be deemed delivered one (1) business day after delivery to the overnight courier. A copy of any notice required to be served on either Party under this Agreement shall also be served on the Receiver and its counsel as set forth on Exhibit B.

**5.12 Pending Receivership**. Buyer, on behalf of itself and its successors and assigns, acknowledges, and expressly agrees that Seller is entering into this Agreement solely in his capacity as Court-appointed receiver in the Proceeding and, as such, shall have no personal liability for any claims arising under or related to this Agreement, the Poso Creek Water, or otherwise.

**5.13 Further Assurances.** Each Party shall, from time to time, at the request of the other Party and without further consideration, execute and deliver such additional documents and instruments and take such further actions as may be reasonably necessary or desirable to carry out the purposes and intent of this Agreement and to consummate the transactions contemplated hereby, including such actions as may be reasonably necessary to transfer, convey, or perfect Buyer's rights in and to the Interest and the Poso Creek Water in accordance with the terms of this Agreement.

SIGNATURE PAGE FOLLOWS

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement effective as of the date first above written.

SELLER

DocuSigned by:
Phillip Christensen
______________________________
PHILLIP CHRISTENSEN, solely in his capacity as court-appointed receiver with respect to certain property of Maricopa Orchards, LLC, a California limited liability company

BUYER

WESTSIDE 52 TRS, LLC,
a Delaware limited liability company

By: ______________________________
Name: Charles F.H. McNairy
Its: Authorized Signatory

WESTSIDE 52 WATER, LLC,
a Delaware limited liability company

By: ______________________________
Name: Charles F.H. McNairy
Its: Authorized Signatory

EXHIBIT A

FORM OF ASSIGNMENT OF MEMBERSHIP INTEREST AND WATER RIGHTS

ASSIGNMENT OF MEMBERSHIP INTEREST AND STORED WATER

THIS ASSIGNMENT OF MEMBERSHIP INTEREST AND STORED WATER (This "**Assignment**") is made effective as of ______________________, 2026 (the "**Effective Date**"), by PHILLIP CHRISTENSEN, solely in his capacity as court-appointed receiver pursuant to the ___________________ ("**Sale Order**") entered in the case styled ___________________ ("**Assignor**"), to (i) WESTSIDE 52 TRS, LLC, a Delaware limited liability company ("**TRS Assignee**"), with respect to the Poso Creek Water (defined below), and (ii) WESTSIDE 52 WATER, LLC, a Delaware limited liability company ("**Water Assignee**" and, together with TRS Assignee, the "**Assignee**"), with respect to the Interest (defined below).

A. Assignor, solely in his capacity as Court-appointed receiver over certain assets of Maricopa Orchards, LLC, a California limited liability company ("**MOC**"), has, or may have, an interest in the membership interest of MOC (the "**Interest**") in POSO CREEK WATER COMPANY, LLC, a California limited liability company (the "**Company**"), which Interest is to be assigned to Water Assignee, and the exclusive possession and control of, and authority to sell (subject to entry of the Sale Order (defined below)) the interest allocated to MOC pursuant to the Interest and the Company's governing documents, in and to 1,500 acre-feet of stored water inventory held in MOC's Member Water Account (as defined in the Company's governing documents) (the "**Poso Creek Water**"), which Poso Creek Water is to be assigned to TRS Assignee, held by for the benefit of MOC.

B. The Interest, together with any stored water inventory in excess of the Poso Creek Water held by the Company for the benefit of MOC, has been sold to Assignee by LANCE MILLER, solely in his capacity as court-appointed receiver, pursuant to the Order (I) Authorizing Sale of Real Estate Free and Clear of Interests; (II) Authorizing the Payment of Sale-Related Costs; and (III) Granting Related Relief (Westlands) ("**Sale Order**") entered in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB, pending in the U.S. District Court for the Eastern District of California (the "**Concurrent Transaction**"), subject to the reservations in favor of Assignor with respect to the Poso Creek Water.

C. Assignor desires to transfer all of Assignor's interest in the Interest and the Poso Creek Water to Assignee and Assignee desires to accept Assignor's interest in the Interest and the Poso Creek Water in connection with the Concurrent Transaction.

NOW, THEREFORE, the parties agree as follows:

1. Assignment. Assignor hereby grants, transfers, and assigns (i) to Water Assignee all of Assignor's right, title and interest in and to the Interest, and (ii) to TRS Assignee all of Assignor's right, title and interest in and to the Poso Creek Water. Assignor further delegates to the applicable Assignee all of Assignor's duties and obligations arising on or after the Effective Date in any way relating to the Interest or the Poso Creek Water, as applicable (but excluding any liabilities, defaults or breaches arising or existing prior to the Effective Date).

2. Acceptance of Assignment and Assumption of Obligations. Water Assignee hereby accepts the assignment of the Interest, and TRS Assignee hereby accepts the assignment of the Poso Creek Water, and each Assignee assumes all of Assignor's duties and obligations arising on or after the Effective Date in any way relating to the Interest or the Poso Creek Water, as applicable, and agrees to be bound by the provisions of the First Amended and Restated Operating Agreement for the Company dated May 2, 2024 (in effect as of the Effective Date, the "**Operating Agreement**"), with respect to the Interest or the Poso Creek Water, as applicable.

SIGNATURE PAGE FOLLOWS

ASSIGNOR

________________________________
PHILLIP CHRISTENSEN, Solely in his capacity as court-appointed receiver with respect to certain property of Maricopa Orchards, LLC, a California limited liability company

Date of Execution: _________________

ASSIGNEE

WESTSIDE 52 TRS, LLC,
a Delaware limited liability company

By:______________________________
Name: Charles F. H. McNairy
Its: Authorized Signatory

Date of Execution: _________________

WESTSIDE 52 WATER, LLC,
a Delaware limited liability company

By:______________________________
Name: Charles F. H. McNairy
Its: Authorized Signatory

Date of Execution: _________________

EXHIBIT B

NOTICE ADDRESSES

If to Buyer:

Westside 52 TRS, LLC and Westside 52 Water, LLC
International Farming Corporation, LLC
1318 Dale St.
Raleigh, NC 27605
Attention: Ralph Isenrich
Email: risenrich@intlfarming.com

With a copy to:

George Bravante
1356 S. Buttonwillow Avenue
Reedley, CA 93654
Email: george@bravantefarmcapital.com

With a copy to:

Wild, Carter & Tipton
246 W. Shaw Ave.
Fresno, CA 93704
Attn: Bruce Brown
Telephone: 559-224-2131 (Ext 3763)
Email: bbrown@wctlaw.com

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Attention: Ori Katz, Robert Sahyan, Kirk Rider
Email: okatz@sheppard.com, rsahyan@sheppard.com, krider@sheppard.com

If to Seller:

Phillip Christensen, Receiver
2787 W Bullard Ave.
Fresno, CA 93711
Attention: Turner Christensen
Email: t.christensen@agriglobe.com

With a copy to:

Saul Ewing LLP
1888 Century Park East
Suite 1500
Los Angeles, CA 90067
Attention: Zev Shechtman
Email: zev.shechtman@saul.com

| | |
|---|---|
| To Receiver | Lance Miller, Receiver<br>c/o Pivot Group<br>1230 Rosecrans Avenue<br>Suite 300 – PMB928<br>Manhattan Beach, CA 90266<br>Attn: Lance Miller or Matt Covington<br>Telephone: 424-363-0599<br>Email: lance.miller@pivotgrp.com and matt.covington@pivotgrp.com |
| With a copy to: | Katten Muchin Rosenman LLP<br>2121 North Pearl Street, Suite 1100<br>Dallas, TX 75201-2591<br>Attn: John Mitchell and Michaela Crocker<br>Telephone: 214-765-3600<br>Email: john.mitchell@katten.com and michaela.crocker@katten.com |
| and | Cutts Law, PC<br>5088 N. Fruit Ave, Ste 101<br>Fresno, CA 93711<br>Attn: Lisa A. Cutts<br>Telephone: 559-226-8177<br>Email: lac@cutts-law.com |

EXHIBIT C

FORM OF SALE ORDER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

METROPOLITAN LIFE INSURANCE COMPANY, a New York Corporation,

Plaintiff,

v.

C & A Farms, LLC, a California limited liability company, et al.,

Defendants.

☐ Affects All cases
☒ Affects Metropolitan Life Ins. Co. v. C & A Farms, LLC, et al., 1:24-cv-01230
☐Affects Brighthouse Life Ins. Co. v. Manning Avenue Pistachios, LLC, et al., 1:24-cv-01233
☐ Affects MetLife Real Estate Lending, LLC v. Panoche Pistachios, LLC, et al., 1:24-cv-01241

Lead Case No. 1:24-cv-01230-KES-SAB

Consolidated with Case Nos.: 1:24-cv-01233; and 1:24-cv-01241

**[PROPOSED] ORDER APPROVING SALE OF CERTAIN MEMBERSHIP INTERESTS AND WATER FREE AND CLEAR OF LIENS AND RELATED RELIEF**

Judge: Kirk E. Sheriff

The Court has read and considered the *Receiver's Notice of Proposed Action and Motion for Order Approving Sale of Membership Interests and Water Free and Clear of Liens and Related Relief* (the "Motion"), filed by Phillip Christensen, Receiver of the above-referenced estate (the "Receiver" or "Seller") on ___, 2026; and the Water Rights Purchase and Sale Agreement and Joint Escrow Instructions (the "PSA") filed concurrently with the Motion that was entered into by and between Seller, on the one hand, and Westside 52 TRS, LLC ("TRS"), and Westside 52 Water, LLC ("Water LLC" and together with TRS, the "Buyer"), each a Delaware limited liability company ("Buyer"). The PSA contemplates the sale of Maricopa Orchards, LLC, a California limited liability company ("MOC")'s membership interest (the "Interest") in POSO CREEK WATER COMPANY, LLC, a California limited liability company (the "Company") to Water LLC, and the sale to TRS of the rights and interest allocated to MOC, pursuant to the Interest and the Company's governing documents, in and to 1,500 acre-feet of stored water inventory held in MOC's Member Water Account (as defined in the Company's governing documents) (the "Poso Creek Water") (collectively, the "Assets").

The Motion and accompanying notice provided that any opposition to the sale of the Assets must be filed within seven days of filing of the Motion pursuant to Paragraph 50 of the Appointment Order (doc. no. 39). To date, no objections to the Motion have been timely filed, or alternatively, any objection has either been overruled or withdrawn.

As of the Closing Date,[1] the transfer of the Property to the Buyer will be a legal, valid, and effective transfer thereof, and vests the Buyer with all right, title, and interest of the Defendants and the estate in and to the Assets free and clear of all liens and interests accruing or arising any time prior to the Closing Date.

[1] Capitalized terms used herein shall have the meanings ascribed in the PSA.

Buyer has negotiated and entered into the PSA in good faith, at arm's length, and without collusion.

The sale is attendant to a larger sale of assets in the related cases filed by the Prudential Receiver in lead case number 1:24-cv-01102-KES-SAB to the same Buyer, which sale has complied with 28 U.S.C. § 2001, and the Court finds that such compliance also satisfies such requirement for purposes of this Order.

Accordingly, it is hereby ORDERED THAT:

1. The sale pursuant to the Sale Notice and the PSA is APPROVED.

2. The sale by the Receiver of the Assets to Buyer, or its designee, for the Purchase Price of $1,077,188.00 is APPROVED. The Deposit shall be credited to the Purchase Price and the balance must be paid at Closing.

3. The sale of the Assets is free and clear of all liens, claims, interests, and encumbrances of any kind, with any such liens, claims, interests, and encumbrances to attach to the proceeds of the sale to the same extent and with the same priority as existed immediately prior to the Closing, except that the liens, claims, and interests of The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC in the Assets shall not be removed, and the sale shall not be free and clear of such liens, claims, and interests, unless and until Brightfield Investments, LLC or its designee acquires title to the property that is the subject of the separate sale pending in the Prudential Receivership Case, Case No. 1:24-cv-01102-KES-SAB, whether through consummation of such sale, a foreclosure, or otherwise, at which point such liens, claims, and interests shall be automatically and immediately released from the Assets without further order of this Court or any other action by any party.

4. Buyer shall not be liable as a successor or otherwise for any claim against, or obligation or liability of, the Receiver, MOC, the Company, or the Defendants arising prior to the Closing Date.

5. The Receiver is authorized to pay costs, if any, as described in the Motion.

6. The notice of the sale is adequate and proper.

7. The Receiver is authorized to execute documents and take such other and further action as may be necessary to close the sale and otherwise give effect to this Order, without need for further notice or order.

8. This Court shall retain exclusive jurisdiction over any disputes arising from or related to the Assets, the PSA, or the implementation or interpretation of this Order.

9. This Order shall be effective and enforceable immediately upon entry, and any stay otherwise applicable is waived.

IT IS SO ORDERED.

Dated: ______________________ ______________________________
United States District Court Judge

# EXHIBIT 2

Docusign Envelope ID: 15010B00-589D-4283-99D0-7A18FB9AA518


Terence G. Banich (SBN 212173)[1]
terence.banich@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661-3693
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

John E. Mitchell (*pro hac vice*)
Michaela C. Crocker (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl St., Ste. 1100
Dallas, TX 75201-2591
Telephone: (214) 765-3600
Facsimile: (214) 765-3602

*Attorneys for the Receiver*
Lance Miller

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ACDF, LLC, et al.<br><br>Defendants. | No. 1:24-cv-01102-KES-SAB<br><br>**DECLARATION OF SKYE ROOT IN SUPPORT OF UNOPPOSED MOTION OF RECEIVER LANCE MILLER FOR ORDER AUTHORIZING ENGAGEMENT AND COMPENSATION OF CAPSTONE CAPITAL MARKETS LLC AS INVESTMENT BANKER**<br><br>**HONORABLE KIRK E. SHERRIFF** |

[1] Designated as counsel for service pursuant to L.R. 182(c)(1).

I, Skye Root, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1. I am over the age of eighteen years, am under no disability, and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this declaration are based upon my personal knowledge and/or my review of documents. If called as a witness in this case, I could and would testify competently to the facts set forth in this declaration.

2. I submit this declaration in support of the *Unopposed Motion of Receiver Lance Miller for Order Authorizing Engagement and Compensation of Capstone Capital Markets LLC as Investment Banker* (the "**Motion**").[2]

3. I am a Managing Director at Capstone Partners, Inc. and have held that position since December 2023. As a Managing Director at Capstone Partners, Inc., I am authorized to submit this declaration on behalf of Capstone Capital Markets LLC ("**Capstone**") and in support of the Motion.

4. Throughout my career, I have specialized in agricultural transaction advisory and sales, agricultural management, and consulting in the western United States. In this regard, I have an extensive network of local and regional brokers and farmland buyers across the western United States. I have completed sales of agricultural properties in seven states, including California, aggregating over $2.1 billion since 2011. Additionally, I regularly provided in-depth agricultural management consulting. I also have extensive experience with a wide variety of agricultural operations, including those similar to the defendants' farming operations conducted at the Sale Properties.

5. Except as otherwise noted, I have personal knowledge of the matters set forth herein. If called as a witness, I could, and would, testify competently to the matters set forth herein. Certain of the disclosures herein, however, relate to matters within the personal knowledge of other professionals at Capstone and are based on information provided to me by such professionals.

6. A true and correct copy of the Engagement Letter is attached as Exhibit 1 hereto.

[2] All capitalized terms used but not defined in this Declaration shall have the meanings ascribed to them in the Engagement Letter.

**Capstone's Qualifications**

7. I believe that Capstone and the professionals it employs are uniquely qualified to advise the Receiver on the matters for which it is proposed to be employed in a cost effective, efficient, and expert manner.

8. Capstone is a full-service investment bank with broad reach to investors throughout domestic and international markets. For a transaction of this size and nature, Capstone has access to top national and multinational strategic and financial buyers of agricultural businesses and assets.

9. The senior bankers leading this engagement, myself and Jerry Sturgill, combine more than 50 years of investment banking and transactional experience. Both of us have led transactions for the sale of complex agricultural businesses and assets, including in settings like this one, where careful analysis and presentation of complex water rights and strategies are central to achieving the highest potential value. Among their many successful sales transactions, several have been in court-supervised settings.

10. For example, I led the bankruptcy auction and sale of the extensive farming and ranching operations of Easterday Ranches, Inc. in *In re Easterday Ranches, Inc., et al.*, Case No. 21-00141-WLH11, United States Bankruptcy Court, Eastern District of Washington (2021); the sale by the court-appointed receiver of the blueberry growing and processing operations of Othello Blueberry in *Rabo Agrifinance, LLC v. Othello Blueberry LLC et al.*, Case No. 23-2-50416-l, Superior Court of the State of Washington (2023); and the bankruptcy sale of the Mensonides dairy operations in *In re Mensonides Dairy, LLC,* No. 18-01681-FLK11, United States Bankruptcy Court Eastern District of Washington (2019). In addition to my transactional experience, I have deep experience and expertise with agricultural water rights and delivery systems, farm management, and crop inputs.

11. Mr. Sturgill served as the court-appointed Divestiture Trustee and led the Capstone team in the sale of dairy processing assets acquired by Dairy Farmers of America in the Dean Foods bankruptcy. *United States of America, Commonwealth of Massachusetts and State of Illinois v. Dairy Farmers of America and Dean Foods*, Case No. 20 C 2658, United States District Court for

Northern District of Illinois (2020). He has also successfully sold businesses and assets in large mergers and acquisition transactions both in the United States and abroad. As a former partner of the law firm Latham & Watkins, he led the New-York-based corporate finance practice for the firm and was extensively involved in large mergers and acquisitions sponsored by the firm's clients and in various corporate restructurings. He has also served as the turnaround CEO of a regional logistics company.

12. Capstone also has the benefit of access to teams of analysts and investment bankers located throughout the United States and abroad. The Capstone agricultural group specifically has worked on various cross-border transactions in many of the world's most important agricultural markets throughout Europe, South America, and Australasia. The firm's international reach is further extended through Capstone's important role as a partner of the International Mergers and Acquisitions Partnership (IMAP).

**Services to be Provided by Capstone**

13. Subject to Court order, and consistent with the terms of the Engagement Letter, Capstone will render the following services (the "**Transaction Services**"), among others, as directed by the Receiver:

(i) formulating a market strategy for the Transactions;

(ii) identifying and contacting potential strategic and/or financial acquirers ("Prospective Acquirers");

(iii) subject to the guidance and approval of the Receiver, negotiating confidentiality agreements with Prospective Acquirors;

(iv) preparing a Confidential Information Memorandum, management presentations, and other marketing materials for use in the marketing process ("Marketing Materials");

(v) delivering Marketing Materials to Prospective Acquirors;

(vi) coordinating introductions, diligence requests, and arranging and conducting telephonic or in-person meetings with Prospective Acquirers;

(vii) coordinating the receipt and evaluation of offers or proposals from Prospective Acquirers;

(viii) assisting in evaluation of proposed valuations, transaction structures and related terms and conditions;

(ix) providing the Receiver with periodic status reports and being available to the Receiver and his advisors at all reasonable times to discuss any matters relating to the Transaction or Transactions;

(x) assisting the negotiation and consummation of definitive agreements for each Transaction;

(xi) providing testimony and/or witness services with respect to the Transaction process and its completeness before the Court; and

(xii) such other advisory services as may be customarily provided in connection with the analysis and negotiation of Transactions like those contemplated in this Agreement and as may be requested and mutually agreed between Capstone and the Receiver.

**Indemnification**

14. The Engagement Letter contains standard indemnification and limitation of liability language with respect to Capstone's services (the "**Indemnity**"). I believe that the Indemnity is customary and reasonable for engagements of this type and should be approved.

**Proposed Compensation**

15. Capstone has accepted this engagement conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for its out-of-pocket expenses incurred in accordance with its customary billing practices as set forth in the Engagement Letter. As more fully set forth in the Engagement Letter, the Receiver intends to compensate Capstone for its investment banking services as follows:[3]

[3] In the event of any inconsistency between this summary and the Engagement Letter, the terms of the Engagement Letter shall govern.

Section 3: Professional Fees. As compensation for the Transaction Services rendered under the Engagement Letter by Capstone, Capstone will receive payment of the following fees:

(i) Retainer Fees: a non-refundable retainer fee of $35,000 payable upon the execution and delivery of the Engagement Letter and on the first day of each subsequent month during the Term of the Engagement Letter (the "Monthly Retainer Fees"). Subject to subparagraph (ii)(b) below, the aggregate amount of Monthly Retainer Fees will be fully credited against the Transaction Fee.

(ii) Transaction Fee: Upon the closing of one or more Transactions involving the sale of Sale Property, Capstone shall receive a cash fee equal to one percent (1.0%) of the Aggregate Transaction Value (as defined in Section 4 of the Engagement Letter) attributable to each Transaction, and upon the closing of one or more Transactions involving sale of Excluded Parcels, if any, Capstone shall receive a cash fee of two percent (2.0%) (in each case a "Transaction Fee") *provided that*:

a) The aggregate Transaction Fees attributable to all Transactions involving Sale Property and Excluded Parcels shall not be less than five million dollars ($5,000,000) (the "Minimum Transaction Fee") after credit of Monthly Retainer Fees, and

b) If a Lender successfully consummates one or more Transactions as a credit bidder in any Transaction, the Transaction Fee attributable to each such Transaction shall be reduced by twenty five percent (25%).

During the Term of the Engagement Letter, the Transaction Fee, if earned by Capstone pursuant to the terms herein, shall be payable to Capstone regardless of whether or not the Prospective Acquirer was introduced by Capstone. In addition, Capstone will be reimbursed for all reasonable expenses related to the Transaction Services and

Transaction(s) described herein, including the reasonable fees and expenses, if any, of legal counsel, water consultants, or other advisors retained by Capstone in connection with its performance under the Engagement Letter; provided, however, that the Receiver shall not be responsible for any single out-of-pocket expense (or series of related expenses, such as legal or consultant fees paid to the same person or business expenses incurred on a single business trip) in excess of $1,000 unless the expense is approved in writing by the Receiver prior to its incurrence.

***

<u>Section 6: Abandonment Fee.</u> If the Capstone sale process under the Engagement Letter is abandoned or terminated at any time other than termination for Cause (an "Abandonment"), Capstone will be paid a cash fee as follows (the "Abandonment Fee"): (i) the Abandonment Fee will be $0 until Capstone's marketing materials and list of Prospective Acquirors have been presented to and approved by the Receiver (estimated to be completed by March 19, 2025) ("Phase 1"); (ii) following conclusion of Phase 1 and until the deadline set by the Receiver for receipt of non-binding letters of intent ("Phase 2"), the Abandonment Fee will be $500,000; (iii) upon the later of (x) conclusion of Phase 2, and (y) receipt by the Receiver of a non-binding letter of intent from a Prospective Acquiror anticipating gross consideration of at least $450,000,000 ("Phase 3") (estimated deadline for receipt of indications of interest – May 14, 2025), the Abandonment Fee will be $1,000,000; and, (iv) upon the receipt by the Receiver of a binding offer anticipating gross consideration of at least $450,000,000 (deadline estimated to be July 9, 2025) and prior to closing (outside closing date estimated to be September 8, 2025), the Abandonment Fee will be $2,500,000. The Abandonment Fee will be allocated and payable according to the relative values of Lender collateral interests (or Company property interests) in the Sale Property; provided, however, that the following parcels shall be excluded from the calculation of any Abandonment Fee: APN Nos. 038-130-71S; 038-130-62S; 038-130-35S; 038-200-09S; 038-200-04S;

> 038-141-59S; and 038-210-25S. In the event that a Lender forecloses on any or all of the Sale Property that serves as its collateral and thereafter such Lender or its affiliates/related entities take title to such property (a "Lender-Owner"), the Abandonment Fee apportioned to such property shall be waived and will not be payable so long as such Lender-Owner reengages Capstone to complete the sale process related to such property. The Abandonment Fee will be further reduced dollar-for-dollar by the amount of fees collected by Capstone from sale of Excluded Parcels, if any.

Engagement Letter §§ 3,6.

16. The essential terms of the Engagement Letter are standard and usual terms that Capstone includes within its agreements for similar engagements.

17. It is not the general practice of investment banking firms, including Capstone, to keep detailed time records similar to those customarily kept by the attorneys and other professionals employed in this case. Because Capstone, with respect to its investment banking services, does not ordinarily maintain contemporaneous time records, or provide or conform to a schedule of hourly rates for professionals, coupled with the fact that Capstone's fees are results driven, Capstone requests that it be excused from compliance with any such requirements.

18. Consistent with the Engagement Letter, it is Capstone's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Capstone's policy to charge its clients only amounts actually incurred by Capstone in connection with such items. Examples of such expenses include outside counsel costs, outside copy services, travel, lodging, meals, and services of outside vendors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 24, 2025

In Boise, Idaho

By: Signed by: Skye Root EFE16B238859430...

Skye Root

ENGAGEMENT AGREEMENT

This Engagement Agreement (the "Agreement") is made by and between Lance Miller, solely in his capacity as court-appointed receiver as described below (the "Receiver"), and Capstone Capital Markets LLC ("Capstone").

The Receiver is acting under the authority of the United States District Court, Eastern District of California, Fresno Division (the "Court"), in the pending cases styled (a) *The Prudential Insurance Company et al. v. ACDF, LLC et al,* Case No. 1:24-cv-01102-KES-SAB and (b) *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC et al.,* Case No. 1:24-cv-01455-KES-SAB (together with any other cases that are related to the foregoing cases and are pending, now or hereafter, before the Court in which Lance Miller, now or hereafter, is appointed as receiver, the "Cases") and pursuant to orders of the Court appointing Lance Miller as receiver (1:24-cv-01102-KES-SAB, Dkt. No. 120 and Case No. 1:24-cv-01455-KES-SAB, Dkt. No. 29, together the "Receivership Orders" and each a "Receivership Order"). The Receivership Orders, among other things, authorize the Receiver to dispose of the real property identified on **Appendix B** hereto (the "Sale Property"), which Sale Property is subject to the loans and collateral rights of the lenders as described in the applicable Receivership Order (collectively, the "Lenders") to Maricopa Orchards, LLC and certain of its affiliates as identified on **Appendix A** hereto (collectively, the "Company"). Capitalized terms not otherwise defined in the Agreement have the meanings provided in the applicable Receivership Order.

Section 1: Engagement. The Receiver hereby engages Capstone to act as the sole and exclusive investment banking advisor in connection with the sale of the Sale Property in a transaction or series of transactions (each a "Transaction" and, collectively, the "Transactions"), as well as an exclusive advisor with respect to the properties listed on **Appendix C (**as may be amended, the "**Excluded Parcels**"). The term "Sale Property" shall include any properties that become Sale Property after the date hereof pursuant to any Exhibit hereto and the term "Lenders" shall include any parties that join in this Agreement after the date hereof pursuant to any Exhibit hereto. Sale Property may be reclassified as Excluded Parcels, and vice versa, by a written agreement of the Receiver and Capstone.

Section 2: Scope of Services.

(a) For sale of the Sale Property, Capstone's services shall include assisting and advising with respect to the following (subparagraphs (i) through (xiii) collectively, the "Transaction Services"):

(i) formulating a market strategy for the Transactions;

(ii) identifying and contacting potential strategic and/or financial acquirers ("Prospective Acquirers") and providing a list of Prospective Acquirors to Receiver

upon request and, in no event, later than thirty (30) days of the termination of this Agreement;

(iii) subject to the guidance and approval of the Receiver, negotiating confidentiality agreements with Prospective Acquirors;

(iv) preparing a Confidential Information Memorandum, management presentations, and other marketing materials for use in the marketing process ("Marketing Materials");

(v) delivering Marketing Materials to Prospective Acquirors;

(vi) coordinating introductions, diligence requests, and arranging and conducting telephonic or in-person meetings with Prospective Acquirers;

(vii) coordinating the receipt and evaluation of offers or proposals from Prospective Acquirers;

(viii) assisting in evaluation of proposed valuations, transaction structures and related terms and conditions;

(ix) providing the Receiver with periodic status reports and be available to the Receiver and his advisors at all reasonable times to discuss any matters relating to the Transaction or Transactions;

(x) assisting the negotiation and consummation of definitive agreements for each Transaction;

(xi) assisting the Receiver in apportioning values among various properties included as Sale Property for purposes of apportioning fees under this agreement and sale proceeds among the Sale Property;

(xii) providing testimony and/or witness services with respect to the Transaction process and its completeness before the Court;

(xiii) such other advisory services as may be customarily provided in connection with the analysis and negotiation of Transactions like those contemplated in this Agreement and as may be requested and mutually agreed between Capstone and the Receiver.

(b) Capstone agrees that it shall (i) maintain all licenses, permits and other governmental authorizations of any kind required to perform the services contemplated herein, and (ii) provide all of the services in a professional manner, consistent in all respects with applicable law and generally accepted industry practices.

(c) The Receiver will reasonably cooperate with Capstone in its performance of the Transaction Services, including but not limited to promptly responding to requests for information regarding the Sale Property, assembly and maintenance of a virtual data room, and access to the Sale Property for visits by Prospective Acquirors. Unless otherwise agreed in writing, Capstone will take direction in performance of the Transaction Services exclusively from the Receiver; however (and not withstanding anything to the contrary), the Receiver will continue to be bound by all consultation, notice, veto, and consent rights contained in the Receivership Orders for all purposes under this Agreement.

(d) To maximize potential proceeds in a Transaction or Transactions for the sale of the Sale Property, Capstone and the Receiver will determine together (i) which parcels of the Sale Property should be bundled and marketed together to achieve the highest potential market and which Excluded Parcels may be sold separately, (ii) which Free and Clear Properties and other assets and ownership interests (specifically, in water companies) should be included in a Transaction, and (iii) which properties of third-parties adjacent to, bounded by, or otherwise related to parcels of Sale Property may be included in a Transaction upon agreement of their owners. Subject to these determinations, the Receiver and Capstone will consult and cooperate together to promptly present and negotiate the terms of (a) an agreement with the MetLife/Brighthouse receiver, Phillip Christensen of AgriGlobe, appointed in Case Nos. 24-01226, 24-01230, 24-01231, 24-01232, 24-01233, 24-01235, 24-01241, and 24-01261 pending before the Court, in substantially the form attached as **Exhibit A**; (b) an agreement with the Company in substantially the form of attached **Exhibit B**; (c) agreements with landowners owning properties adjacent, bounded by or otherwise related to the parcels of Sale Property willing to participate in a Transaction in substantially the form of attached **Exhibit C**; and (d) agreements with additional lenders to the Company or its affiliates willing to participate in the Transactions in substantially the form of attached **Exhibit D** (Exhibits A-D are each individually a "**Letter Agreement**").

(e) Capstone does not guarantee the consummation of a Transaction or Transactions. Capstone, for all purposes hereunder, shall be an independent contractor and any duties of Capstone arising out of its engagement pursuant to this Agreement shall be owed solely to the Receiver.

(f) This Agreement is not intended in any way to create the relationship of principal or agent by or between the Receiver and Capstone, nor shall this Agreement be deemed to have established a partnership or joint venture. The Receiver shall have the sole and absolute right to accept or reject any offer received from Prospective Acquirers, and any Transaction Fee (as defined in Section 3 below) payable hereunder shall be paid only if and when Transactions are consummated.

(g) The Receiver acknowledges that Capstone has been retained hereunder solely as an advisor to the Receiver and not as an advisor to or agent of any other person, and that the engagement of Capstone is as an independent contractor and not in any other capacity, including as a fiduciary.

(h) The Receiver further acknowledges that he is not relying on the advice of Capstone for tax, legal, or accounting matters, and will rely on the advice of his own professionals and advisors for such matters and will make an independent analysis and decision regarding any Transaction(s) based upon such advice.

(i) It is understood that any information or advice rendered by Capstone or any of its representatives in connection with this Agreement is for the confidential use of the Receiver and will not be reproduced, disseminated, summarized, described, quoted, or referred to or given to any other person, other than Lenders and their authorized agents and representatives, at any time, in any manner, or for any purpose without Capstone's prior written consent.

Section 3: Professional Fee. As compensation for the Transaction Services rendered hereunder by Capstone, Capstone will receive payment of the following fees:

(a) Engagement Fee: A non-refundable, one-time cash fee in the aggregate amount of $100,000 (the "Engagement Fee"), due and payable by the Receiver upon the full execution and delivery of this Agreement (the "Effective Date").

(b) Monthly Retainer Fees: A non-refundable cash retainer fee of $35,000 payable by the Receiver thirty days after: (A) the Effective Date and (B) the last day of each subsequent calendar month during the Term of this Agreement (the "Monthly Retainer Fees"). To the extent this Agreement terminates prior to a month end, the Monthly Retainer Fees will be pro-rated on a daily basis. Subject to subparagraph (c) below, the aggregate amount of the Engagement Fee and the Monthly Retainer Fees will be fully credited against the Transaction Fees in accordance with the Lender allocations provided in subparagraph (e) below.

(c) Transaction Fees: Upon the closing of one or more Transactions involving the sale of Sale Property, Capstone shall receive a cash fee equal to one percent (1.0%) of the Transaction Value (as defined in Section 4 below) attributable to each Transaction, and upon the closing of one or more Transactions involving sale of Excluded Parcels, if any, Capstone shall receive a cash fee of two percent (2.0%) (in each case a "Transaction Fee"); *provided that:*

(i) The aggregate Transaction Fees attributable to all Transactions involving Sale Property and Excluded Parcels shall not be less than five million dollars ($5,000,000) (the "Minimum Transaction Fee") after credit of Engagement Fee and Monthly Retainer Fees (which, for purposes of clarity, shall be applied to and reduce the Minimum Transaction Fee on a dollar-for-dollar basis); and

(ii) If a Lender successfully consummates one or more Transactions as a credit bidder in any Transaction, the Transaction Fee attributable to each such Transaction shall be reduced by twenty five percent (25%) and such Transaction Fee (plus the 25% reduction thereto) shall reduce any Minimum Transaction Fee balance then outstanding on a dollar-for-dollar basis. This Section 3(c)(ii) shall be fully renegotiable in the event a petition in bankruptcy is filed by or against the Company.

For the avoidance of doubt, in Transaction(s) involving both Sale Property and Excluded Parcels, the Transaction Fee for Sale Property will not exceed a cash fee equal to one percent (1.0%) of the Transaction Value attributable to Sale Property and the Transaction Fee for Excluded Parcels shall not be less a cash fee of two percent (2%) of the Transaction Value attributable to Excluded Parcels.

(d) During the Term of this Agreement, the Transaction Fee, if earned by Capstone pursuant to the terms herein, shall be payable to Capstone regardless of whether or not the Prospective Acquirer was introduced by Capstone. In addition, Capstone will be reimbursed for all reasonable expenses related to the Transaction Services and Transaction(s) described herein, including the reasonable fees and expenses, if any, of legal counsel, water consultants, or other advisors retained by Capstone in connection with its performance under this Agreement; *provided, however,* that Receiver shall not be responsible for any single out-of-pocket expense (or series of related expenses, such as legal or consultant fees paid to the same person or business expenses incurred on a single business trip) in excess of $1,000 unless the expense is approved in writing by the Receiver prior to its incurrence.

(e) The Receiver will allocate the fees set forth in this Section 3 as follows: (i) with respect to the Engagement Fee, according to the relative pro rata acreage of each Lender's collateral interests in the Sale Property; and (ii) with respect to the Monthly Retainer Fees, according to the relative pro rata acreage of each Lender's collateral interests in the Sale Property that has not been sold at the time that such Monthly Retainer Fees become due. If any Lender joins this Agreement after the Effective Date, the Engagement Fee and Monthly Fee will be allocated and payable as set forth in the applicable Letter Agreement.

<u>Section 4: Transaction Value</u>. For the purposes of calculating the Transaction Fee, the "<u>Transaction Value</u>" for a Transaction shall be the gross proceeds and other consideration paid to, or received by, or to be paid to or received by the Receiver or any of the Lenders in connection with the relevant Transactions. Such proceeds and consideration shall be deemed to include, without limitation, the following to the extent paid or assumed by purchaser: cash, notes, securities, and other property; payments made in installments; and change of control bonuses, retention payments, or similar arrangements and/or Contingent Payments (as defined below). The term "<u>Contingent Payments</u>" shall mean the consideration received by the Receiver or the Lenders placed in escrow, deferred installments of purchase price, or any other deferred payments. For the sake of clarity, Contingent Payments shall only be included in the Transaction Value if the Contingent Payments are actually made to and received by the Receiver or the Lenders. For the avoidance of doubt, the amount of the Transaction Fee that is payable at the closing of a Transaction will be determined as set forth above without taking into account the value of any Contingent Consideration and additional installments of the Transaction Fee will be payable in respect of each payment of Contingent Consideration if, as, and when such Contingent Consideration is paid to or received by the Receiver or the Lenders.

<u>Section 5: Term and Termination</u>.

(a) This Agreement shall be in effect (the "<u>Term</u>") from the Effective Date until the earlier of: (i) forty-five days after the Effective Date in the event the Receiver fails to obtain a

Court order approving the Agreement, which date may be extended by prior written agreement of the Receiver and the applicable Lender; and (ii) termination (A) by the Receiver or Capstone upon thirty (30) days prior written notice to the other party, (B) by the Receiver upon written notice to Capstone if Capstone breaches the Agreement in any material respect and fails to cure the breach within 30 days of written notice of such breach ("Cause"), (C) upon the occurrence of a Bankruptcy Termination; (D) upon the date that the Receiver shall cease to be Receiver, or (E) as set forth in any further order of the Court. The Receiver and Capstone expressly acknowledge and agree that the provisions of Sections 3 through 13 and 16, inclusive, shall survive any termination of this Agreement.

(b) Notwithstanding the termination of this Agreement for any reason other than (i) a termination by Capstone, (ii) a termination by the Receiver for Cause, (iii) a Bankruptcy Termination (defined below), or (iv) the failure of the Receiver to obtain a Court order approving this Agreement within forty-five days after the Effective Date (which date may be extended by prior written agreement of the Receiver and the applicable Lender) (in which case Section 15 shall apply), the Receiver will remain obligated to pay to Capstone the Transaction Fee if within 12 months after the date of such termination, a Transaction is consummated by Receiver involving a Prospective Acquirer that prior to termination of this Agreement had been: (A) contacted by Capstone in writing with respect to a Transaction; (B) made aware of a Transaction through the efforts of or material produced by Capstone, either directly or indirectly; (C) identified by Capstone as a potential interested party and the Receiver instructed Capstone in writing not to contact that party; or (D) otherwise expressed interest in writing in a Transaction with the Receiver during the Term of this Agreement. Any Transaction Fee payable under this Section 5 shall be reduced dollar-for-dollar by any Abandonment Fee previously paid with respect to the same Sale Property under Section 6.

(c) Upon expiration of the Term, Capstone shall: (i) deliver to Receiver all materials and supplies, keys, contracts and documents, and such other accounting papers and records pertaining to this Agreement in Capstone's possession, as Receiver shall reasonably request; and (ii) deliver to Receiver all marketing materials related to the Sale Property and the Excluded Parcels in Capstone's possession, including, without limitation, all brochures, marketing boards, architectural renderings, and photographs (digital and printed) created specifically and solely for the Property.

Section 6: Abandonment Fee. If this Agreement is abandoned or terminated at any time other than termination for Cause (an "Abandonment"), Capstone will be paid a cash fee as follows (the "Abandonment Fee"): (i) the Abandonment Fee will be $0 until Capstone's marketing materials and list of Prospective Acquirors have been presented to and approved by the Receiver (estimated to be completed by March 19, 2025) ("Phase 1"); (ii) following conclusion of Phase 1 and until the deadline set by the Receiver for receipt of non-binding letters of intent ("Phase 2"), the Abandonment Fee will be $500,000; (iii) upon the later of (x) conclusion of Phase 2, and (y) receipt by the Receiver of a non-binding letter of intent from a Prospective Acquiror anticipating gross consideration of at least $450,000,000 ("Phase 3") (estimated deadline for receipt of indications of interest – May 14, 2025), the Abandonment Fee will be $1,000,000; and, (iv) upon the receipt by the Receiver of a binding offer anticipating gross consideration of at least $450,000,000 (deadline estimated to be July 9, 2025) and prior to closing (outside closing date estimated to be

September 8, 2025), the Abandonment Fee will be $2,500,000. The Abandonment Fee will be allocated and payable according to the relative values of Lender collateral interests (or Company property interests) in the Sale Property; *provided, however*, that the following parcels shall be excluded from the calculation of any Abandonment Fee: APN Nos. 038-130-71S; 038-130-62S; 038-130-35S; 038-200-09S; 038-200-04S; 038-141-59S; and 038-210-25S. In the event that a Lender forecloses on any or all of the Sale Property that serves as its collateral and thereafter such Lender or its affiliates/related entities take title to such property (a "Lender-Owner"), the Abandonment Fee apportioned to such property shall be waived and will not be payable so long as such Lender-Owner reengages Capstone to complete the sale process related to such property. The Abandonment Fee will be further reduced dollar-for-dollar by the amount of fees collected by Capstone from sale of Excluded Parcels, if any.

Section 7: Representations.

(a) The Receiver hereby represents and warrants that, to his knowledge, all facts, figures, information, and additional supporting documentation provided to Capstone and pertaining to the Company and the Sale Property are true and accurate in all material respects. The Receiver understands and acknowledges that Capstone will rely on such facts, figures, and other information when describing and promoting a Transaction to potential Prospective Acquirers without making an investigation into the accuracy of such representations. As such, the Receiver will actively participate in the preparation of any descriptive materials related to a Transaction and assume sole responsibility for the content of said materials.

(b) If during the Term of this Agreement, the Receiver or any of his employees or agents is contacted by or on behalf of any prospective purchaser or other third party concerning the possibility of a Transaction, they will promptly so inform Capstone and will refer any such persons to Capstone.

Section 8: Indemnification.

(a) The Receiver, solely in his capacity as Court-appoint receiver, will (i) indemnify and hold harmless Capstone, its officers, directors, members, managers, employees, affiliates, consultants, and agents or assignees (collectively, the "Capstone Indemnified Persons") from and against any and all losses, claims, damages, or liabilities to which any Capstone Indemnified Person may become subject arising in any manner out of or in connection with the rendering of services by Capstone hereunder, unless (x) such losses, claims, damages, or liabilities are in respect of expenses not subject to reimbursement under Section 3(d) hereof or (y) it is finally determined by a court or arbitral tribunal that such losses, claims, damages, or liabilities are solely the result of Capstone's gross negligence or willful misconduct; and (ii) reimburse each Capstone Indemnified Person promptly for all legal and other reasonable and documented expenses reasonably incurred by it in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuits, investigations, claims, or other proceedings arising in any manner out of or in connection with the rendering of services by Capstone hereunder, unless it is finally determined by a court or arbitral tribunal that Capstone's services forming the basis of such lawsuits, investigations, claims, or other proceedings were performed with gross negligence or willful misconduct.

(b) Capstone will (i) indemnify and hold harmless the Receiver, its officers, directors, members, managers, employees, affiliates, consultants, and agents or assignees (collectively, the "Receiver Indemnified Persons") from and against any and all losses, claims, damages, or liabilities to which any Receiver Indemnified Person may become subject arising directly from Capstone's gross negligence or willful misconduct as finally determined by a court or arbitral tribunal; and (ii) reimburse each Receiver Indemnified Person promptly for all legal and other reasonable and documented expenses reasonably incurred by it in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuits, investigations, claims, or other proceedings arising directly from such gross negligence or willful misconduct.

(c) The indemnification and reimbursement commitments set forth in this Section 8 shall apply whether or not either Capstone, or any Capstone Indemnified Person, or Receiver, or any Receiver Indemnified Person, is a formal party to any lawsuit, investigation, claim, or other proceeding and whether or not any such Capstone Indemnified Person is at the time affiliated with Capstone or any such Receiver Indemnified Person is at the time affiliated with the Receiver. Without: (i) Capstone's prior written consent, such consent not to be unreasonably withheld or delayed, the Receiver will not enter into any settlement of a lawsuit, claim, or other proceeding arising out of the transactions contemplated by this Agreement to which Capstone or any Capstone Indemnified Person is an actual party or, in the reasonable judgment of such party, is a potential party, unless such settlement includes an explicit and unconditional release from the party bringing such lawsuit, claim, or other proceeding of Capstone and/or all Capstone Indemnified Persons; or (ii) Receiver's prior written consent, such consent not to be unreasonably withheld or delayed, Capstone will not enter into any settlement of a lawsuit, claim, or other proceeding arising out of the transactions contemplated by this Agreement to which Receiver or any Receiver Indemnified Person is an actual party or, in the reasonable judgment of such party, is a potential party, unless such settlement includes an explicit and unconditional release from the party bringing such lawsuit, claim, or other proceeding of Receiver and/or all Receiver Indemnified Persons.

(d) If indemnification is to be sought hereunder, then the party seeking indemnification shall promptly notify the indemnifying party of the assertion of a claim or demand or the commencement of any action or proceeding in respect thereof; provided, however, that the failure to so notify shall not relieve an indemnifying party from any liability it may have to such party seeking indemnification pursuant to this Section 8 except to the extent that such party has been prejudiced in any material respect by such failure or from any liability it may have to the party seeking indemnification other than pursuant to this Section 8. Notwithstanding the above, following such notification, an indemnifying party may elect in writing to assume the defense of such action or proceeding, and, upon such election, it shall not be liable for any legal costs subsequently incurred by such party seeking indemnification (other than reasonable costs of investigation and providing evidence) in connection therewith, unless (i) the indemnifying party has failed to provide counsel reasonably satisfactory to such party seeking indemnification in a timely manner, (ii) counsel which has been provided by the indemnifying party reasonably determines that its representation of such party seeking indemnification would present it with a conflict of interest for which such representation is inappropriate under applicable rules of professional conduct, or (iii) legal counsel for the party seeking indemnification reasonably

determines that is a conflict of interest for which such representation is inappropriate under applicable rules of professional conduct.

(e) Notwithstanding anything to the contrary in this Agreement, Capstone acknowledges and expressly agrees that the Receiver is entering into this Agreement solely in his capacity as Court-appointed receiver and shall have no personal liability for any claims arising under or related to this Agreement, including any indemnification-related claims. Any liability arising under or related to this Agreement shall be the sole responsibility of the receivership estate(s).

Section 9: Disclosure. Subject to Section 17 below, the Receiver agrees that upon consummation of all of the Transaction(s) contemplated herein, Capstone may, at Capstone's expense, advertise and otherwise disclose its role in effecting such Transaction(s); *provided that* (i) Capstone will consult with the Receiver prior to issuing any public statement, press release, or advertisement; (ii) Capstone shall not include the price, value, or terms of any financing with respect of the Transaction without the consent of the Receiver; and (iii) Capstone shall not include the identity of the applicable Lender without the prior written consent of each such Lender. For the avoidance of doubt, if this Agreement is abandoned or terminated prior to the consummation of all of the Transaction(s) contemplated herein, Capstone may only advertise and disclose its role in effecting the Transaction(s) that actually closed prior to such abandonment or termination, and shall not reference such abandonment or termination in such advertisement or disclosure, subject to the terms and conditions hereof.

Section 10: Forbearance. Any forbearance by Capstone or the Receiver in exercising any of their respective rights under this Agreement shall not be considered a waiver of such right(s). Any waiver must be expressly granted in writing and a waiver on any one occasion shall not be construed as a waiver on any future occasion.

Section 11: Notification. Any notices pursuant to this Agreement shall be in writing and shall be deemed sufficiently given when sent and on the date of posting, by certified mail, return receipt requested, overnight delivery, or similar messenger service, to the respective addresses of Capstone and the Receiver set forth below or other address specified by one party by written notice to the other party.

**Capstone Capital Markets LLC**
176 Federal St., 3rd Floor
Boston, MA 02110

**Lance Miller**
Pivot Group
1230 Rosecrans Ave Suite 530
Manhattan Beach, CA 90266

With copy to:

Katten Muchin Rosenman LLP
Attn: John Mitchell
2121 North Pearl Street, Suite 1100
Dallas, TX 75201-2494

Section 12: Governance.

(a) This Agreement incorporates the entire understanding between the Receiver and Capstone and supersedes all previous agreements relating to the subject matter hereof. This Agreement may not be amended or modified except in a writing signed by the Receiver and Capstone. This Agreement shall be binding upon and inure to the benefit of the Receiver and Capstone and their respective successors and assigns. If any term or provision of this Agreement shall to any extent be deemed illegal, invalid, or unenforceable, the remainder of this Agreement shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

(b) This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California. The Receiver and Capstone hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Court and, in the event the Court does not have or declines jurisdiction over the parties hereto, then to the courts of the State of California located in Fresno County for any lawsuits, actions, or other proceedings arising out of or relating to this Agreement and agree not to commence any such lawsuit, action, or other proceeding except in such courts. The Receiver and Capstone further agree that service of any process, summons, notice, or document by mail to their respective addresses set forth above shall be effective service of process for any lawsuit, action, or other proceeding brought against either party in any such court. The Receiver and Capstone hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, action, or other proceeding arising out of or relating to this Agreement in the Court or, if the Court declines jurisdiction, the courts of the State of California, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such lawsuit, action, or other proceeding brought in any such court has been brought in an inconvenient forum. Any right to trial by jury with respect to any lawsuit, claim, or other proceeding arising out of or relating to this Agreement or the services to be rendered by Capstone hereunder is expressly and irrevocably waived.

(c) This Agreement has been and is made solely for the benefit of the Receiver, Capstone, and their respective successors and assignees, and no other person shall acquire or have any right under or by virtue of this Agreement. By signing below, the parties hereby understand and agree to the full terms, conditions, and provisions of this Agreement and further represent and warrant that the undersigned are duly authorized to enter into this Agreement which shall be binding and enforceable in accordance with its terms.

Section 13: Chapter 11. In the event the Company and the Sale Property are the subject of a voluntary or involuntary petition(s) under Chapter 11 or 7 of the Bankruptcy Code:

(a) In the event the Receiver is vested by the Company or the bankruptcy court having jurisdiction over the Company's bankruptcy case(s) (the "Bankruptcy Court") with authority to act on behalf of the Company, the Receiver may apply to the Bankruptcy Court for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of: (i) this Agreement to continue the process of selling the Sale Property; and (ii) Capstone's retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code.

(b) Capstone shall have no obligation to provide Transaction Services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Capstone's retention under the terms of this Agreement is approved under Section 328(a) of the Bankruptcy Code by a final order entered by the Bankruptcy Court that is no longer subject to appeal, rehearing, reconsideration, or petition for certiorari, and which order is acceptable to Capstone in all respects (any such termination or failure to obtain the Bankruptcy Court's approval of Capstone's retention, a "Bankruptcy Termination").

(c) Capstone acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Capstone's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that, to the extent time records are required, Capstone will keep them in one-half hour increments or such other increments as the Bankruptcy Court requires.

Section 14. No Assignment. No Party may assign any right, benefit, or interest in this Agreement without the written consent of the other party, which consent may not be unreasonably withheld.

Section 15. Court Approval. Receiver shall seek and pursue in good faith entry by the Court of such order(s) as may be required to effectuate the transaction(s) contemplated herein, including orders approving this Agreement. Capstone shall cooperate with the Receiver to obtain all requisite Court approvals. Receiver shall keep Capstone updated on the ongoing status of the Court approval of this Agreement and any court actions, if any. If Court orders approving this Agreement are not secured within forty-five (45) days of the Effective Date for any reason whatsoever (or such later date as may be agreed to in writing between the Receiver and the applicable Lender), then this Agreement shall, without further notice, be null and void and of no further force and effect and Capstone shall not be entitled to commission or other fees earned thereafter. Capstone, however, will not be required to disgorge commissions or fees paid during the Term of this Agreement.

Section 16 Pending Receivership. Notwithstanding anything to the contrary in this Agreement or any ancillary documents, Capstone acknowledges and expressly agrees that the Receiver is entering into this Agreement solely in his capacity as Court-appointed receiver and neither he nor Pivot Management Group, LLC shall have any liability for claims arising under or related to this Agreement. Any liability arising under or related to this Agreement shall be the sole responsibility of the applicable receivership estate(s). Capstone agrees that this Agreement and all documents executed in connection herewith or therewith, are executed and delivered by Receiver, not in his own right, but solely in the exercise of and subject to the powers conferred upon him by the Court,

and that no liability, personal or otherwise, is assumed by, nor shall at any time be asserted or enforceable against Receiver, individually, on account of this Agreement or the documents executed in connection herewith or therewith. The provisions of this Paragraph shall survive the expiration or earlier termination of this Agreement.

Section 17. Confidentiality. Capstone acknowledges that all documents, analyses, records, statements, etc. (the "Confidential Information") provided by Receiver and designated as "confidential" are confidential and proprietary. Capstone shall keep all such information confidential and shall not disclose, photocopy, or reproduce the Confidential Information in any manner without the prior written authorization of Receiver, except as otherwise set forth in this Agreement. Capstone shall not disclose, summarize, or otherwise provide any portion of the Confidential Information to any person other than Capstone's partners, agents, and employees, and then only on a "need-to-know" basis.

IN WITNESS WHEREOF, the parties have executed this Agreement with their signatures below:

| THE RECEIVER | CAPSTONE CAPITAL MARKETS, INC. |
| --- | --- |
| ______________________________ | By: ______________________________ |
| Lance Miller, solely in his capacity as Court-appointed Receiver | Name: ______________________________<br>Title: ______________________________ |

ACKNOWLEDGED BY:

PGIM REAL ESTATE FINANCE, LLC,
a Delaware limited liability company

By: ______________________________
Name: ______________________________
Title: ______________________________

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA, a New Jersey corporation

By: ______________________________
Name: ______________________________
Title: ______________________________

THE BANK OF NEW YORK MELLON, a New York
banking corporation, not in its individual capacity but
solely as Trustee under the Reserve Trust Agreement for the PAR U HARTFORD LIFE & ANNUITY COMFORT TRUST

By: PGIM Real Estate Loan Services, Inc. f/k/a Prudential Asset Resources, Inc., a Delaware corporation

Its: Servicer
By: ______________________________
Name: ______________________________
Title: ______________________________

FEDERAL AGRICULTURAL MORTGAGE CORPORATION

By: ______________________________
Name: ______________________________
Title: ______________________________

**Appendix A**

## RELEVANT MARICOPA ENTITIES

FARMING

4Leg Energy Solutions
A&H Investments, LLC
ACAP Farms, LLC**
Adams Grantor Land, LLC
ACDF, LLC*
Ashlan & Hayes Investments, LLC
Assemi and Sons, Inc.*
Avila Ranch EA, LLC*
Bear Flag Farms, LLC*
C & A FARMS, LLC* **
Cantua Orchards, LLC* **
Copper Avenue Investments, LLC**
DA Real Estate Holdings, LLC*
Elevated Ag, LLC
Favier Ranch, LLC*
FFGT Farms, LLC
FG2 Holdings, LLC*
FNF Farms, LLC
Goldstar Investment Group, LLC
Gradon Farms, LLC* **
Grantland Farms, LLC
Grantland Holdings No. 1, LLC*
Grantland Holdings No. 2, LLC*
Grantor Real Estate Investments, LLC*
Granville Farms, LLC*
GV AG LLC*
Kamm South, LLC
Lincoln Grantor Farms, LLC* **
Manning Avenue Pistachios, LLC
Maricopa Orchards, LLC* **
Panoche Pistachios, LLC*
Sageberry Farms, LLC*
West Fern Investments, Inc.
Whitesbridge Farms, LLC**
Willow Avenue Investments, LLC **
Winston Farms, LLC

RELATED WATER ENTITIES

Poso Creek Water Company
Arroyo Pasajero Mutual Water Company
Other water entities and water interests related to the Sale Property

* Defendants in Case No. 1:24-cv-01102-KES-SAB
** Defendants in Case No. 1:24-cv-01455-KES-SAB

**Appendix B**

**SALE PROPERTY**

| Map Location | APN Number | New Field # | Crop | Owner | Water District | Real Estate Loan Lender |
|---|---|---|---|---|---|---|
| Kamm Avenue | 038-141-59s | 15101 | Pistachios | ACDF, LLC | Westlands Water District | Met Life/Prudential |
| Calaveras Ranch | 038-090-37S | 02104 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 038-090-37S | 02104 | Well | ACDF, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 038-090-37S | 02404 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 038-160-10S | 13104 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 038-160-13 | 13104 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Gooselake | 069-230-05-01-2 | 65122 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-05-01-2 | 65122 | Reservoir | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-05-01-2 | 65122 | Well | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-05-01-2 | 65422 | Lift Pump | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-05-01-2 | 65422 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-07-00-9 | 65322 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-20-00-6 | 64622 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-20-00-6 | 64722 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-20-00-6 | 64822 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-20-00-6 | 65722 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-20-00-6 | 65822 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-21-01-8 | 65522 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-22-01-1 | 65622 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-22-01-1 | 65622 | Reservoir | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-36-00-3 | 65922 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-36-00-3 | 65922 | Well | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 069-230-55-00-8 | 64822 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-010-03-00-8 | 67222 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-010-08-00-3 | 66222 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-010-08-00-3 | 66322 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-010-08-00-3 | 66722 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-010-11-00-1 | 66122 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-010-18-00-2 | 66122 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-010-18-00-2 | 66122 | Well | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-010-18-00-2 | 66222 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-010-19-00-5 | 66122 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-010-19-00-5 | 66122 | Well | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-010-19-00-5 | 66222 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-020-03-00-1 | 64922 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-020-03-00-1 | 66022 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-020-03-00-1 | 66022 | Yard | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-020-09-00-9 | 64922 | Lift Pump | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-020-09-00-9 | 64922 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-020-10-00-1 | 64922 | Lift Pump | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-020-10-00-1 | 64922 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-020-10-00-1 | 64922 | Well | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-100-28-00-7 | 66922 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-100-28-00-7 | 66922 | Reservoir | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-100-28-00-7 | 66922 | Well | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-01-01-0 | 66722 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-01-01-0 | 66822 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-03-01-6 | 66722 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-03-01-6 | 66822 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-04-00-0 | 66322 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-04-00-0 | 66322 | Well | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-04-00-0 | 66422 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-04-00-0 | 66522 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-04-00-0 | 66722 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-04-00-0 | 66722 | Reservoir | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-05-01-2 | 65022 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-05-01-2 | 66422 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-05-01-2 | 66522 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-05-01-2 | 67022 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-05-01-2 | 67022 | Well | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-09-00-5 | 66322 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-110-09-00-5 | 66722 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-120-01-00-4 | 67122 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 086-120-05-00-6 | 67122 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 087-080-25-00-0 | 66422 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 087-080-25-00-0 | 66422 | Well | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 087-080-25-00-0 | 66522 | Building | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 087-080-25-00-0 | 66522 | House | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 087-080-25-00-0 | 66522 | Pistachios | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 087-080-25-00-0 | 66522 | Shop | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 087-080-25-00-0 | 66522 | Well | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Gooselake | 087-080-25-00-0 | 66522 | Yard | ACDF, LLC | Semitropic Water Storage District | Prudential |
| I-5 Ranch | 027-210-20S | 19105 | Open | ACDF, LLC | Westlands Water District | Prudential |
| I-5 Ranch | 027-210-29S | 19105 | Open | ACDF, LLC | Westlands Water District | Prudential |
| I-5 Ranch | 027-210-32S | 19105 | House | ACDF, LLC | Westlands Water District | Prudential |
| I-5 Ranch | 027-210-32S | 19105 | Open | ACDF, LLC | Westlands Water District | Prudential |
| I-5 Ranch | 027-210-33S | 19105 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-04 | 06401 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-55s | 09201 | Almonds | ACDF, LLC | Westlands Water District | Prudential |

**Exhibit 2**

| Map Location | APN Number | New Field # | Crop | Owner | Water District | Real Estate Loan Lender |
|---|---|---|---|---|---|---|
| Kamm Avenue | 038-130-51s | 16201 | Pistachios | ACDF, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-130-86s | 16201 | Pistachios | ACDF, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-130-87s | 16201 | Pistachios | ACDF, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-60s | 15101 | Pistachios | ACDF, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 045-040-02 | 02401 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 045-040-04S | 02401 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 045-040-08 | 02401 | Open | ACDF, LLC | Westlands Water District | Prudential |
| McCombs Ranch | 058-292-05-00-5 | 62220 | Open | ACDF, LLC | Semitropic Water Storage District | Prudential |
| McCombs Ranch | 058-292-05-00-5 | 62220 | Well | ACDF, LLC | Semitropic Water Storage District | Prudential |
| McCombs Ranch | 058-292-05-00-5 | 62220 | Yard | ACDF, LLC | Semitropic Water Storage District | Prudential |
| Panoche Road | 027-050-68S | 11205 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-30S | 13505 | Jojoba | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-37S | 14205 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-37S | 14305 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-37S | 14405 | House | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-37S | 14405 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-37S | 14405 | Shop | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-37S | 14405 | Yard | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-40S | 13105 | Cherries | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-40S | 13105 | Non-Op Well | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-40S | 13105 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-40S | 24105 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-40S | 24405 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-41S | 13105 | Cherries | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-41S | 13105 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-41S | 13405 | Non-Op Well | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-110-41S | 13405 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-200-02S | 13405 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-200-04S | 12105 | Jojoba | ACDF, LLC | Westlands Water District | Prudential |
| Panoche Road | 027-200-04S | 12105 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Primestar | 017-080-46s | 27105 | Pistachios | ACDF, LLC | Westlands Water District | Prudential |
| Primestar | 017-080-72s | 27105 | Pistachios | ACDF, LLC | Westlands Water District | Prudential |
| Windfall | 017-060-06s | 15305 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Windfall | 027-180-45s | 34605 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Windfall | 027-180-46s | 34105 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Windfall | 027-180-46s | 34205 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Windfall | 027-180-46s | 34305 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Windfall | 027-180-46s | 34305 | Well | ACDF, LLC | Westlands Water District | Prudential |
| Windfall | 027-180-46s | 34405 | Pistachios | ACDF, LLC | Westlands Water District | Prudential |
| Windfall | 027-180-46s | 34505 | Open | ACDF, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-42S | 11107 | Open | Avila Ranch EA, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-42S | 11407 | Almonds | Avila Ranch EA, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-42S | 11507 | Open | Avila Ranch EA, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-43S | 11207 | DOV | Avila Ranch EA, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-43S | 11307 | Open | Avila Ranch EA, LLC | Westlands Water District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 72620 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 72620 | Reservoir | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 72720 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 72820 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 72820 | Well | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 72920 | House | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 72920 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 72920 | Shop | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 72920 | Well | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 73020 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 73020 | Well | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 73120 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 73120 | Well | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 73220 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-010-01-01-6 | 79420 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-040-03-01-1 | 73820 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-040-03-01-1 | 73920 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-040-06-00-1 | 73320 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-040-07-00-4 | 73320 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-040-09-00-0 | 73420 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-040-13-00-1 | 73520 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-040-13-00-1 | 73520 | Well | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-040-13-00-1 | 73620 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Ana Belle West | 047-040-13-00-1 | 73720 | Pistachios | Bear Flag Farms, LLC | Semitropic Water Storage District | Prudential |
| Logoluso | 027-040-13 | 09105 | Cherries | Bear Flag Farms, LLC | Westlands Water District | Prudential |
| Logoluso | 027-040-13 | 09205 | Apricots | Bear Flag Farms, LLC | Westlands Water District | Prudential |
| Logoluso | 027-040-13 | 09205 | Open | Bear Flag Farms, LLC | Westlands Water District | Prudential |
| Logoluso | 027-040-13 | 10105 | Open | Bear Flag Farms, LLC | Westlands Water District | Prudential |
| Logoluso | 027-050-17S | 10105 | Building | Bear Flag Farms, LLC | Westlands Water District | Prudential |
| Logoluso | 027-050-17S | 10105 | House | Bear Flag Farms, LLC | Westlands Water District | Prudential |
| Logoluso | 027-050-17S | 10105 | Open | Bear Flag Farms, LLC | Westlands Water District | Prudential |
| Logoluso | 027-050-17S | 10105 | Shop | Bear Flag Farms, LLC | Westlands Water District | Prudential |
| Logoluso | 027-110-11S | 24205 | Open | Bear Flag Farms, LLC | Westlands Water District | Prudential |
| Logoluso | 027-110-13S | 24205 | Open | Bear Flag Farms, LLC | Westlands Water District | Prudential |
| Kyte | 059-010-19-00-7 | 51020 | Pistachios | C&A Farms, LLC | Semitropic Water Storage District | Prudential |

| Map Location | APN Number | New Field # | Crop | Owner | Water District | Real Estate Loan Lender |
|---|---|---|---|---|---|---|
| Kyte | 059-010-19-00-7 | 51020 | Reservoir | C&A Farms, LLC | Semitropic Water Storage District | Prudential |
| Kyte | 059-010-19-00-7 | 51020 | Well | C&A Farms, LLC | Semitropic Water Storage District | Prudential |
| Kyte | 059-070-01-00-2 | 51120 | Pistachios | C&A Farms, LLC | Semitropic Water Storage District | Prudential |
| Mt. Whitney Ranch | 050-030-22S | 01108 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-22S | 01108 | Well | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-22S | 01208 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-22S | 01308 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-22S | 01408 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-43S | 11108 | Non-Op Well | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-43S | 11108 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-43S | 11108 | Well | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-060-29S | 20408 | Almonds | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-060-29S | 20408 | Well | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-060-30S | 20308 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-060-41S | 20108 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-060-43S | 20208 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-070-24S | 23408 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-070-33S | 23208 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-070-33S | 23208 | Well | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-070-35S | 14108 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-070-36S | 14408 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-070-37S | 14208 | Open Organic | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-070-37S | 14208 | Well | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-070-37S | 14308 | Open Organic | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-100-03S | 30208 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-100-26S | 30308 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-100-26S | 30408 | Non-Op Well | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-100-26S | 30408 | Open Organic | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-100-28S | 30108 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-41S | 03107 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-41S | 03307 | Open Organic | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-41S | 03407 | Table Grapes | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-45S | 12307 | Almonds | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-090-38S | 24307 | Almonds | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-090-39S | 24407 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-090-48S | 24407 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-090-49S | 24407 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-090-51S | 13207 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-090-52S | 24407 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-090-53S | 13207 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-090-54S | 24407 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-25S | 06208 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-25S | 06308 | Open | C&A Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-25S | 06308 | Well | C&A Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-21S | 22501 | Open | Cantua Orchards, LLC | Westlands Water District | Conterra-FAMC |
| Bluhm Garcia | 026-300-034 | 20106 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-300-034 | 20106 | Turnout | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-300-034 | 20206 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-006 | 29106 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-006 | 29106 | Turnout | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-006 | 29206 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-006 | 29206 | Turnout | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-006 | 29306 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-006 | 29306 | Turnout | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-006 | 29406 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-006 | 29406 | Turnout | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-06 | 06301 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-23S | 05401 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-23S | 05401 | Well | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-28S | 05201 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-31S | 05201 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-32S | 05201 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-33S | 05201 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-34S | 05101 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-58S | 04201 | Open Organic | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-58S | 04301 | Open Organic | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-58S | 04401 | Open Organic | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-061-58S | 04401 | Well | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-071-41S | 11101 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-071-42S | 11101 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-130-10s | 16401 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-130-11s | 16401 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-130-11s | 16401 | Well | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-26 | 14401 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-27S | 14401 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-28S | 14401 | Non-Op Well | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-28S | 14401 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-29 | 14301 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-30 | 14301 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |

| Map Location | APN Number | New Field # | Crop | Owner | Water District | Real Estate Loan Lender |
|---|---|---|---|---|---|---|
| Kamm Avenue | 038-141-31 | 14301 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-38S | 13401 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-41S | 13101 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-41S | 13101 | Well | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-44S | 13201 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-49S | 14201 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-50S | 14101 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-58S | 14401 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-63S | 13401 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-63S | 13401 | Well | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-13S | 25401 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-28S | 35101P | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-82S | 25401 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-02 | 24201 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-03S | 24201 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-04S | 24201 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-05 | 24201 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-10 | 24101 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-11S | 24101 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-14S | 23101 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-14S | 23401 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-18S | 24401 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-22 | 24301 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-27S | 24401 | Pistachios | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-28S | 24301 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-28S | 24301 | Shop | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-29S | 24101 | Non-Op Well | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-29S | 24101 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-300-29S | 24201 | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 045-040-07 | 02401P | Open | Cantua Orchards, LLC | Westlands Water District | Prudential |
| Ludy | 059-243-03-00-8 | 62120 | Open | DA Real Estate Holdings | Semitropic Water Storage District | Prudential |
| Ludy | 059-243-03-00-8 | 62120 | Well | DA Real Estate Holdings | Semitropic Water Storage District | Prudential |
| Mt. Whitney Ranch | 058-050-42S | 11107 | Open | FG2 Holdings, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-42S | 11407 | Almonds | FG2 Holdings, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-42S | 11507 | Open | FG2 Holdings, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-43S | 11207 | DOV | FG2 Holdings, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-43S | 11307 | Open | FG2 Holdings, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-020-18S | 08404 | Pistachios | Gradon Farms, LLC | Westlands Water District | Conterra-FAMC |
| Calaveras Ranch | 040-020-18S | 08504 | Open | Gradon Farms, LLC | Westlands Water District | Conterra-FAMC |
| Calaveras Ranch | 038-090-36S | 02204 | Open | Gradon Farms, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 038-090-36S | 02204 | Well | Gradon Farms, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 038-090-36S | 02304 | Open | Gradon Farms, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-030-34S | 10104 | Open | Gradon Farms, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-030-34S | 10204 | Open | Gradon Farms, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-030-34S | 10204 | Well | Gradon Farms, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-030-41S | 10104 | Open | Gradon Farms, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-030-41S | 10104 | Shop | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-050-07 | 24303 | Pistachios | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-050-07 | 24303 | Reservoir | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-050-07 | 24303 | Well | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-16S | 26203 | Almonds | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-17S | 26203 | Almonds | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-17S | 26203 | Well | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-22S | 26303 | Almonds | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-36S | 26303 | Almonds | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-36S | 26303 | Reservoir | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-50S | 26303 | Almonds | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-50S | 26303 | Building | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-50S | 26303 | House | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-50S | 26303 | Shop | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-50S | 26303 | Well | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-53S | 26403 | Almonds | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-53S | 26403 | Building | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-53S | 26403 | House | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-53S | 26403 | Shop | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-53S | 26403 | Well | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-55S | 25103 | Almonds | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-55S | 25103 | Reservoir | Gradon Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-55S | 25103 | Well | Gradon Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-48S | 09108 | Open | Gradon Farms, LLC | Westlands Water District | Prudential |
| Ludy | 059-243-03-00-8 | 62120 | Open | Grantland Holdings No. 1 | Semitropic Water Storage District | Prudential |
| Ludy | 059-243-03-00-8 | 62120 | Well | Grantland Holdings No. 1 | Semitropic Water Storage District | Prudential |
| Ludy | 059-243-03-00-8 | 62120 | Open | Grantland Holdings No. 2 | Semitropic Water Storage District | Prudential |
| Ludy | 059-243-03-00-8 | 62120 | Well | Grantland Holdings No. 2 | Semitropic Water Storage District | Prudential |
| Kamm Avenue | 038-071-43S | 10201 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-071-44S | 10201 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-071-46S | 10101 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-071-59 | 10101 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-130-19S | 21101 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-130-19S | 21201 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |

| Map Location | APN Number | New Field # | Crop | Owner | Water District | Real Estate Loan Lender |
|---|---|---|---|---|---|---|
| Kamm Avenue | 038-130-56S | 21301 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-130-58S | 21301 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-01S | 15401 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-02 | 15301 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-03 | 15301 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-04 | 15301 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-17 | 22301 | Open | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-17 | 22301 | Well | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-19 | 22301 | Open | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-52 | 22201 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-53 | 22201 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-54S | 22401 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-55S | 22101 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-55S | 22401 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-56S | 22401 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-57 | 15301 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-62S | 15101 | Building | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-62S | 15101 | House | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-62S | 15101 | Shop | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-141-62S | 15201 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-01 | 27401 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-01 | 27401 | Well | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-02S | 27301 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-03S | 27201 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-30S | 34201 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-32S | 34101 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-33S | 34101 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-34S | 34101 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-35S | 34101 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-36S | 34101 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-37S | 34401 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-38S | 34301 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-39S | 34401 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-42S | 27101 | Non-Op Well | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-42S | 27101 | Pistachios | Granville Farms, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-55S | 34101 | Almonds | Granville Farms, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-017 | 31206 | Open | Lincoln Grantor Farms, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-017 | 31306 | Open | Lincoln Grantor Farms, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-017 | 31406 | Open | Lincoln Grantor Farms, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-017 | 31406 | Turnout | Lincoln Grantor Farms, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-017 | 31406 | Well | Lincoln Grantor Farms, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-020 | 32106 | Open | Lincoln Grantor Farms, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-020 | 32206 | Open | Lincoln Grantor Farms, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-020 | 32306 | Open | Lincoln Grantor Farms, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-020 | 32406 | Open | Lincoln Grantor Farms, LLC | Westlands Water District | Prudential |
| Bluhm Garcia | 026-320-020 | 32406 | Turnout | Lincoln Grantor Farms, LLC | Westlands Water District | Prudential |
| McCombs Ranch | 058-291-40-00-9 | 95020 | Open | Lincoln Grantor Farms, LLC | Semitropic Water Storage District | Prudential |
| McCombs Ranch | 058-291-40-00-9 | 95020 | Well | Lincoln Grantor Farms, LLC | Semitropic Water Storage District | Prudential |
| McCombs Ranch | 058-292-09-00-7 | 95220 | House | Lincoln Grantor Farms, LLC | Semitropic Water Storage District | Prudential |
| McCombs Ranch | 058-292-09-00-7 | 95220 | Open | Lincoln Grantor Farms, LLC | Semitropic Water Storage District | Prudential |
| McCombs Ranch | 058-292-09-00-7 | 95220 | Shop | Lincoln Grantor Farms, LLC | Semitropic Water Storage District | Prudential |
| McCombs Ranch | 058-292-09-00-7 | 95220 | Turnout | Lincoln Grantor Farms, LLC | Semitropic Water Storage District | Prudential |
| McCombs Ranch | 058-292-09-00-7 | 95220 | Well | Lincoln Grantor Farms, LLC | Semitropic Water Storage District | Prudential |
| McCombs Ranch | 058-292-23-00-7 | 95120 | Open | Lincoln Grantor Farms, LLC | Semitropic Water Storage District | Prudential |
| McCombs Ranch | 058-292-23-00-7 | 95120 | Well | Lincoln Grantor Farms, LLC | Semitropic Water Storage District | Prudential |
| Brannan Ranch | 017-080-84s | 36205 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-060-20S | 18104 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-060-20S | 18104 | Well | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-060-22S | 18204 | Non-Op Well | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-060-22S | 18204 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-060-22S | 18204 | Well | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-060-25S | 17104 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-060-25S | 17204 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Calaveras Ranch | 040-060-25S | 17204 | Well | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-45S | 11408 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-45S | 11408 | Well | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-46S | 11308 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-47S | 11308 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 050-030-48S | 11208 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-26S | 12207 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-35S | 02107 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-35S | 02207 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-35S | 02307 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-35S | 02407 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-44S | 12407 | Almonds | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-34S | 07107 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-43S | 06107 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-43S | 06407 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-49S | 07107 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-51S | 07107 | Open | Maricopa Orchards, LLC | Westlands Water District | Prudential |

| Map Location | APN Number | New Field # | Crop | Owner | Water District | Real Estate Loan Lender |
|---|---|---|---|---|---|---|
| Wegis - Jackson | 069-280-04-00-5 | 74621 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-280-16-00-0 | 74921 | Pistachios | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-280-16-00-0 | 74921 | Reservoir | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-280-16-00-0 | 74921 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-280-18-00-6 | 74921 | House | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-280-18-00-6 | 74921 | Pistachios | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-280-25-00-6 | 75021 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-280-26-00-9 | 75021 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-280-26-00-9 | 75021 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-280-38-00-4 | 74821 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-280-38-00-4 | 74821 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-280-39-00-7 | 74721 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-310-09-00-8 | 74221 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-310-10-00-0 | 74321 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-310-11-00-3 | 74521 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-310-12-00-6 | 74421 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-310-12-00-6 | 74421 | Solar | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Jackson | 069-310-12-00-6 | 74421 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-02-02-4 | 75721 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-02-02-4 | 75821 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-02-02-4 | 75821 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-02-02-4 | 75921 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-02-02-4 | 75921 | Building | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-02-02-4 | 75921 | House | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-02-02-4 | 75921 | Reservoir | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-02-02-4 | 76221 | Pistachios | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-23-00-7 | 76521 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-23-00-7 | 76621 | Pistachios | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-24-00-0 | 76221 | Pistachios | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-24-00-0 | 76421 | Table Grapes | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-24-00-0 | 76521 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-24-00-0 | 76721 | Pistachios | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-24-00-0 | 76821 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-25-00-3 | 76721 | Pistachios | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-25-00-3 | 76821 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-26-00-6 | 76721 | Pistachios | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-26-00-6 | 76721 | Reservoir | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-26-00-6 | 76721 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-34-01-8 | 76021 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-34-01-8 | 76021 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-34-01-8 | 76121 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-35-01-1 | 75621 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-35-01-1 | 75621 | House | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-35-01-1 | 75621 | Reservoir | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-35-01-1 | 75621 | Shop | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Kimberlina | 069-340-35-01-1 | 75621 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Lerdo | 087-080-46-00-1 | 76921 | Open | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - Lerdo | 087-080-46-00-1 | 76921 | Reservoir | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - McCoy | 069-272-05-00-9 | 74021 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - McCoy | 069-272-05-00-9 | 74021 | House | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - McCoy | 069-272-05-00-9 | 74021 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - McCoy | 069-272-08-00-8 | 74121 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-310-21-00-2 | 75521 | Open | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-310-21-00-2 | 75521 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-320-01-00-7 | 75121 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-320-02-01-9 | 75121 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-320-03-00-3 | 75121 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-320-04-01-5 | 75121 | Almonds | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-320-05-01-8 | 75221 | Pistachios | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-320-05-01-8 | 75321 | Pistachios | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-320-05-01-8 | 75321 | Reservoir | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-320-05-01-8 | 75321 | Solar | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-320-05-01-8 | 75321 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-330-02-00-3 | 75421 | Pistachios | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Wegis - West Jackson | 069-330-02-00-3 | 75421 | Well | Maricopa Orchards, LLC | Semitropic Water Storage District | Prudential |
| Kamm Avenue | 038-061-28S | 0731 | Well | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-130-02 | 18301 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-06 | 26401 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-08 | 26301 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-09 | 26301 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-10S | 26201 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-14S | 25101 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-14S | 25101 | Well | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-15S | 25101 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-26 | 35101 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-27S | 35101 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-41S | 34401 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-43 | 26401 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-44S | 26101 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-44S | 26401 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |

| Map Location | APN Number | New Field # | Crop | Owner | Water District | Real Estate Loan Lender |
|---|---|---|---|---|---|---|
| Kamm Avenue | 038-210-44S | 26401 | Well | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-47S | 35301 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-54S | 35101 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-63S | 25301 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-68S | 36101 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-69S | 35201 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-70S | 35201 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-71S | 35301 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-74S | 36401 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-74S | 36401 | Well | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-76S | 25201 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-77S | 36101 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-78S | 36101 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-79S | 36201 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-80S | 36201 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-210-80S | 36301 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Kamm Avenue | 038-270-01 | 36301 | Pistachios | Panoche Pistachios, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-55S | 09208 | Open | Ranch West Investments, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-55S | 09208 | Well | Ranch West Investments, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 060-020-60S | 09208 | Open | Ranch West Investments, LLC | Westlands Water District | Prudential |
| Huron | 075-050-08S | 24203 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-050-08S | 24203 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-050-50S | 13203 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-050-50S | 13203 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-050-50S | 13303 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-050-50S | 13303 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-28 | 36103 | Almonds | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-28 | 36103 | Reservoir | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-28 | 36103 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-29 | 36203 | Almonds | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-29 | 36203 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-30 | 36403 | Almonds | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-30 | 36403 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-30 | 36403 | Yard | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-31 | 36303 | Almonds | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-31 | 36303 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-31 | 36303 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-43S | 25303 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-46S | 35203 | Almonds | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-47S | 35203 | Almonds | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-48S | 35303 | Almonds | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-48S | 35303 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-56S | 25203 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-56S | 25203 | Reservoir | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-56S | 25203 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-56S | 25303 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 075-070-56S | 25403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-020-47S | 07303 | Almonds | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-020-47S | 07303 | Reservoir | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-020-47S | 07303 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-020-54S | 07103 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-020-54S | 07103 | Reservoir | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-020-54S | 07403 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-020-54S | 07403 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-041-01S | 18403 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-041-01S | 18403 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-041-02S | 18403 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-041-17S | 18303 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-041-17S | 18303 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-02S | 30403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-02S | 30403 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-03S | 30103 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-03S | 30103 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-39S | 30303 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-39S | 30303 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-39S | 30303 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-57S | 29103 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-57S | 29103 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-57S | 29103 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-57S | 29203 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-57S | 29303 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-57S | 29303 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-57S | 29403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-57S | 29403 | Reservoir | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-57S | 29403 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-65S | 30403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-80S | 30203 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |

| Map Location | APN Number | New Field # | Crop | Owner | Water District | Real Estate Loan Lender |
|---|---|---|---|---|---|---|
| Huron | 078-060-80S | 30203 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-85S | 31103 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-85S | 31103 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-86S | 31303 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-87S | 31403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-87S | 31403 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-88S | 31403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-060-88S | 31403 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-080-55 | 06403 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-080-55 | 06403 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-06S | 19403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-06S | 19403 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-06S | 19403 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-07S | 19103 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-07S | 19103 | Reservoir | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-07S | 19103 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-07S | 19103 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-07S | 19403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-11S | 20103 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-11S | 20103 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-23S | 19203 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-23S | 19303 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-23S | 19303 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-130-23S | 19503 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-140-02S | 20403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-140-02S | 20403 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-140-04S | 20403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-140-04S | 20403 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-140-05 | 20403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-140-06S | 20403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Huron | 078-140-07S | 20403 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-06S | 14402 | Non-Op Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-06S | 14402 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-07S | 14102 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-07S | 14102 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-09S | 13402 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-36S | 13102 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-36S | 13102 | Reservoir | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-37S | 13202 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-37S | 13202 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-37S | 13202 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-38S | 13302 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-39S | 23402 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-39S | 23402 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-40S | 23302 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-40S | 23302 | Reservoir | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-40S | 23302 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-41S | 23202 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-41S | 23202 | Turnout | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-42S | 23202 | Open | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-42S | 23202 | Pistachios | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-42S | 23202 | Shop | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Lassen Ranch | 068-071-42S | 23202 | Well | Sageberry Farms, LLC | Westlands Water District | Prudential |
| Mt. Whitney Ranch | 058-050-41S | 03207 | Table Grapes | | Westlands Water District | Prudential |

**Appendix C**

**EXCLUDED PARCELS**

NONE

# EXHIBIT A

## FORM MET LIFE RECEIVER AGREEMENT

_______ __, 2025

Capstone Capital Markets LLC ("Capstone")
176 Federal St., 3rd Floor
Boston, MA 02110
Attention: Skye Root

Mr. Lance Miller (the "Prudential/FMAC Receiver")
Pivot Group
1230 Rosecrans Ave Suite 530
Manhattan Beach, CA 90266

Re: Prospective sale of assets in connection with Receivership Orders entered by the United States District Court, Eastern District of California, Fresno Division, 1:24-cv-1102-KES-SAB and 1:24-cv-01455-KES-SAB (the "Court")

Dear Lance:

I am the Receiver appointed by the Court at the request of Metropolitan Life Insurance Company, MetLife Real Estate Lending, LLC (together, "MetLife") and Brighthouse Life Insurance Company ("Brighthouse" and, collectively with MetLife, "MetLife/Brighthouse") under the *Order Granting Motion for Order Appointing Receiver and for Preliminary Injunction* entered by the Court in the following cases (collectively, the "MetLife/Brighthouse Receiverships"):

- Metropolitan Life Insurance Company v. FNF Farms, LLC, et al., Case No. 1:24-cv-01226- KES-SAB;
- Metropolitan Life Insurance Company v. C & A Farms, LLC, et al., Case No. 1:24-cv-01230-KES-SAB;
- Metropolitan Life Insurance Company v. Maricopa Orchards, LLC, et al., Case No. 1:24-cv-01231- KES-SAB;
- Brighthouse Life Insurance Company v. Kamm South, LLC, et al., Case No. 1:24-cv-01232- KES-SAB;
- Brighthouse Life Insurance Company v. Manning Avenue Pistachios, LLC, et al., Case No. 1:24-cv-01233-KES-SAB;
- Brighthouse Life Insurance Company v. C & A Farms, LLC, et al., Case No. 1:24-cv-01235- KES-SAB;
- MetLife Real Estate Lending, LLC v. Panoche Pistachios, LLC, et al., Case No. 1:24-cv-01241- KES-SAB; and
- Metropolitan Life Insurance Company., v. ACDF, LLC, et al., Case No. 1:24-cv-01261- KES-SAB.

In my capacity as the MetLife/Brighthouse Receiver, I have authority and control over certain assets of Maricopa Orchards, LLC and its various subsidiaries, affiliates, and related interests (the "Company") granted as collateral to MetLife or Brighthouse for loans extended to the Company by MetLife or Brighthouse, as applicable.

You, Lance Miller, are the Receiver appointed by the Court at the request of The Prudential Insurance Company of America, PGIM Real Estate Finance, LLC (together, "Prudential") and Federal Agricultural Mortgage Corporation for sale of assets and related interests of the Company granted as collateral for loans extended to the Company by Prudential.

I am aware that you, as the Prudential/FMAC Receiver, are proposing to enter or have entered into an agreement for the engagement of Capstone Capital Markets LLC (the "Capstone Agreement") in substantially the form attached hereto as **Annex A** for sale of parcels listed in Appendix B to the Capstone Agreement, as it may be amended from time to time (the "Sale Property").

Capitalized terms not otherwise defined in this letter agreement have the meanings given in the Capstone Agreement.

Subject to Court approval and the terms and conditions of this letter agreement, I hereby confirm as the MetLife/Brighthouse Receiver that I have authorized inclusion as Sale Property under the Capstone Agreement those MetLife and Brighthouse collateral parcels and other interests identified below (the "MetLife/Brighthouse Collateral"):

- APN 038-130-71S;
- APN 038-130-62S;
- APN 038-130-35S;
- APN 038-200-09S;
- APN 038-200-04S;
- APN 038-141-59S;
- APN 038-210-25S; and
- Membership interests in Poso Creek Water Company, LLC and all associated water and other rights.

I further confirm as the MetLife/Brighthouse Receiver that each of MetLife and Brighthouse have consented to the MetLife/Brighthouse Collateral's inclusion in the Capstone Agreement as Sale Property.

For this purpose, I hereby join in the Capstone Agreement to the extent, and only to the extent, described in this letter agreement.

TERMS AND CONDITIONS

1. Joinder to Capstone Agreement. For purpose of the potential sale of the MetLife/Brighthouse Collateral as part of a Transaction(s), the MetLife/Brighthouse Receiver joins in the engagement of Capstone as described in Section 1 of the Capstone Agreement, which Section is incorporated herein by reference.

2. Capstone Services. For purposes of the potential sale of the MetLife/Brighthouse Collateral as part of a Transaction(s), Capstone will provide the Transaction Services to the MetLife/Brighthouse Receiver. The MetLife/Brighthouse Receiver agrees to the provisions of Section 2 of the Capstone Agreement, which Section is incorporated herein by reference.

3. Cooperation. In furtherance of the potential sale of the MetLife/Brighthouse Collateral as part of a Transaction(s), the MetLife/Brighthouse Receiver agrees (a) to cooperate with Capstone and the Prudential/FMAC Receiver, (b) that the Prudential/FMAC Receiver will be the point of contact with Capstone, and (c) that Capstone will take direction in the performance of the Transaction Services solely from the Prudential/FMAC Receiver.

4. Fees.

a. The MetLife/Brighthouse Receiver agrees to pay any Transaction Fee(s) associated with a Transaction(s) involving MetLife/Brighthouse Collateral, calculated in accordance with the terms of the Capstone Agreement.

b. In no event shall the inclusion of the MetLife/Brighthouse Collateral in a Transaction, nor the extension of the Transaction Services to such collateral, increase the amount of the Engagement Fee, Monthly Retainer Fee, or Abandonment Fee that otherwise may come due, and no such amount shall be apportioned to the MetLife/Brighthouse Collateral.

5. Term and Termination. The MetLife/Brighthouse Receiver shall have no right or ability to terminate the Capstone Agreement absent written consent from the Prudential/FMAC Receiver or order of the Court.

6. Representations. With respect to the MetLife/Brighthouse Collateral, the MetLife/Brighthouse Receiver joins in and makes the representations and agreements set forth in Section 7 of the Capstone Agreement.

7. Indemnification. The MetLife/Brighthouse Receiver joins in the indemnification of Capstone as set forth in Section 8 of the Capstone Agreement, which Section is incorporated herein by reference, solely with respect to any and all losses, claims, damages, or liabilities to which any Capstone Indemnified Person may become subject arising in any manner out of or in connection with the rendering of services by Capstone to the MetLife/Brighthouse Receiver.

8. Distribution of Proceeds; Prudential True-Up.

a. The proceeds of any Transaction that includes MetLife/Brighthouse Collateral will be received by and distributed to the MetLife/Brighthouse Receiver at or promptly after closing of such Transaction according to the percentage derived by dividing the total value of the MetLife/Brighthouse Collateral included in the Transaction by the Transaction Value attributable to the Transaction (the "MetLife/Brighthouse Proceeds"). For the avoidance of doubt, such distribution to the MetLife/Brighthouse Receiver will be net of any costs and expenses incurred by the Receiver in administering the MetLife/Brighthouse Collateral, as applicable. In no event will MetLife or Brighthouse be entitled to more than the MetLife/Brighthouse Payoff (defined below) on a by-parcel basis.

b. In the event the MetLife/Brighthouse Proceeds associated with a Transaction are insufficient to pay in full the debt owing to MetLife or Brighthouse that is secured by the MetLife/Brighthouse Collateral being sold in such Transaction, Prudential shall have the right, in its sole discretion, to direct the Prudential/FMAC Receiver to reallocate net sale proceeds from Prudential (out of net sale proceeds allocated to Prudential) to MetLife or Brighthouse, as appropriate, in such amount as is necessary to repay the debt secured by the MetLife/Brighthouse Collateral included in the Transaction so that MetLife or Brighthouse, as appropriate, receive the following amounts at closing of the Transaction, subject to adjustment:

i. APN 038-130-71S - $
ii. APN 038-130-62S - $
iii. APN 038-130-35S - $
iv. APN 038-200-09S - $
v. APN 038-200-04S - $
vi. APN 038-210-25S - $
vii. APN 038-141-59S - $

The immediately preceding amounts were calculated as of the date of this letter agreement and shall be brought forward solely to reflect interest and costs payable under the relevant loan documents(s) that accrue and become due and payable between the date of this letter agreement and closing of the applicable Transaction (the "MetLife/Brighthouse Payoff"), as supported by documentation and calculations provided by MetLife/Brighthouse and reasonably acceptable to Prudential. The amount necessary to cause the MetLife/Brighthouse Proceeds to equal the MetLife/Brighthouse Payoff, by parcel, is referred to as the "Prudential True-Up Amount"). For the avoidance of doubt, the Prudential True-Up Amount paid, if any, will be limited to parcels included in a Transaction for which the MetLife/Brighthouse Payoff exceeds the MetLife/Brighthouse Proceeds.

9. Agreement to Close. In the event Prudential elects to pay the Prudential True-Up Amount(s) pursuant to Paragraph 8(b) of this letter agreement, MetLife or Brighthouse (as applicable) shall be obligated to close on the Transaction(s) and to direct the release of the Release Documents described in Paragraph 10 of this letter agreement.

10. Agreement to Release Liens. Within thirty (30) days of the execution of this letter agreement, or such other date as agreed to in writing by the parties, MetLife and Brighthouse shall each place into escrow all lien releases and other documents necessary to transfer the MetLife/Brighthouse Collateral free and clear of all liens, claims, encumbrances, and other interest held by MetLife, Brighthouse, or their affiliates in the Metlife/Brighthouse Collateral (the "Release Documents"), with such documents to be released from escrow concurrently with MetLife's or Brighthouse's receipt of the MetLife/Brighthouse Payoff, as applicable. For the avoidance of doubt, the Release Documents shall include any and all documents, in forms reasonably acceptable to the Prudential/FMAC Receiver, necessary to release MetLife's, Brighthouse's, or their respective affiliate's liens, claims, security interest, encumbrances, and similar interests on or in:

    a. The MetLife/Brighthouse Collateral;

    b. The membership interests in Poso Creek Water Company, LLC and all associated water and other rights; and

    c. The following Water Supply agreements:

        i. Water Supply Agreement dated July 29, 2015 made by and between **FNF FARMS**, LLC, a California limited liability company (as Water User therein), and 104 PISTACHIOS, LLC a California limited liability company, et al (as Water Providers therein), recorded in (i) the Official Records of Fresno County, California on September 11, 2024 as Document No. 2024-0082400, (ii) the Official Records of Kern County, California on September 10, 2024 as Document No. 224109980, (iii) the Official Records of Kings County, California on September 10, 2024 as Document No. 2412595, and (iv) the Official Records of Madera County, California on September 11, 2024 as Document No. 2024019288.

        ii. Water Supply Agreement dated July 29, 2015 made by and between **KAMM SOUTH, LLC**, a California limited liability company (as Water User therein), and 104 Pistachios, LLC a California limited liability company, et al (as Water Providers therein), recorded in (i) the Official Records of Fresno County, California on September 11, 2024 as Document No. 2024-0082763, (ii) the Official Records of Kern County, California on September 10, 2024 as Document No. 224109979; (iii) the Official Records of Kings County, California on September 10, 2024 as Document No. 2412594, and (iv) the Official Records of Madera County, California on September 11, 2024 as Document No. 2024019295.

iii. Water Supply Agreement dated September 28, 2025 made by and between **MARICOPA ORCHARDS, LLC**, a California limited liability company, et al, (as Water User therein), and 104 Pistachios, LLC a California limited liability company, et al (as Water Providers therein), recorded in (i) the Official Records of Fresno County, California on September 10, 2024 as Document No. 2024-0082325, (ii) the Official Records of Kern County, California on September 13, 2024 as Document No. 224111300, (iii) the Official Records of Kings County, California on September 10, 2024 as Document No. 2412596, and (iv) the Official Records of Madera County, California on September 11, 2024 as Document No. 2024019287For purposes of this Paragraph 10, "escrow" may include delivering such documents, fully executed, to counsel for the Prudential/FMAC Receiver.

11. Adoption of Remaining Sections of Capstone Agreement. Subject to the above modifications, the MetLife/Brighthouse Receiver agrees to the remaining sections of the Capstone Agreement, which are incorporated herein by reference; provided that, notifications to the MetLife/Brighthouse Receiver are to be given to:

Phillip Christensen, MetLife/Brighthouse Receiver
AgriGlobe
2787 W. Bullard Avenue, Suite 106
Fresno, California 93711

12. Governance. This Agreement incorporates the entire understanding between the parties hereto and supersedes all previous agreements relating to the subject matter hereof. This Agreement may not be amended or modified except in a writing signed by the parties. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns. If any term or provision of this Agreement shall to any extent be deemed illegal, invalid, or unenforceable, the remainder of this Agreement shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

Please indicate your agreement to the foregoing by signing at the places for your signatures below.

Sincerely,

______________________________
Phillip Christensen
Solely in his capacity as
Court-appointed Receiver

ACKNOWLEDGED AND AGREED:

______________________________
Lance Miller
Solely in his capacity as
Court-appointed Receiver

CAPSTONE CAPITAL MARKETS LLC

______________________________
Paul Janson
Head of Investment Banking

[INSERT SIGNATURE BLOCKS]

## EXHIBIT B

## FORM COMPANY AGREEMENT

__, 2025

Capstone Capital Markets LLC ("Capstone")
176 Federal St., 3rd Floor
Boston, MA 02110
Attention: Skye Root

Mr. Lance Miller (the "Prudential/FMAC Receiver")
Pivot Group
1230 Rosecrans Ave., Suite 530
Manhattan Beach, CA 90266

Re: Prospective sale of assets in connection with Receivership Orders entered by the United States District Court, Eastern District of California, Fresno Division, 1:24-cv-1102-KES-SAB and 1:24-cv-01455-KES-SAB (the "Court")

Dear Lance:

We understand and acknowledge that you are the receiver appointed at the request of The Prudential Insurance Company of America, PGIM Real Estate Finance, LLC, and Federal Agricultural Mortgage Corporation (collectively, the "Lenders") and that you are proposing to enter or have entered into an agreement for the engagement of Capstone Capital Markets LLC (the "Capstone Agreement")[1] in the form attached hereto as Annex A, for sale of the parcels listed in Appendix B to the Capstone Agreement, as it may be amended from time to time (the "Sale Property"), which Sale Property is subject to the first priority deeds of trust and security interests of the Lenders, as applicable.

We further understand and agree that the ultimate valuations to be achieved in the sale of the Sale Property may be enhanced by inclusion of certain assets identified below ("Company Property"), which we are willing to include in the sale of the Sale Property:

- Membership interests in Poso Creek Water Company, LLC and all associated water and other rights;
- Membership interests in Arroyo Pasajero Mutual Water Company;
- The following Water Supply agreements:
  - Water Supply Agreement dated July 29, 2015 made by and between **FNF FARMS**, LLC, a California limited liability company (as Water User therein), and 104 PISTACHIOS, LLC a California limited liability company, et al (as Water Providers therein), recorded in (i) the Official Records of Fresno County, California on September 11, 2024 as Document No. 2024-0082400, (ii) the Official Records of Kern County, California on September 10, 2024 as Document No. 224109980, (iii) the Official Records of Kings County, California on September 10, 2024 as Document No. 2412595, and (iv) the Official Records of Madera County, California on September 11, 2024 as Document No. 2024019288;

[1] Capitalized terms not otherwise defined in this letter agreement have the meanings given in the Capstone Agreement.

- Water Supply Agreement dated July 29, 2015 made by and between **KAMM SOUTH, LLC**, a California limited liability company (as Water User therein), and 104 Pistachios, LLC a California limited liability company, et al (as Water Providers therein), recorded in (i) the Official Records of Fresno County, California on September 11, 2024 as Document No. 2024-0082763, (ii) the Official Records of Kern County, California on September 10, 2024 as Document No. 224109979; (iii) the Official Records of Kings County, California on September 10, 2024 as Document No. 2412594, and (iv) the Official Records of Madera County, California on September 11, 2024 as Document No. 2024019295; and

- Water Supply Agreement dated September 28, 2025 made by and between **MARICOPA ORCHARDS, LLC**, a California limited liability company, et al, (as Water User therein), and 104 Pistachios, LLC a California limited liability company, et al (as Water Providers therein), recorded in (i) the Official Records of Fresno County, California on September 10, 2024 as Document No. 2024-0082325, (ii) the Official Records of Kern County, California on September 13, 2024 as Document No. 224111300, (iii) the Official Records of Kings County, California on September 10, 2024 as Document No. 2412596, and (iv) the Official Records of Madera County, California on September 11, 2024 as Document No. 2024019287For purposes of this Paragraph 10, "escrow" may include delivering such documents, fully executed, to counsel for the Prudential/FMAC Receiver; and

- The real property listed on schedule attached here to as Annex B.

We join in the Capstone Agreement to the extent, and only to the extent, described in this letter agreement.

TERMS AND CONDITIONS

1. Joinder to Capstone Agreement. For purposes of the potential sale of the Company Property as part of a Transaction(s), the Company joins in the engagement of Capstone as described in Section 1 of the Capstone Agreement, which Section is incorporated herein by reference.

2. Capstone Services. For purposes of the potential sale of the Company Property, Capstone will provide the Transaction Services to the Company. The Company agrees to the provisions of Section 2 of the Capstone Agreement, which Section is incorporated herein by reference.

3. Cooperation. In furtherance of the potential sale of the Company Property as part of a Transaction(s), the Company agrees (a) to cooperate with Capstone and the Prudential/FMAC Receiver, (b) that the Prudential/FMAC Receiver will be the point of contact with Capstone, and (c) that Capstone will take direction in the performance of the Transaction Services solely from the Prudential/FMAC Receiver. The Company further understands and agrees that the Prudential/FMAC Receiver and Capstone will have full access to information relating to the Sale Property, the Company Property, and the operations of the Company, which information may be provided by current and former employees and advisors to the Company.

4. Fees. To the extent of Transaction Value attributable to Company Property in a Transaction(s), the Company will pay its share of the Transaction Fees provided for in Section 3(c) of the Capstone Agreement, which Section 3(c) is incorporated herein by reference; *provided that* (i) any Transaction Fee attributable to the sale of Company Property shall be included in determining the Transaction Fees counting towards the payment of the Minimum Transaction Fee; (ii) the Company shall not otherwise be responsible for the payment of any portion of the Minimum Transaction Fee and in no event will be liable for any portion of the Abandonment Fee; and (iii) in no event shall the Prudential/FMAC Receiver be liable for payment of the fees payable by the Company.

5. Representations. With respect to the Company Property only, the Company joins in and makes the representations and agreements set forth in Section 7 of the Capstone Agreement.

6. Distribution of Proceeds. The proceeds of any Transaction under the Capstone Agreement that includes any Company Property will be received by and distributed to the Company at or promptly after closing according to the percentage derived by *dividing* the total value of the Company Property included in the Transaction *by* the Transaction Value attributable to the Transaction, as defined in Section 4 of the Capstone Agreement, which Section is incorporated herein by reference. For the avoidance of doubt, such distribution will be net of any costs and expenses incurred by the Receiver in administering the Company Property.

7. Adoption of Remaining Sections of Capstone Agreement. Subject to the above modifications, the Company agrees to the remaining sections of the Capstone Agreement, which are incorporated herein by reference; provided that, notifications to the Company are to be given to:

   Maricopa Orchards, LLC
   5260 N. Palm Ave. Suite 421
   Fresno, CA 93704
   Attention: Darius Assemi

8. Governance. This Agreement incorporates the entire understanding between the parties hereto and supersedes all previous agreements relating to the subject matter hereof. This Agreement may not be amended or modified except in a writing signed by the parties. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns. If any term or provision of this Agreement shall to any extent be deemed illegal, invalid, or unenforceable, the remainder of this Agreement shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

[SIGNATURE PAGE FOLLOWS]

Please indicate your agreement to the foregoing by signing at the places for your signatures below.

Sincerely,
MARICOPA ORCHARDS, LLC

By:
Name:
Title:

[INSERT SIGNATURE BLOCKS]

ACKNOWLEDGED AND AGREED:

____________________________
Lance Miller
Solely in his capacity as
Court-appointed Receiver

CAPSTONE CAPITAL MARKETS LLC

____________________________________
Paul Janson
Head of Investment Banking

# EXHIBIT C

## FORM PARTICIPATING LANDOWNER AGREEMENT

_________ __, 2025

Capstone Capital Markets LLC ("Capstone")
176 Federal St., 3rd Floor
Boston, MA 02110
Attention: Skye Root

Mr. Lance Miller (the "Prudential/FMAC Receiver")
Pivot Group
1230 Rosecrans Ave., Suite 530
Manhattan Beach, CA 90266

Re: Prospective sale of assets in connection with Receivership Orders entered by the United States District Court, Eastern District of California, Fresno Division, 1:24-cv-1102-KES-SAB and 1:24-cv-01455-KES-SAB (the "Court")

Dear Lance:

We understand and acknowledge that you are the receiver appointed at the request of The Prudential Insurance Company of America, PGIM Real Estate Finance, LLC, and Federal Agricultural Mortgage Corporation (collectively, the "Lenders") and that you are proposing to enter or have entered into an agreement for the engagement of Capstone Capital Markets LLC (the "Capstone Agreement")[2] in the form attached hereto, for sale of the parcels listed in Appendix B to the Capstone Agreement, as it may be amended from time to time (the "Sale Property"), which Sale Property is subject to the first priority deeds of trust and security interests of the Lenders, as applicable.

We are the third-party owner ("Owner") of the following parcels ("Third-Party Parcels"), which we are willing to include in the sale of the Sale Property:

**[LIST HERE OR IN ATTACHMENT]**

For this purpose, we hereby join in the Capstone Agreement to the extent, and only to the extent, described in this letter agreement.

TERMS AND CONDITIONS

1. Joinder to Capstone Agreement. For purposes of the potential sale of the Third-Party Parcels as part of a Transaction(s), Owner joins in the engagement of Capstone as described in Section 1 of the Capstone Agreement, which Section is incorporated herein by reference.

2. Capstone Services. For purposes of the potential sale of the Third-Party Parcels, Capstone will provide the Transaction Services to Owner. Owner agrees to the provisions of Section 2 of the Capstone Agreement, which Section is incorporated herein by reference.

3. Cooperation. In furtherance of the potential sale of the Third-Party Parcels as part of a Transaction(s), Owner agrees (a) to cooperate with Capstone and the Prudential/FMAC Receiver, (b) that the Prudential/FMAC

[2] Capitalized terms not otherwise defined in this letter agreement have the meanings given in the Capstone Agreement.

Receiver will be the point of contact with Capstone, and (c) that Capstone will take direction in the performance of the Transaction Services solely from the Prudential/FMAC Receiver. Owner further understands and agrees that the Prudential/FMAC Receiver and Capstone will have full access to information relating to the Sale Property, the Third-Party Parcels, and the operations of the Third-Party Parcels, which information may be provided by employees and advisors to the Owner.

9. Fees. To the extent of Transaction Value attributable to Third-Party Parcels in a Transaction(s), Owner will pay its share of the Transaction Fees provided for in Section 3(c) of the Capstone Agreement, which Section 3(c) is incorporated herein by reference; *provided that* (i) any Transaction Fee attributable to the sale of Third-Party Parcels shall be included in determining the Transaction Fees counting towards the payment of the Minimum Transaction Fee; (ii) Owner shall not otherwise be responsible for the payment of any portion of the Minimum Transaction Fee and in no event will be liable for any portion of the Abandonment Fee; and (iii) in no event shall the Prudential/FMAC Receiver be liable for payment of the fees payable by Owner.

4. Representations. With respect to the Third-Party Parcels only, Owner joins in and makes the representations and agreements set forth in Section 7 of the Capstone Agreement.

5. Distribution of Proceeds. The proceeds of any Transaction under the Capstone Agreement that includes any Third-Party Parcels will be received by and distributed to Owner at or promptly after closing according to the percentage derived by *dividing* the total value of the Third-Party Parcels included in the Transaction *by* the Transaction Value attributable to the Transaction, as defined in Section 4 of the Capstone Agreement, which Section is incorporated herein by reference. For the avoidance of doubt, such distribution will be net of any costs and expenses incurred by the Receiver in administering the Third-Party Parcels.

6. Adoption of Remaining Sections of Capstone Agreement. Subject to the above modifications, Owner agrees to the remaining sections of the Capstone Agreement, which are incorporated herein by reference; provided that, notifications to the Company are to be given to:

**[INSERT OWNER ADDRESS FOR PURPOSES OF NOTIFICATION]**

7. Governance. This Agreement incorporates the entire understanding between the parties hereto and supersedes all previous agreements relating to the subject matter hereof. This Agreement may not be amended or modified except in a writing signed by the parties. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns. If any term or provision of this Agreement shall to any extent be deemed illegal, invalid, or unenforceable, the remainder of this Agreement shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

[SIGNATURE PAGE FOLLOWS]

Please indicate your agreement to the foregoing by signing at the places for your signatures below.

Sincerely,
[OWNER]

By:____________________________________
Name:
Title:

ACKNOWLEDGED AND AGREED:

____________________________
Lance Miller
Solely in his capacity as
Court-appointed Receiver

CAPSTONE CAPITAL MARKETS LLC

____________________________________
Paul Janson
Head of Investment Banking

# EXHIBIT D

## FORM OF LENDER CONSENT

, 2025

Capstone Capital Markets LLC ("Capstone")
176 Federal St., 3rd Floor
Boston, MA 02110
Attention: Skye Root

Mr. Lance Miller (the "Prudential/FMAC Receiver")
Pivot Group
1230 Rosecrans Ave., Suite 530
Manhattan Beach, CA 90266

Re: Prospective sale of assets in connection with Receivership Orders entered by the United States District Court, Eastern District of California, Fresno Division, 1:24-cv-1102-KES-SAB and 1:24-cv-01455-KES-SAB (the "Court")

Dear Lance:

We understand and acknowledge that you are the receiver appointed at the request of The Prudential Insurance Company of America, PGIM Real Estate Finance, LLC, and Federal Agricultural Mortgage Corporation (collectively, the "Lenders") and that you are proposing to enter or have entered into an agreement for the engagement of Capstone Capital Markets LLC (the "Capstone Agreement")[3] in the form attached hereto, for sale of the parcels listed in Appendix B to the Capstone Agreement, as it may be amended from time to time (the "Sale Property"), which Sale Property is subject to the first priority deeds of trust and security interests of the Lenders, as applicable.

We are a third-party lender ("Third-Party Lender") with a first priority security interest in the following parcels ("Third-Party Parcels"), which we are willing to include in the sale of the Sale Property:

**[LIST HERE OR IN ATTACHMENT]**

We join in the Capstone Agreement to the extent, and only to the extent, described in this letter agreement.

TERMS AND CONDITIONS

1. Joinder to Capstone Agreement. For purposes of the potential sale of the Third-Party Parcels as part of a Transaction(s), the Third-Party Lender joins in the engagement of Capstone as described in Section 1 of the Capstone Agreement, which Section is incorporated herein by reference.

2. Capstone Services. For purposes of the potential sale of the Third-Party Parcels, Capstone will provide the Transaction Services to the Third-Party Lender. Third-Party Lender agrees to the provisions of Section 2 of the Capstone Agreement, which Section is incorporated herein by reference.

3. Cooperation. In furtherance of the potential sale of the Third-Party Parcels as part of a Transaction(s), the Third-Party Lender agrees (a) to cooperate with Capstone and the Prudential/FMAC Receiver, (b) that the Prudential/FMAC Receiver will be the point of contact with Capstone, and (c) that Capstone will take direction in the performance of the Transaction Services solely from the Prudential/FMAC Receiver. The Third-Party Lender further understands and agrees that the Prudential/FMAC Receiver and Capstone will

[3] Capitalized terms not otherwise defined in this letter agreement have the meanings given in the Capstone Agreement.

have full access to information relating to the Sale Property, the Third-Party Parcels, and the operations of the Third-Party Parcels, which information may be provided by the owner, the employees and advisors to the owner, or the Third-Party Lender.

4. Fees. To the extent of Transaction Value attributable to Third-Party Parcels in a Transaction(s), the Third-Party Lender will pay its share of the Transaction Fees provided for in Section 3(c) of the Capstone Agreement, which Section 3(c) is incorporated herein by reference; provided that (i) any Transaction Fee attributable to the sale of Third-Party Parcels shall be included in determining the Transaction Fees counting towards the payment of the Minimum Transaction Fee; (ii) the Third-Party Lender shall not otherwise be responsible for the payment of any portion of the Minimum Transaction Fee and in no event will be liable for any portion of the Abandonment Fee; and (iii) in no event shall the Prudential/FMAC Receiver be liable for payment of the fees payable by the Third-Party Lender.

5. Representations. With respect to the Third-Party Parcels only, the Third-Party Lender joins in and makes the representations and agreements set forth in Section 7 of the Capstone Agreement.

6. Distribution of Proceeds. The proceeds of any Transaction under the Capstone Agreement that includes any Third-Party Parcels will be received by and distributed to the Third-Party Lender at or promptly after closing according to the percentage derived by *dividing* the total value of the Third-Party Parcels included in the Transaction *by* the Transaction Value attributable to the Transaction, as defined in Section 4 of the Capstone Agreement, which Section is incorporated herein by reference. For the avoidance of doubt, such distribution will be net of any costs and expenses incurred by the Receiver in administering the Third-Party Parcels.

7. Adoption of Remaining Sections of Capstone Agreement. Subject to the above modifications, the Third-Party Lender agrees to the remaining sections of the Capstone Agreement, which are incorporated herein by reference; provided that, notifications to the Company are to be given to:

   [INSERT THIRD-PARTY LENDER ADDRESS FOR PURPOSES OF NOTIFICATION]

8. Governance. This Agreement incorporates the entire understanding between the parties hereto and supersedes all previous agreements relating to the subject matter hereof. This Agreement may not be amended or modified except in a writing signed by the parties. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns. If any term or provision of this Agreement shall to any extent be deemed illegal, invalid, or unenforceable, the remainder of this Agreement shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

Sincerely,
[LENDER]

By:______________________________________
Name:
Title:

ACKNOWLEDGED AND AGREED:

_____________________________
Lance Miller
Solely in his capacity as
Court-appointed Receiver

CAPSTONE CAPITAL MARKETS LLC

_____________________________
Paul Jason
Head of Investment Banking

# EXHIBIT 3

SCHEDULE 1.1(h)

Poso Creek Interests/Water

| Vested Owner (subject to Receivership) | Membership Interest (%) | Stored Water (AF) |
|---|---|---|
| Maricopa Orchards, LLC | 25.398 | 28,164* |
| ACDF, LLC | 25.398 | 17,700 |
| **TOTAL** | **50.796** | **45,864** |

*An additional 1500 AF is owned subject to lien in favor of MetLife.

# EXHIBIT 4

Recorded at Request of
Old Republic Title Company

14110214 58

Recording requested by and
After recording, return to:

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Attn: Virginia M. Pedreira

Fresno County Recorder
Paul Dictos, CPA
**2022-0040643**
Recorded at the request of:
ERECORDING PARTNERS NETWORK
03/29/2022 10:08 57
Titles: 1 Pages: 9
Fees: $43.00
CA SB2 Fees:$75.00
Taxes: $0.00
Total: $118.00

Loan No. 201755

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

**FIRST AMENDMENT TO DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING**

(Fresno County, California)

THIS FIRST AMENDMENT TO DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING (this "**Amendment**") is made and entered into as of March 22, 2022 (the "**Effective Date**"), by and among C & A FARMS, LLC, a California limited liability company, and MARICOPA ORCHARDS, LLC, a California limited liability company, as Trustor (collectively, "**Trustor**"), and METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation, as Beneficiary ("**Beneficiary**"), with LEON A. MORENO, as Trustee ("**Trustee**").

RECITALS

A. Trustor has granted for the benefit of Beneficiary that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated as of April 2, 2021 and recorded on April 2, 2021 in the Official Records of Fresno County, California as Document No. 2021-0054552 (the "**Deed of Trust**"), encumbering certain real and personal property located in Fresno County, California, as more particularly described in the Deed of Trust. Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Deed of Trust.

B. Beneficiary and Trustor have agreed to modify the description of certain of the Water Rights encumbered by the Deed of Trust in accordance with the terms of this

Amendment.

NOW, THEREFORE, in consideration of the premises, the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, it is agreed as follows:

AGREEMENT

1. Confirmation of Loan. The Note, the Loan Agreement, the Deed of Trust and all other Loan Documents executed in connection with and supporting the Loan are hereby confirmed by Trustor as being in full force and effect and Trustor acknowledges that it has no defenses or offsets to any of its obligations thereunder and that Beneficiary has performed all of its obligations thereunder to this date.

2. Amendment to Deed of Trust. As of the Effective Date, the Deed of Trust is hereby amended to provide that the Beneficiary's security interest in and assignment of the Trustor's membership interests in Poso Creek and its exercise thereof shall be limited with respect to the use of any water available under the Member Water Account (as defined in the Pledge Agreement) to 1,500 stored acre-feet of water. For the avoidance of doubt, Trustor shall be permitted to use, pledge, assign or transfer, in its discretion but in accordance with the terms of the Company Agreement and the Water Banking Agreement (as each is defined in the Pledge Agreement), any water available under its Member Water Account in excess of 1,500 stored acre-feet, free of any security interest of Lender.

3. Reaffirmation. Except as expressly set forth herein, the Deed of Trust shall remain unmodified and in full force and effect, and Trustor hereby affirms and reaffirms, as applicable, each and every term and provision of the Deed of Trust, as originally set forth therein, as to the real and personal property encumbered by the lien of the Deed of Trust, as amended hereby.

4. Construction. This Amendment shall be construed in accordance with the law of the State of California (excluding choice-of-law principles). The terms of this Amendment have been mutually negotiated with each party having the opportunity to seek the advice of legal counsel and shall not be construed against any party. The headings in this Amendment are inserted solely for the purpose of convenience and shall not affect the interpretation of the provisions hereof. If any portion of this Amendment is held to be invalid by any court of competent jurisdiction, such ruling shall not affect the remaining terms hereof unless and to the extent it includes a specific determination that the fundamental purposes of this Amendment are thereby significantly impaired. All sums referred to in this Amendment shall be calculated by and payable in the lawful currency of the United States.

5. Entire Agreement. No amendments, variations, waivers, modifications or changes to this Amendment shall be effective unless in writing and signed by the Beneficiary and the Trustor subsequent to the date hereof.

6. Counterparts. This Amendment may be executed in two or more counterparts, all of which shall constitute but one and the same instrument. The signature pages of exact copies of this Amendment may be attached to one copy to form one complete document.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AMENDMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AMENDMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

*[Signature pages follow]*

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the Effective Date.

**TRUSTOR**:

C & A FARMS, LLC,
a California limited liability company

By: ______________________
Farid Assemi, its General Manager

By: ______________________
Farshid Assemi, its General Manager

By: ______________________
Darius Assemi, its General Manager

MARICOPA ORCHARDS, LLC,
a California limited liability company

By: ______________________
Farid Assemi, its General Manager

By: ______________________
Farshid Assemi, its General Manager

By: ______________________
Darius Assemi, its General Manager

*[Signatures continue on following page]*

**BENEFICIARY:**

METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation

By: MetLife Investment Management, LLC, its investment manager

By: ____________________
Name: Robert Frudden
Its: Authorized Signatory and Director

*[Acknowledgments on following pages]*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss.
COUNTY OF Fresno )

On March 22, 2022 before me, L. Diaz, Notary Public, personally appeared FARID ASSEMI, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

L. DIAZ
NOTARY PUBLIC . CALIFORNIA
COMMISSION # 2235602
FRESNO COUNTY
My Comm. Exp. April 20, 2022

Signature: L. Diaz (seal)



First Amendment to Deed of Trust
Dumar & Pistache Ranches
Loan No. 201755
114723451.2 0053564-00511

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss.
COUNTY OF FRESNO )

On March 22, 2022 before me, L. Diaz, Notary Public, personally appeared DARIUS ASSEMI, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

L. DIAZ
NOTARY PUBLIC . CALIFORNIA
COMMISSION # 2235602
FRESNO COUNTY
My Comm. Exp. April 20, 2022

Signature: L. Diaz (seal)



First Amendment to Deed of Trust
Dumar & Pistache Ranches
Loan No. 201755
114723451.2 0053564-00511

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss.
COUNTY OF Fresno )

On March 22, 2022 before me, L. Diaz, Notary Public, personally appeared FARSHID ASSEMI, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

L. DIAZ
NOTARY PUBLIC . CALIFORNIA
COMMISSION # 2235602
FRESNO COUNTY
My Comm. Exp. April 20, 2022

Signature: [signature] (seal)

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

STATE OF CALIFORNIA )
) ss.
COUNTY OF Fresno )

On March 21, 2022 before me, Erin E Thorpe, Notary Public, personally appeared Robert Frudden who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ERIN E. THORPE
COMM. #2311628
Notary Public - California
Fresno County
My Comm. Expires Dec. 4, 2023

Signature: Erin E Thorpe (seal)

## PLEDGE AND SECURITY AGREEMENT

This Pledge and Security Agreement (this "**Agreement**") is dated as of April 2, 2021, by MARICOPA ORCHARDS, LLC, a California limited liability company; ACDF, LLC, a California limited liability company; KAMM SOUTH, LLC, a California limited liability company; FARID ASSEMI, as Trustee of the AMENDED AND RESTATED FARID ASSEMI REVOCABLE TRUST dated March 2, 2010; FARSHID ASSEMI and SONIA ROSEMARY ASSEMI, as Trustees of the AMENDED AND RESTATED FARSHID ASSEMI AND SONIA ROSEMARY ASSEMI REVOCABLE TRUST dated March 2, 2010; and DARIUS ASSEMI, as Trustee of the AMENDED AND RESTATED DARIUS ASSEMI REVOCABLE TRUST dated March 2, 2010 (collectively, "**Pledgor**"), in favor of METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation ("**Lender**").

RECITALS

A. C & A FARMS, LLC, a California limited liability company, and MARICOPA ORCHARDS, LLC, a California limited liability company (together, "**Borrower**") and Lender are parties to that certain Loan Agreement dated as of even date herewith (the "**Loan Agreement**").

B. Pursuant to the Loan Agreement, Lender has agreed to make certain a loan to Borrower (the "**Loan**") evidenced by that certain Promissory Note dated as of even date herewith by Borrower to the order of Lender (the "**Note**"). The Note and the Loan Agreement are secured, among other assets, by certain agricultural real property situated in Fresno County, California (the "**Real Property**") and more particularly described in that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing executed by Borrower for the benefit of Lender dated as of even date herewith (the "**Deed of Trust**"). Borrower, as landlord, has leased the Real Property to (1) Dumar, LLC, a California limited liability company, as tenant, pursuant to that certain Agricultural Lease dated April 2, 2021, and (2) Pistache, LLC, a California limited liability company, as tenant, pursuant to that certain Agricultural Lease dated April 2, 2021 (together, the "**Farm Lease Agreements**").

C. Each Pledgor is a Borrower or a general partner, member, shareholder or affiliate of each of the entities composing Borrower.

D. The Real Property may be irrigated in part with water supplies made available to Pledgor by virtue of their membership interests in Poso Creek Water Company, LLC, a California limited liability company (the "**Company**").

E. One of the conditions precedent to the disbursement of the Loan is the grant by Pledgor to Lender of an assignment and security interest in its membership interest in the Company and all other rights and privileges arising under the Company Agreement, as defined below, and its allocated rights under that certain Agreement between the Company and Semitropic Water Storage District and its Improvement Districts for Participation in the Stored Water Recovery Unit of the Semitropic Water Banking and Exchange Program dated as of April 23, 2007, as such agreement may be modified or amended from time to time as permitted

hereunder (the "**Water Banking Agreement**") and to provide for the consent and agreement of the Company to such security interests as granted herein.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor agrees as follows:

1. Pledge and Grant of Security Interest.

(a) Collateral Pledged. Pledgor hereby pledges, assigns and grants to Lender a security interest in and to the following property, whether general intangibles (including contract rights), instruments, investment property consisting of limited liability company interests, or other property (hereafter, the "**Pledged Collateral**"):

(i) Pledgor's membership and percentage interest in the Company and rights under the Operating Agreement of the Company dated as of January 1, 2006, as amended by the First Amendment thereto dated as of August 8, 2007, and as further amended by the Second Amendment thereto dated as of December 31, 2009, as further amended by the Third Amendment dated as of May 3, 2010, as further amended by the Fourth Amendment dated January 23, 2012, and as further amended by the Fifth Amendment dated December 7, 2020 (collectively, the "**Company Agreement**"), and any interest held by or allocated to Pledgor in the "Water Bank Shares" or the "Company Water Account" (as defined in the Company Agreement), and Pledgor's "Member Water Account" established pursuant to the Company Agreement (all of the foregoing described in this clause (i) collectively referred to herein as the "**Pledged Equity**");

(ii) Pledgor's rights under the Water Banking Agreement and any other water rights available with respect to the Pledged Equity and water available thereunder;

(iii) Any certificates representing the Pledged Equity and any interest of Pledgor in the entries on the books of any financial intermediary pertaining to the Pledged Equity, and all dividends, cash, warrants, rights, instruments and other property or proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Equity;

(iv) All additional equity interests, and all securities convertible into warrants, options and other rights to purchase or otherwise acquire any equity interests, in any issuer of the Pledged Equity from time to time acquired by Pledgor in any manner (which interests shall be deemed to be part of the Pledged Equity), any certificates or other instruments representing such additional equity interests, securities, warrants, options, or other rights and any interest of Pledgor in the entries on the books of the Company;

(v) All claims, demands, rights, reimbursement, indemnities and other interests and obligations from time to time owed to Pledgor and arising under the Pledged Equity or the Water Banking Agreement and the instruments evidencing such interests and obligations, and all interest, cash, instruments, collateral and other property or proceeds from time to time

received, receivable or otherwise distributed in respect of or in exchange for any or all such interest and indebtedness; and

(vi) To the extent not covered by clauses (i) through (v) above, all proceeds of any or all of the foregoing Pledged Collateral. For purposes of this Agreement, the term "proceeds" includes whatever is receivable or received when Pledged Collateral or proceeds are sold, exchanged, collected, or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes, without limitation, in kind distributions with respect to any of the Pledged Collateral.

2. Obligations Secured. The pledge and security interest granted herein in the Pledged Collateral secures payment and performance when due (a) whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise of (i) all obligations and liabilities of every nature of Borrower now or hereafter existing under or arising out of or in connection with the Note, the Loan Agreement, the Deed of Trust or any of the other Loan Documents defined therein and (ii) all obligations and liabilities of Pledgor under this Agreement, and all extensions or renewals of the documents and instruments described in (i) or (ii) above, whether for principal or interest; (b) of all fees, expenses, costs, attorneys' fees, costs of collection or enforcement of Pledgor's obligations hereunder; and (c) reimbursement of all advances made by Lender to protect and preserve the Pledged Collateral, or any part thereof, or to protect Lender's security interest therein (including, but not limited to, amounts, if any, paid to satisfy Pledgor's obligations to any Person or entity having a security interest in the Pledged Collateral that is superior to Lender's security interest therein), or to enforce Pledgor's obligations under this Agreement. All such obligations and liabilities and all obligations of every nature of Pledgor now or hereafter existing under this Agreement are collectively referred to herein as the "**Secured Obligations.**"

3. Representations and Warranties of Pledgor. Each Pledgor represents and warrants to Lender that (a) the execution, delivery, and performance of this Agreement by Pledgor have been duly authorized; (b) this Agreement has been executed and delivered to Lender by a representative of Pledgor who has been duly authorized to perform such acts; (c) this Agreement is a legally valid and binding obligation of Pledgor and is enforceable against Pledgor in accordance with its terms; (d) Pledgor is and will be the only legal and equitable owner of each and every item of the Pledged Collateral free and clear of the security interests, unpaid assessments, liens, encumbrances, and claims of all Persons or entities except for the security interest created by this Agreement; (e) Pledgor's principal place of business is in California; (f) Pledgor has obtained all necessary consents and approvals to the grant herein of the security interests in favor of Lender in the Pledged Collateral; (g) all certificates, if any, representing the Pledged Equity have been delivered to Lender duly endorsed and accompanied by duly executed instruments of transfer or assignment in blank; (h) the Water Banking Agreement remains unmodified and is in full force and effect; and (i) no default exists by Pledgor under the Water Banking Agreement or to the best of Pledgor's knowledge, any other party to the Water Banking Agreement.

Pledgor further represents and warrants to Lender that no authorization, approval or other action by, and no notice to or filing with, any governmental authority, water or storage district or

regulatory body is required for either (i) the grant by Pledgor of the security interest granted hereby, (ii) the execution, delivery or performance of this Agreement by Pledgor, or (iii) the perfection of or the exercise by Lender of its rights and remedies hereunder. This Agreement, together with the filing of UCC-1 Financing Statements with the Secretary of State of the State of California, create a valid, perfected and first priority security interest in the Pledged Collateral, securing the payment of the Secured Obligations, and all filings and other actions necessary or desirable to perfect and protect such security interest have been duly made or taken. Pledgor confirms that all information heretofore, herein or hereafter supplied to Lender by or on behalf of Pledgor with respect to the Pledged Collateral is accurate and complete in all material respects.

4. Perfection. Pledgor hereby authorizes Lender to file such financing statements, financing statement amendments and any other documents that Lender reasonably believes are necessary or desirable to perfect, amend, or continue the perfection of Lender's security interests in the Pledged Collateral. Furthermore, Pledgor shall promptly take all other actions reasonably deemed necessary or desirable by Lender to enable Lender to perfect (or continue the perfection of) their security interests in Pledged Collateral including, without limitation, delivery of certificates, if any, or instruments representing Pledged Equity. Pledgor shall pay upon demand all fees and costs reasonably incurred by Lender in perfecting (and maintaining the perfection of) the security interests of Lender in the Pledged Collateral and in obtaining lien searches confirming the priority of such security interests in the Pledged Collateral. If the Pledged Equity is not currently certificated, Pledgor shall not cause such interest to be certificated.

5. Pledgor Remains Liable. Notwithstanding any other provision of this Agreement to the contrary, (a) Pledgor shall remain liable under any contracts and agreements included in the Pledged Collateral, reflected in the Company Agreement and under the Water Banking Agreement to the extent set forth therein, and to perform all of its duties and obligations thereunder to the same extent as if this Agreement had not been executed, (b) the exercise by Lender of any of its rights hereunder shall not release Pledgor from any of its duties or obligations under the contracts and agreements included in or relating to the Pledged Collateral, and (c) Lender shall not have any obligation or liability under any contracts and agreements included in the Pledged Collateral, including the Water Banking Agreement or the Company Agreement, by reason of this Agreement, nor shall Lender be obligated to perform any of the obligations or duties of Pledgor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder except to the extent Lender consents to be bound by the terms and conditions of the Company Agreement in accordance with Section 5.2.1 of the Company Agreement. Pledgor shall indemnify and hold Lender harmless from and against all loss and damage arising from or related to Pledgor's failure to perform its obligations under the Company Agreement.

6. Adjustments. In the event that, during the term of this Agreement, any reclassification, readjustment or other change is declared or made in the capital structure of the issuer of the Pledged Collateral, all new, substituted and additional interests or securities issued in respect to the Pledged Collateral by reason of any such change shall be delivered to Lender

and held by it under the terms of this Agreement in the same manner as the Pledged Collateral originally pledged hereunder.

7. Voting Rights.

(a) So long as no Event of Default shall have occurred and be continuing:

(i) Pledgor shall be entitled to exercise any and all voting and other consensual rights pertaining to the Pledged Collateral or any part thereof for any purpose not inconsistent with the terms of this Agreement, the Loan Agreement and the other Loan Documents, or the transactions contemplated thereby.

(ii) Lender shall promptly execute and deliver (or cause to be executed and delivered) to Pledgor all such proxies and other instruments as Pledgor may from time to time reasonably request for the purpose of enabling Pledgor to exercise the voting and other consensual rights which it is entitled to exercise pursuant to paragraph (i) above.

(b) Upon the occurrence of an Event of Default and upon written notice from Lender to Pledgor, all rights of Pledgor to exercise the voting and other consensual rights which it would otherwise be entitled to exercise pursuant to Section 7(a) shall cease, and all such rights shall thereupon become vested in Lender who shall thereupon have the sole right to exercise such voting and other consensual rights.

(c) In order to permit Lender to exercise the voting and other consensual rights which it may be entitled to exercise pursuant to Section 7(b), upon the occurrence of an Event of Default (i) Pledgor shall promptly execute and deliver (or cause to be executed and delivered) to Lender all such proxies and other instruments as Lender may reasonably request; and (ii) without limiting the effect of the immediately preceding clause (i), Pledgor hereby grants to Lender an irrevocable proxy to vote the Pledged Collateral and to exercise all other rights, powers, privileges and remedies to which a holder of the Pledged Collateral would be entitled (including, without limitation, giving or withholding written consents of equity holders, calling special meetings of equity holders and voting at such meetings), which proxy shall be effective, automatically and without the necessity of any action (including any transfer of any Pledged Collateral on the record books of the issuer thereof) by any other Person (including the issuer of the Pledged Collateral or any officer or agent thereof), upon the occurrence of an Event of Default and which proxy shall only terminate upon the payment in full in cash of the Secured Obligations.

8. Warrants and Rights. In the event that, during the term of this Agreement, subscription warrants or any other rights or options shall be issued in connection with the Pledged Collateral, such warrants, rights and options shall be immediately assigned by Pledgor to Lender to be held under the terms of this Agreement in the same manner as the Pledged Collateral originally pledged hereunder.

9. Lender as Limited Attorney in Fact. To the fullest extent allowed by law, Pledgor appoints Lender as Pledgor's attorney in fact, coupled with an interest, for the purpose

of executing and filing financing statements and similar documents or endorsing chattel paper, documents, promissory notes, or instruments, all of which, in Lender's reasonable judgment, may be necessary or advisable for perfecting, continuing, and re-perfecting the security interests of Lender in the Pledged Collateral, or any item thereof or interest therein. Pledgor also hereby irrevocably appoints Lender as Pledgor's attorney-in-fact, with full authority in the place and stead of Pledgor and in the name of Pledgor, Lender or otherwise, upon the occurrence of an Event of Default and in Lender's discretion, to take any action and to execute any instrument that Lender may deem necessary or advisable to accomplish the purposes of this Agreement, including without limitation:

(a) To ask for, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys or other assets due and to become due under or in respect of any of the Pledged Collateral;

(b) To file any claims or take any action or institute any proceedings that Lender may deem necessary or desirable for the collection or enforcement of any of the Pledged Collateral or otherwise to enforce the rights of Lender with respect to any of the Pledged Collateral;

(c) To pay or discharge charges, claims, liabilities, taxes or liens levied or placed upon or threatened against the Pledged Collateral or arising under the Company Agreement or capital calls or assessments made thereunder, the legality or validity thereof and the amounts necessary to discharge the same to be determined by Lender in its sole discretion, any such payments made by Lender to become obligations of Pledgor to Lender, due and payable immediately without demand; and

(d) Generally to sell, transfer, lease, pledge, make demand under, request the transfer or delivery of water under the Member Water Account, make any agreement with respect to or otherwise deal with any of the Pledged Collateral as fully and completely as though Lender were the absolute owner thereof for all purposes, and to do, at Lender's option and Pledgor's expense, at any time or from time to time, all acts and things that Lender deems necessary to protect, preserve or realize upon the Pledged Collateral and Lender's security interest therein in order to effect the intent of this Agreement, all as fully and effectively as Pledgor might do. If Pledgor fails to perform any agreement contained herein, Lender may itself perform, or cause performance of, such agreement, and the expenses of Lender incurred in connection therewith shall be payable by Pledgor under Section 19.

10. Reporting. Upon request, Pledgor shall promptly provide Lender with such reports and summaries and other information pertaining to the Pledged Collateral as reasonably are requested by Lender. Delivery of any such report, summary, or other information shall be deemed to be a representation and warranty by Pledgor that the same is true, correct, and complete in all material respects to the best of Pledgor's knowledge. Pledgor also shall report to Lender any default by Pledgor under any contract with any third person in which that person holds a claim or security interest in all or any portion of the Pledged Collateral that is or may by operation of law become prior in right to the security interests of Lender therein.

11. Inspection and Verification Rights. Pledgor shall keep accurate books and records relating to the Pledged Collateral. Lender shall have the right, at Pledgor's expense, to inspect the Pledged Collateral, including books and records with respect thereto whether held by Pledgor or the Company, and make copies of such books and records following reasonable notice and during normal business hours. Pledgor shall provide such access and office space as reasonably may be necessary for the exercise of these rights. The phrase "books and records" is used in its broadest sense and includes (but is not limited to) data compilations held on disks, tapes, and other media. If such information is so stored, and Lender is not able to retrieve that information easily without Pledgor's assistance, Pledgor shall provide (and, if necessary, operate) the hardware and operating systems necessary for retrieval, review, and reprinting of the information.

12. Prohibition on Other Encumbrances. Pledgor shall not grant or permit any liens or encumbrances with respect to Pledged Collateral, other than the security interest created by this Agreement.

13. Certain Covenants of Pledgor. Pledgor shall not sell, assign (by operation of law or otherwise), transfer, lease, license or otherwise dispose of, or grant any option with respect to, any of the Pledged Collateral or the water available thereunder without Lender's prior written consent which may be withheld or conditioned at Lender's discretion. Pledgor shall promptly notify Lender of any event of which Pledgor becomes aware causing material loss or depreciation in the value of the Pledged Collateral, and shall promptly deliver to Lender all written notices received by it with respect to the Pledged Collateral. In addition, Pledgor shall: (a) not use or permit any Pledged Collateral to be used unlawfully or in violation of any provision of this Agreement, the Water Banking Agreement or any applicable statute, regulation or ordinance or any policy of insurance covering the Pledged Collateral; (b) notify Lender of any change in Pledgor's name, identity, state of organization or corporate structure within fifteen (15) days of such change; (c) give Lender thirty (30) days' prior written notice of any change in Pledgor's chief place of business, chief executive office or residence or the office where Pledgor keeps its records regarding the contract rights included in the Pledged Collateral and all originals of all chattel paper that evidence contract rights; and (d) pay promptly when due all payments, capital contributions, reimbursement requests, water charges, property and other taxes, assessments and governmental charges or levies imposed upon, and all claims (including claims for labor, materials and supplies) against or arising under, the Pledged Collateral.

14. Special Provisions with Respect to the Contract Rights. (a) Pledgor shall at its expense: (i) perform and observe all terms and provisions of the Company Agreement and Water Banking Agreement accordance with their terms, and take all such action to such end as may be from time to time reasonably requested by Lender; and (ii) furnish to Lender, promptly upon receipt thereof, copies of all notices, requests and other documents received by Pledgor under or pursuant to the Company Agreement or Water Banking Agreement, and from time to time furnish to Lender such information and reports regarding the Company Agreement or the Water Banking Agreement as Lender may reasonably request; (b) Pledgor shall not, except in the ordinary course of business and with Lender's prior written consent: (i) cancel or terminate the Company Agreement or consent to approve or accept any amendment, assignment, cancellation or termination of the Water Banking Agreement; (ii) waive any default under or breach of the

Company Agreement; (iii) take or permit any other action in connection with the Company Agreement or Water Banking Agreement that would impair the value of the interest or rights of Pledgor thereunder or that would impair the interest or rights of Lender; or (iv) use or permit the use of any water available under the Member Water Account at any given time for the benefit of any property other than the property encumbered by the Deed of Trust or property encumbered by that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing made by Borrower and certain affiliates of Borrower, as trustor, for the benefit of MetLife Real Estate Lending, LLC, a Delaware limited liability company, an affiliate of Lender, as beneficiary, dated November 5, 2020 and recorded in the Official Records of, among other counties, Fresno County, California on November 5, 2020 as Document No. 2020-0158800, as amended, modified, extended or restated from time to time, except such water available under the Member Water Account in excess of 31,000 stored acre-feet (the "**Water Reserve Requirement**"), provided that, upon (A) the expiration or earlier termination of either of the Farm Lease Agreements (unless replaced by another lease of the Real Property with a tenant and in a form each approved in writing by Lender), (B) possession of the Real Property by Borrower or any affiliate of Borrower, or (C) the occurrence of an Event of Default hereunder or under the Note, the Loan Agreement, the Deed of Trust or any other Loan Document as defined therein, the Water Reserve Requirement shall increase to 32,500 stored acre-feet. For the avoidance of doubt, Pledgor shall be permitted to use or transfer, in its discretion but in accordance with the terms of the Company Agreement and the Water Banking Agreement, any water available under its Member Water Account in excess of the Water Reserve Requirement, free of any security interest of Lender.

15. Payments by Lender. If Pledgor fails to pay any payments, capital contributions, water charges, assessments, reimbursements or taxes relating to the Pledged Collateral, or to maintain the Pledged Collateral free of liens and encumbrances and in good standing, Lender may (but is not obligated to) take such action as is necessary (as determined by Lender in its reasonable discretion) to satisfy Pledgor's obligations. Any payment so made or expenditure so incurred by Lender shall be an obligation of Pledgor secured by this Agreement and the Deed of Trust and shall not constitute a waiver of the default caused by Pledgor's failure to perform as agreed in this Agreement. If Pledgor fails to reimburse Lender within ten (10) days of the date of written demand by Lender for reimbursement of such payment or expenditure, then interest will accrue (and be paid by Pledgor) on such amount at the Default Interest Rate set forth in the Note from the date of demand until the amount has been paid.

16. Optional Performance by Lender. If Pledgor fails to perform any agreement contained herein, Lender may (but is not obligated to) perform, or cause performance of, such agreement, and the expenses of Lender incurred in connection therewith shall be paid by Pledgor within ten (10) days of the date of written demand by Lender for reimbursement of such payment expenditures (and if Pledgor fails to do so, interest shall accrue (and be paid by Pledgor) on such amount at the Default Interest Rate set forth in the Note from the date of demand until the amount has been paid).

17. Lender's Limited Duties. The powers conferred on Lender hereunder are solely to protect the security interests of Lender in Pledged Collateral and shall not impose any duty upon Lender to exercise any such powers. Except for the safe custody of any Pledged

Collateral in Lender's possession and the accounting for moneys actually received by Lender hereunder, Lender shall have no duty as to any Pledged Collateral, or as to the taking of any steps to preserve rights against other Persons that have or claim to have a lien against Pledged Collateral, or any other rights pertaining to any Pledged Collateral. Anything contained herein to the contrary notwithstanding, (a) Pledgor shall remain liable under any contracts and agreements included in the Pledged Collateral, to the extent set forth therein, to perform all of its duties and obligations thereunder to the same extent as if this Agreement had not been executed; (b) the exercise by Lender of any of its rights hereunder shall not release Pledgor from any of its duties or obligations under the contracts and agreements included in the Pledged Collateral; and (c) Lender shall not have any obligation or liability under any contracts and agreements included in the Pledged Collateral by reason of this Agreement.

18. Indemnity. Pledgor hereby covenants and agrees to indemnify and defend Lender and its agents and assigns and hold them harmless for, from, and against all claims, loss, liability, cost, and expense, including reasonable attorney fees and court costs that in any way, directly or indirectly, arise from or relate to the failure of Pledgor to comply with Pledgor's obligations under this Agreement. This indemnity is intended to survive disposition of the Pledged Collateral or any other collateral for the Loan pursuant to foreclosure of Lender's liens and security interests and the voluntary surrender of all or any portion of the Pledged Collateral or other collateral to lieu of foreclosure. Pledgor shall pay to Lender upon demand the amount of any and all costs and expenses, including the reasonable fees and expenses of its counsel (including at trial, on appeal, in any bankruptcy case or proceeding or in connection with any enforcement efforts) and of any experts and agents, that Lender may incur in connection with (i) the administration of this Agreement, (ii) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, any of the Pledged Collateral, (iii) the exercise or enforcement of any of the rights of Lender hereunder, or (iv) the failure by Pledgor to perform or observe any of the provisions hereof.

19. Default. Pledgor shall be in default under this Agreement, and an "**Event of Default**" shall have occurred: (a) if an Event of Default occurs by Pledgor under the Note or any of the Loan Documents, (b) if any representation of Pledgor herein or in any other Loan Document shall prove to be untrue in any material respect when made, (c) if Pledgor fails to perform or observe any obligation, covenant, or terms of this Agreement, any of the Loan Documents and such failure shall remain unremedied for more than ten (10) days after Lender gives notice thereof to Pledgor, or (d) in the event of a default by the Company under the Water Banking Agreement or by Pledgor under the Company Agreement. An Event of Default under this Agreement shall constitute an Event of Default under the Deed of Trust.

20. Remedies. Following the occurrence of an Event of Default, Lender may exercise any or all of its rights and remedies under the Deed of Trust and Loan Agreement and all applicable laws including under the Uniform Commercial Code as in effect in any relevant jurisdiction (the "**UCC**") whether or not the UCC applies to the affected Pledged Collateral. Among other things, Lender shall be entitled to (a) take immediate possession of all or any portion of the Pledged Collateral (including, but not limited to, exercising such rights and remedies with respect to the Member Water Account portion of the Pledged Collateral), (b) require Pledgor to assemble the Pledged Collateral and make it available to Lender at a place

to be designated by Lender that is reasonably convenient to Lender and Pledgor, and (c) sell, lease, assign or otherwise dispose of any or all of the Pledged Collateral in its then condition or following any commercially reasonable preparation or processing. Pledgor agrees that a letter hand-delivered to Pledgor (or delivered to Pledgor by certified mail) at least ten (10) days before a public or private sale or other disposition of all or any part of the Pledged Collateral is reasonable notification of such sale or disposition. Lender may be the purchaser of any or all of the Pledged Collateral at any such sale and shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Pledged Collateral sold at any such public sale, to use and apply any of the Secured Obligations as a credit on account of the purchase price for any Pledged Collateral payable by Lender at such sale. Each purchaser at any such sale shall hold the property sold absolutely free from any claim or right on the part of Pledgor, and Pledgor hereby waives (to the extent permitted by applicable law) all rights of redemption, stay and/or appraisal which it now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted. Pledgor hereby waives any claims against Lender arising by reason of the fact that the price at which any Pledged Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale (including, without limitation, a public offering made pursuant to a registration statement under the Securities Act), even if Lender accepts the first offer received and does not offer such Pledged Collateral to more than one offeree, and Lender is under no obligation to delay the sale of any Pledged Collateral for the period of time necessary to permit the issuer thereof to register it for a form of public sale requiring registration under the Securities Act or under applicable state securities laws, even if such issuer would, or should agree to register it. If the proceeds of any sale or other disposition of the Pledged Collateral are insufficient to pay all the Secured Obligations, Pledgor shall be liable for the deficiency and the fees of any attorneys employed by Lender to collect such deficiency (including at trial, on appeal, and in any bankruptcy case or proceeding). All rights and remedies of Lender are cumulative and not exclusive, and the commencement or partial exercise of any such right or remedy will not preclude Lender from exercising any other right or remedy until the Secured Obligations have been fully paid and performed. Lender's rights specifically include the right of setoff and recoupment of any obligations owed by Lender to Pledgor against Pledgor's obligations to Lender.

21. Assignment. This Agreement shall create a continuing security interest in the Pledged Collateral and shall remain in full force and effect until the payment in full of the Secured Obligations. This Agreement shall bind and inure to the benefit of the respective successors and assigns of Pledgor and Lender. However, Pledgor shall not transfer or assign any of its rights of obligations under this Agreement without Lender's prior written consent (which consent may be withheld by Lender in its sole and absolute discretion).

22. Choice of Law. This Agreement shall be governed under California law, without regard to its conflicts of laws provisions, to govern the construction and enforcement hereof.

23. Attorney Fees. Pledgor shall pay all fees and costs, including reasonable attorney fees (including without limitation at trial, on appeal, and in any bankruptcy case or proceeding), incurred by Lender in enforcing Pledgor's obligations under this Agreement,

protecting Pledged Collateral or Lender's interest in Pledged Collateral, or asserting Lender's rights and remedies in Pledged Collateral, even if no case or proceeding is commenced. If any legal action or other proceeding is brought to enforce the terms of this Agreement, the losing party shall pay all fees and costs, including reasonable attorney fees, incurred by the prevailing party in any arbitration or litigation involving this Agreement, Pledged Collateral, or the security interests granted to Lender, including, but not limited to, any bankruptcy case or any proceeding or contested matter in any bankruptcy case.

24. No Waiver. No delay or omission by Lender in exercising any right or remedy provided in this Agreement shall impair any such right or remedy, or shall be construed to be a waiver of such right or remedy or any acquiescence therein.

25. Invalidity. If any term of this Agreement is determined to be illegal or unenforceable, that term shall be deemed deleted from this Agreement without invalidating the remaining terms of this Agreement.

26. Entire Agreement; Merger. This Agreement, the Loan Agreement and the related Loan Documents constitute and set forth the entire understanding among Lender and Pledgor with respect to Pledgor's grant of security interests in Pledged Collateral in favor of Lender , and Pledgor hereby agrees that no course of prior dealing between or among the parties, no usage of trade, and no parol or extrinsic evidence of any nature shall be used to supplement or modify any terms of this Agreement and that there are no conditions to the full effectiveness of this Agreement, except the execution and delivery of the Loan Documents by all parties thereto.

27. Further Assurances. Pledgor agrees that from time to time, at the expense of Pledgor, Pledgor will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Lender may request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable Lender to exercise and enforce its rights and remedies hereunder with respect to any Pledged Collateral. Without limiting the generality of the foregoing, Pledgor will, at Lender's request, appear in and defend any action or proceeding that may affect Pledgor's title to or Lender's security interest in all or any part of the Pledged Collateral.

28. Amendments; etc. No amendment, modification, termination or waiver of any provision of this Agreement, and no consent to any departure by Pledgor therefrom, shall in any event be effective unless the same shall be in writing and signed by Lender and, in the case of any such amendment or modification, by Pledgor. Any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

29. Notices. Any notice under this Agreement shall be in writing and shall be effective when either delivered in person or, if mailed, shall be deemed effective on the second day after deposited as registered or certified mail, postage prepaid, addressed to the parties at the following addresses:

| | |
|---|---|
| If to Lender: | Metropolitan Life Insurance Company<br>Western Regional Office<br>205 E. River Park Circle, Suite 430<br>Fresno, CA 93720<br>Attn.: Director |
| If to Pledgor:<br>Overnight Delivery: | Farid Assemi, Trustee<br>Farshid Assemi, Trustee<br>Darius Assemi, Trustee<br>Maricopa Orchards, LLC<br>ACDF, LLC<br>Kamm South, LLC<br>1306 W. Herndon, Suite 101<br>Fresno, CA 93711 |

Any party may change its address for notices by written notice to the other. Notices may be given by facsimile transmission if a hard copy is also delivered thereafter, with such notice to be effective when received during business hours or the next business day following facsimile receipt if received outside of business hours.

*[Signatures Appear on Following Page.]*

IN WITNESS WHEREOF, each Pledgor hereby executes and delivers this Agreement to and for the benefit of Lender as of the date first written above.

PLEDGOR:

______________________________
Farid Assemi, as trustee of the Amended and Restated Farid Assemi Revocable Trust dated March 2, 2010

______________________________
Farshid Assemi, as trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust dated March 2, 2010

______________________________
Sonia Rosemary Assemi, as trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust dated March 2, 2010

______________________________
Darius Assemi, as trustee of the Amended and Restated Darius Assemi Revocable Trust dated March 2, 2010

MARICOPA ORCHARDS, LLC,
a California limited liability company

By: ______________________________
Farid Assemi, Its Manager

By: ______________________________
Farshid Assemi, Its Manager

By: ______________________________
Darius Assemi, Its Manager

ACDF, LLC,
a California limited liability company

By: ______________________________
Farid Assemi, Its Manager

By: ______________________________
Farshid Assemi, Its Manager

By: ______________________________
Darius Assemi, Its Manager

KAMM SOUTH, LLC,
a California limited liability company

By: ______________________________
Farid Assemi, Its Manager

By: ______________________________
Farshid Assemi, Its Manager

By: ______________________________
Darius Assemi, Its Manager

CONSENT AND AGREEMENT OF THE COMPANY

This Consent and Agreement is executed by Poso Creek Water Company, LLC, a California limited liability company (the "**Company**") as of the date set forth below in connection with the foregoing Pledge and Security Agreement (the "**Pledge Agreement**") executed by Maricopa Orchards, LLC, a California limited liability company; ACDF, LLC, a California limited liability company; Kamm South, LLC, a California limited liability company; Farid Assemi, as Trustee of the Amended and Restated Farid Assemi Revocable Trust dated March 2, 2010; Farshid Assemi and Sonia Rosemary Assemi, as Trustees of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust dated March 2, 2010; and Darius Assemi, as Trustee of the Amended and Restated Darius Assemi Revocable Trust dated March 2, 2010 (collectively, "**Pledgor**"), in favor of METLIFE REAL ESTATE LENDING LLC, a Delaware limited liability company ("**Lender**"). The Company hereby certifies and agrees as follows:

(a) The Operating Agreement of the Company, dated as of January 1, 2006, as amended by the First Amendment thereto dated as of August 8, 2007, and as further amended by the Second Amendment thereto dated as of December 31, 2009, as further amended by the Third Amendment dated May 3, 2010, as further amended by the Fourth Amendment dated January 23, 2012, and as further amended by the Fifth Amendment dated December 7, 2020 (as amended, the "**Company Agreement**") (i) is in full force and effect, and (ii) has not been amended, modified or assigned except as noted above, and there is no other oral or written agreement or understanding between the Company and any Pledgor with respect to any Pledgor's membership interest in the Company or rights arising under the Company Agreement or the Water Banking Agreement defined in the Pledge Agreement. There are, as of the date hereof, no defaults or breaches on the part of any Pledgor (including no state of facts that with notice, the passage of time, or both, could ripen into a default) under the Company Agreement, and Pledgor has paid in full all assessments and capital calls made under the Company Agreement.

The current members of the Company are as follows:

| NAME | % INTEREST |
|---|---|
| Maricopa Orchards, LLC | 23.125% |
| ACDF, LLC | 23.125% |
| Kamm South, LLC | 3.250% |
| Farid Assemi, as Trustee of the Amended and Restated Farid Assemi Revocable Trust | 8.357% |

| NAME | % INTEREST |
|---|---|
| Farshid Assemi and Sonia Rosemary Assemi, as Trustees of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust | 8.357% |
| Darius Assemi, as Trustee of the Amended and restated Darius Assemi Revocable Trust | 8.357% |
| Gary G. Robinson and Karen E. Robinson, as Trustees of the Gary G. Robinson and Karen E. Robinson 2004 Trust | 8.948% |
| Manning Avenue Pistachios, GP | 2.50% |
| Dennis Woods, as Trustee of The Dennis and Cheryl Woods Family Revocable Trust of May 2005 | 2.50% |
| The Water Agency, Inc. | 1.250% |
| Henry Family Farms, LP | 5.231% |
| Candice Henry, as Trustee of the Todd Henry Revocable Trust | 5.00% |

(b) The Company shall provide Lender, at the address set forth in the Pledge Agreement, written notice of Pledgor's default under the Company Agreement or failure to make any required capital call or contribution or to pay any assessment, and shall provide Lender the opportunity (but not the obligation) to cure such default for a period of twenty (20) business days following such notice before any remedy or termination or other disposition of Pledgor's Percentage Interest (as defined in the Company Agreement) may proceed.

(c) There has not been filed by or against nor has there been threatened against or contemplated by the Company, a petition in bankruptcy, voluntary or otherwise, any assignment for the benefit of creditors, any partition seeking reorganization or arrangement under the bankruptcy laws of the United States or of any state thereof, or any other action brought under said bankruptcy laws.

(d) The Water Banking Agreement remains in full force and effect and no default has occurred or exists thereunder or under the note executed pursuant thereto. All fees, assessments and other payments due under the Water Banking Agreement by

the Company have been paid as and when due. The Water Banking Agreement has not been amended or modified or any interest therein assigned, nor shall it be modified, amended or assigned by the Company during the term of the Loan, absent Lender's prior written consent. The Company has not assigned, conveyed, transferred, sold, encumbered or mortgaged its interest in the Water Banking Agreement or the Water Bank Shares (as defined in the Company Agreement).

(e) There are no leases affecting Pledgor's membership or percentage interest in the Company or the Member Water Account established under the Company Agreement.

(f) Pledgor has the right to encumber its membership and percentage interest under the Company Agreement including Pledgor's Member Water Account under the terms of the Pledge Agreement. The Company acknowledges and consents to the pledge and assignment set forth in the Pledge Agreement and agrees that Lender is an "institutional lender" as defined in the Company Agreement.

(g) The Company has received no written notice of any prior assignment, hypothecation or pledge of Pledgor's membership or percentage interest under the Company Agreement. Pledgor has not made any loans to the Company.

(h) The Company is managed by its sole managers: Farid Assemi and Gary Robinson.

The Company acknowledges that Lender has requested this Consent in connection with Lender's loan to Pledgor and its affiliates and that execution and delivery of this Consent is a condition to Lender making the Loan. Lender will rely upon the accuracy of this certificate in connection with deciding to make the Loan to Pledgor. From time to time during the term of the Loan, the Company agrees to provide an update to the statements provided herein at Lender's written request, and to provide Lender with copies of any reports or statements provided to its members.

DATED this _______ day of ______________, 2020.

POSO CREEK WATER COMPANY, LLC,
a California limited liability company

By______________________________
Farid Assemi, Its Manager

By Keith A Thomsen
Keith A. Thomsen, Its Manager

**FIRST AMENDMENT TO PLEDGE AND SECURITY AGREEMENT**

This First Amendment to Pledge and Security Agreement (this "**Amendment**") is dated as of March 22, 2022 (the "**Effective Date**"), by MARICOPA ORCHARDS, LLC, a California limited liability company (collectively, "**Pledgor**"), and METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation ("**Lender**").

RECITALS

A. Pledgor and ACDF, LLC, a California limited liability company; KAMM SOUTH, LLC, a California limited liability company; FARID ASSEMI, as Trustee of the AMENDED AND RESTATED FARID ASSEMI REVOCABLE TRUST dated March 2, 2010; FARSHID ASSEMI and SONIA ROSEMARY ASSEMI, as Trustees of the AMENDED AND RESTATED FARSHID ASSEMI AND SONIA ROSEMARY ASSEMI REVOCABLE TRUST dated March 2, 2010; and DARIUS ASSEMI, as Trustee of the AMENDED AND RESTATED DARIUS ASSEMI REVOCABLE TRUST dated March 2, 2010 (the foregoing parties, excluding Pledgor, being referred to herein as the "**Released Parties**") have executed for the benefit of Lender that certain Pledge Agreement dated as of April 2, 2021 (the "**Pledge Agreement**"), encumbering certain Pledged Collateral with respect to Poso Creek, as more particularly described in the Pledge Agreement. Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Pledge Agreement.

B. Lender and Pledgor have agreed to modify certain terms of the Pledge Agreement in accordance with the terms of this Amendment.

NOW, THEREFORE, in consideration of the premises, the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, it is agreed as follows:

1. Confirmation of Loan. The Pledge Agreement, the Deed of Trust and all other loan documents executed in connection with and supporting the Loan are hereby confirmed by Pledgor as being in full force and effect and Pledgor acknowledges that it has no defenses or offsets to any of its obligations thereunder and that Lender has performed all of its obligations thereunder to this date.

2. Release of Released Parties. As of the Effective Date, the Pledge Agreement is amended to remove and release the Released Parties. Thereafter, references in the Pledge Agreement to the "Pledgor" shall mean Maricopa Orchards, LLC, a California limited liability company.

3. Amendment to Deed of Trust. As of the Effective Date, the Pledge Agreement is hereby amended to provide that the Lender's security interest in and assignment of the Trustor's membership interests in Poso Creek and its exercise thereof shall be limited with respect to the use of any water available under the Member Water Account to 1,500 stored acre-feet of water (the "**Priority Banked Water**"). For the avoidance of doubt, Trustor shall be permitted to use, pledge, assign or transfer, in its discretion but in accordance with the terms of the Company Agreement and the Water Banking Agreement (as each is defined in the Pledge Agreement), any water available under its Member Water Account in excess of 1,500 stored acre-feet, free of any security

114786566.2 0053564-00511

interest of Lender. In addition, Pledgor shall be permitted to grant security interests in the Pledged Collateral to other lenders or financial institutions so long as such grant is subordinate to Lender's rights in the Pledged Collateral up to the Priority Banked Water. Accordingly, Section 14 of the Pledge Agreement is hereby deleted and replaced with the following:

> "14. Special Provisions with Respect to the Contract Rights. (a) Pledgor shall at its expense: (i) perform and observe all terms and provisions of the Company Agreement and Water Banking Agreement accordance with their terms, and take all such action to such end as may be from time to time reasonably requested by Lender; and (ii) furnish to Lender, promptly upon receipt thereof, copies of all notices, requests and other documents received by Pledgor under or pursuant to the Company Agreement or Water Banking Agreement, and from time to time furnish to Lender such information and reports regarding the Company Agreement or the Water Banking Agreement as Lender may reasonably request; (b) Pledgor shall not, except in the ordinary course of business and with Lender's prior written consent: (i) cancel or terminate the Company Agreement or consent to approve or accept any amendment, assignment, cancellation or termination of the Water Banking Agreement; (ii) waive any default under or breach of the Company Agreement; (iii) take or permit any other action in connection with the Company Agreement or Water Banking Agreement that would impair the value of the interest or rights of Pledgor thereunder or that would impair the interest or rights of Lender.
>
> Pledgor shall be permitted to encumber, use or transfer, in its discretion but in accordance with the terms of the Company Agreement and the Water Banking Agreement, any water available under its Member Water Account in excess of the Water Reserve Requirement, free of any security interest of Lender. use or permit the use of any water available under the Member Water Account at any given time for the benefit of any property other than the property encumbered by the Deed of Trust, except such water available under the Member Water Account in the amount of 1,500 stored acre-feet (the "**Water Reserve Requirement**"). Upon (A) the expiration or earlier termination of either of the Farm Lease Agreements (unless replaced by another lease of the Real Property with a tenant and in a form each approved in writing by Lender), (B) possession of the Real Property by Borrower or any affiliate of Borrower, or (C) the occurrence of an Event of Default hereunder or under the Note, the Loan Agreement, the Deed of Trust or any other Loan Document as defined therein, Pledgor shall not use or permit the use of the Water Reserve Requirement for the benefit of any property other than the property encumbered by the Deed of Trust. For the avoidance of doubt, Pledgor shall be permitted to encumber, use or transfer, in its discretion but in accordance with the terms of the Company Agreement and the Water Banking Agreement, any water available under its Member Water Account in excess of the Water Reserve Requirement, free of any security interest of Lender. In addition, Pledgor shall be permitted to grant security interests in the Pledged Collateral to other lenders or financial institutions so long as such grant is subordinate to Lender's rights in the Pledged Collateral up to the Water Reserve Requirement.

4. Reaffirmation. Except as expressly set forth herein, the Pledge Agreement shall remain unmodified and in full force and effect, and Trustor hereby affirms and reaffirms, as applicable, each and every term and provision of the Pledge Agreement, as originally set forth therein, as to the Pledged Collateral described in the Pledge Agreement, as amended hereby.

5. Construction. This Amendment shall be construed in accordance with the law of the State of California (excluding choice-of-law principles). The terms of this Amendment have been mutually negotiated with each party having the opportunity to seek the advice of legal counsel and shall not be construed against any party. The headings in this Amendment are inserted solely for the purpose of convenience and shall not affect the interpretation of the provisions hereof. If any portion of this Amendment is held to be invalid by any court of competent jurisdiction, such ruling shall not affect the remaining terms hereof unless and to the extent it includes a specific determination that the fundamental purposes of this Amendment are thereby significantly impaired. All sums referred to in this Amendment shall be calculated by and payable in the lawful currency of the United States.

6. Entire Agreement. No amendments, variations, waivers, modifications or changes to this Amendment shall be effective unless in writing and signed by the Lender and the Pledgor subsequent to the date hereof.

7. Counterparts. This Amendment may be executed in two or more counterparts, all of which shall constitute but one and the same instrument. The signature pages of exact copies of this Amendment may be attached to one copy to form one complete document.

IN WITNESS WHEREOF, Pledgor and Lender hereby execute and deliver this Amendment as of the date first written above.

PLEDGOR:

MARICOPA ORCHARDS, LLC,
a California limited liability company

By: ______________________
Farid Assemi, Its Manager

By: ______________________
Farshid Assemi, Its Manager

By: ______________________
Darius Assemi, Its Manager

*Signatures continue on following page.*

114786566.2 0053564-00511

**LENDER**:

METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation

By: MetLife Investment Management, LLC,
its investment manager

By: ______________________
Name: Robert Trudden
Its: Authorized Signatory and Director

114786566.2 0053564-00511

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this case. My business address is: **Saul Ewing 1888 Century Park East, Suite 1500, Los Angeles, CA 90067.**

A true and correct copy of the document entitled: **Notice of Motion and Motion for Entry of Order Approving Sale of Certain Membership Interests and Water Free and Clear of Liens and Related Relief; Memorandum of Points and Authorities and Declarations of Phillip Christensen, Skye Root and Zev Shechtman in Support Thereof** will be served or was served on the judge in chambers in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** The foregoing document will be served by the court via NEF and hyperlink to the document. On **October 29, 2026,** I checked the CM/ECF docket for this case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**

On **October 29, 2026,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 on **October 29, 2026,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 29, 2026 | Hannah Richmond | /s/ *Hannah Richmond* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) (continued):**

- **Robert Cullen Barton**
  rbarton@mcdermottlaw.com,mnadel@mcdermottlaw.com,losangelesdocketing@mcdermottlaw.com,los-angeles-docketing-2-3974@ecf.pacerpro.com,adavalos@mcdermottlaw.com,acorona@mcdermottlaw.com
- **David Berger**
  dberger@sheppardmullin.com,ehwalters@sheppardmullin.com
- **Michael Barrett Brown**
  michael.brown@stoel.com,docketclerk@stoel.com,rebecca.lerma@stoel.com,jill.keehnen@stoel.com,ha.nguyen@stoel.com
- **Benjamin J. Codog , III**
  ben.codog@stoel.com,docketclerk@stoel.com
- **Jane Kim**
  jkim@kbkllp.com
- **Michael Lauter**
  mlauter@sheppardmullin.com,lsegura@sheppardmullin.com
- **Aaron J Malo**
  amalo@sheppardmullin.com,mlinker@sheppardmullin.com
- **Ali M Mojdehi**
  ali.mojdehi@mgr-legal.com,allison.rego@mgr-legal.com
- **Saul Reiss**
  reisslaw@reisslaw.net
- **Michelle Rosales**
  michelle.rosales@stoel.com
- **Zev M. Shechtman**
  Zev.Shechtman@saul.com,Zev.Shechtman@ecf.courtdrive.com,Shelly.Guise@saul.com,hannah.richmond@saul.com,LitigationDocketing@saul.com,Isaiah.Bribiesca@saul.com
- **Richard P. Steelman , Jr**
  RPS@LNBYG.COM,damon@lnbyg.com
- **Brodie Austin Surfus**
  bsurfus@wtjlaw.com,borozco@wtjlaw.com
- **Marshall Craig Whitney**
  mwhitney@wtjlaw.com,hlopez@wtjlaw.com,sgomez@wtjlaw.com,abroome@wtjlaw.com
- **Thomas Andrew Woods**
  thomas.woods@stoel.com,docketclerk@stoel.com,dalila.tobin@stoel.com,7052139420@filings.docketbird.com,1261239420@filings.docketbird.com,rebecca.lerma@stoel.com
- **Beth Ann R. Young**
  bry@lnbyg.com

**2. SERVED BY UNITED STATES MAIL (continued):**

The Assemi Group
5260 N. Palm Ave., Suite 421
Fresno, CA 93704

Fay Pugh
Law Offices of Saul Reiss, P.C.
11835 W. Olympic Blvd., Suite 415E
Los Angeles, Ca 90064

Ashlan & Hayes Investments, LLC
c/o Agent for Service of Process
John A. Bezmalinovic, General Counsel
The Assemi Group
5260 N. Palm Ave., Suite 421

Grantor Fresno Clovis Investments, LLC
c/o Agent for Service of Process
John A. Bezmalinovic, General Counsel
The Assemi Group
5260 N. Palm Ave., Suite 421

Fresno, CA 93704 Fresno, CA 93704

Dirk B. Paloutzian
Natalya M. Ferdinandi
Baker Manock & Jensen, PC
5260 North Palm Avenue, Suite 201
Fresno, California 93704

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (continued) :**

**VIA EMAIL:**

- reisslaw@reisslaw.net
- fay.pugh@outlook.com
- dpaloutzian@bakermanock.com
- nferdinandi@bakermanock.com
- lmarcyes@bakermanock.com

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100